UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SIGMA CHI CORPORATION and SIGMA CHI FOUNDATION, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| WESTCHESTER FIRE INSURANCE COMPANY, | ) ) ) | |
| Defendant. | ) ) | |
| _____ | ) | Case No. 1:08-cv-00767 |
| | ) | |
| WESTCHESTER FIRE INSURANCE COMPANY, | ) ) | Judge Ruben Castillo |
| | ) | Magistrate Judge Arlander Keyes |
| Counter-Plaintiff, | ) ) | |
| v. | ) ) | |
| SIGMA CHI CORPORATION, SIGMA CHI FOUNDATION, and DOES 1 THROUGH 10, | ) ) ) | |
| Counter-Defendants. | ) ) ) | |

**ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIM OF
DEFENDANT/COUNTER-PLAINTIFF WESTCHESTER FIRE INSURANCE COMPANY**

Defendant/Counter-Plaintiff, Westchester Fire Insurance Company, by and through its attorneys, Gordon & Rees LLP, respectfully submits its Answer, Affirmative Defenses and Counterclaim for Declaratory Judgment to Plaintiffs/Counter-Defendants' Complaint for Declaratory Judgment, and states as follows:

**THE PARTIES**

1.      Plaintiff Sigma Chi Corporation is a not-for-profit Illinois corporation with its principal place of business located at 1714 Hinman Avenue in Evanston, Illinois.

**<u>Answer:</u>**    Upon information and belief, Westchester Fire Insurance Company ("Westchester Fire" or "Defendant/Counter-Plaintiff") admits the allegations contained therein.

2.    Plaintiff Sigma Chi Foundation is a not-for-profit Colorado corporation with its principal place of business located at 1714 Hinman Avenue in Evanston, Illinois.

**<u>Answer:</u>**    Upon information and belief, Westchester Fire admits the allegations contained therein.

3.    Defendant Westchester Fire is a New York corporation with its principal place of business in New York, New York.

**<u>Answer:</u>**    Westchester Fire denies the allegations contained therein.

## <u>JURISDICTION</u>

4.    This Court has diversity jurisdiction matter pursuant to 28 USC §1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

**<u>Answer:</u>**    Westchester Fire admits the allegations contained therein.

## <u>VENUE</u>

5.    Venue in this Court pursuant to 28 USC § 1391(a)(2) because a substantial part of the events or omissions giving rise to the claim occurred within this district.

**<u>Answer:</u>**    Westchester Fire admits the allegations contained therein.

## <u>THE UNDERLYING IBM CLAIMS</u>

6.    On February 23, 2007, IBM Credit notified Sigma Chi that it was in default of certain lease agreements for computer hardware, software and services.  IBM Credit demanded that Sigma Chi pay it the sum of $1,490,604.00 under the agreement.

**<u>Answer:</u>**    Westchester Fire admits the allegations contained therein.

## THE UNDERLYING INCENTRA CLAIMS

7.    On May 4, 2007, Incentra notified Sigma Chi that it was in breach of the Gridworks Master Service Agreement and various other agreements regarding computer hardware, software and services in the amount of $108,459.93. On September 19, 2007, Incentra filed a lawsuit in the Circuit Court of DuPage County, Illinois, against Sigma Chi Corporation and Sigma Chi Foundation for breach of contract in the amount of $108,459.93. The case is styled *Network Systems Technologies, Inc. v. Sigma Chi Corporation and Sigma Chi Foundation*, Case No. 2007 L 000988.

**Answer:**        Westchester Fire admits the allegations contained therein.

## THE POLICY

8.    Westchester Fire issued a policy number DON G21943885, as amended ("the Policy") to Sigma Chi Corporation and Sigma Chi Foundation for the period of September 28, 2006 to September 28, 2007. Sigma Chi purchased Policy number DON G21943885 for "Management Liability" and "Employment Practices Liability" with an aggregate limit of $5,000,000 and $10,000 retention for each claim.

**Answer:**        Westchester Fire admits the allegations contained therein.

9.    The relevant portion of the Policy which relates to the underlying IBM Credit and Incentra claims is "Management Liability" which includes "Company Liability" in Section I.A.3:

> The **Insurer** shall pay the **Loss** of the **Company** which the Company becomes legally obligated to pay by reason of a **Claim** first made against it and reported to the **Insurer** during the **Policy Period**, or, if elected, the **Extended Reporting Period**, for any **Wrongful Acts** taking place prior to the end of the **Policy Period.**

**Answer:**        Westchester Fire states that the Policy speaks for itself and denies any allegations

contained therein that differ from the Policy.

10.    In Section II.D. of the "Definitions" section of the Policy a Claim is defined as:

> 1.    a written demand against the **Insured** for monetary damages, or, except with respect to insuring Agreement B Employment Practices Liability, non-monetary or injunctive relief;

> 2.    a civil proceeding against the **Insured** seeking monetary damages or non-monetary or injunctive relief, commenced by the service of a complaint or similar pleading.

**Answer:**    Westchester Fire states that the Policy speaks for itself and denies any allegations contained therein that differ from the Policy.

11.    Under Section II.P. of the "Definitions" section in the Policy, Loss is defined as:

> **Loss** means the damages, judgments, any awards of pre-judgments and post-judgments interest, settlements and **Defense Costs** which the **Insured** becomes legally obligated to pay on account of any **Claim** first made against the **Insured** during the **Policy Period…**for **Wrongful Acts** to which this **Policy** applies.

**Answer:**    Westchester Fire states that the Policy speaks for itself and denies any allegations contained therein that differ from the Policy.

12.    Under Section X., "Defense and Settlement," the Policy states that:

> The **Insurer** shall, on a quarterly basis, advance on behalf of the **Insureds** covered **Defense Costs** which the **Insureds** have incurred in connection with **Claims** made against them, prior to disposition of such **Claims.**

**Answer:**    Westchester Fire states that the Policy speaks for itself and denies any allegations contained therein that differ from the Policy.

### SIGMA CHI SENT NOTICES OF THE CLAIMS TO WESTCHESTER FIRE

13.    On March 21, 2007, Sigma Chi submitted to Westchester Fire the underlying claim from IBM Credit.   On April 2, 2007, Westchester Fire responded to Sigma Chi's submission of the claim by stating that it would determine its rights and obligations under the Westchester Fire Policy.  On April 27, 2007, counsel for Sigma Chi made another demand for insurance coverage under the Policy, including defense costs regarding the IBM Credit claim. Subsequently, on June 1, 2007, Westchester Fire notified counsel for Sigma Chi that coverage under the Policy for the IBM Credit claim was denied.  (See copy of June 1, 2007, letter attached as Exhibit A.)

**Answer:**    Westchester Fire admits that correspondence was exchanged between Plaintiffs/Counter-Defendants and Westchester Fire on the above dates and states that the correspondence speaks for itself.  Westchester Fire denies any allegations contained therein that misstate or mischaracterize the content of the correspondence.

14.    On June 1, 2007, Sigma Chi sent notice to Westchester Fire of the underlying claims made by Incentra.  On June 7, 2007, Westchester Fire acknowledged Sigma Chi's submission of the claim from Incentra against Sigma Chi.  On June 15, 2007, Westchester Fire denied coverage under the Policy for the Incentra claim.  On June 21, 2007, Plaintiff sent a letter to Westchester Fire and requested that it reconsider its denials.  Subsequently, on July 26, 2007, Westchester Fire repeated its denial of coverage.

**Answer:**    Westchester Fire admits that correspondence was exchanged between Plaintiffs/Counter Defendants and Westchester Fire on the above dates and states that the correspondence speaks for itself.  Westchester Fire denies any allegations contained therein that misstate or mischaracterize the content of the correspondence.

15.    Following protests by Sigma Chi of Westchester Fire's denials of coverage, Westchester Fire eventually <u>withdrew</u> its previous denials of coverage regarding both IBM Credit's and Incentra's claims by letter dated September 17, 2007.  Westchester Fire also agreed to meet with counsel for Sigma Chi and asked for a statement of costs incurred defending the underlying claims.  Subsequently, in mid-September 2007, counsel for Sigma Chi and counsel for Westchester Fire met to discuss the underlying IBM and Incentra claims.  At this meeting, counsel for Sigma Chi gave to counsel for Westchester Fire a statement of legal costs incurred by Sigma Chi associated with the defense of the IBM and Incentra claims.

**Answer:**    Westchester Fire admits that correspondence was sent to Plaintiffs/Counter-Defendants on September 17, 2007, and states that the correspondence speaks for itself.  Westchester Fire denies any allegations contained therein that misstate or mischaracterize the content of the correspondence.  Westchester Fire admits that counsel for Plaintiffs/Counter-Defendants and counsel for Westchester Fire met on or about September 18, 2007, and that counsel for Plaintiffs/Counter-Defendants gave to counsel for Westchester Fire a single page

stating that legal costs incurred by Sigma Chi in the Underlying Claims totaled $63,536,75.

Westchester Fire denies the remaining allegations contained therein.

## WESTCHESTER FIRE REVERSES ITS
## DECISION TO COVER DEFENSE COSTS

16.    In a letter to counsel for Sigma Chi, dated October 26, 2007, Westchester Fire reiterated its intention to withdraw the previous coverage letters denying coverage to Sigma Chi under the Policy.  Westchester Fire also agreed to fund the reasonable and necessary costs, charges, fees and expenses in accordance with[in] the terms and conditions of the Policy for the underlying IBM and Incentra claims.  (See Copy of October 26, 2007, letter as Exhibit B).

**Answer:**    Westchester Fire admits that correspondence was sent to Plaintiffs/Counter-

Defendants on October 26, 2007, and states that the correspondence speaks for itself.

Westchester Fire denies any allegations contained therein that misstate or mischaracterize the

content of the correspondence.  Westchester Fire denies the remaining allegations contained

therein.

17.    On November 19, 2007, however, Westchester Fire reversed its prior promises to provide coverage of defense costs.  Instead, it denied coverage yet again to Sigma Chi for the claims made by IBM Credit and Incentra under the Policy.  Further, Westchester Fire stated that it would file a declaratory action.  To date, it has failed to do so.  Although Sigma Chi has repeatedly demanded payments, Westchester Fire has refused and continues to refuse to advance defense costs to Sigma Chi under the Policy.

**Answer:**    Westchester Fire admits that correspondence was sent to Plaintiffs/Counter-

Defendants on November 19, 2007, and states that the correspondence speaks for itself.

Westchester Fire denies any allegations contained therein that misstate or mischaracterize the

content of the correspondence.  Westchester Fire admits that it stated that it intended to file a

declaratory judgment action if the parties were unable to resolve the dispute.  Further,

Westchester Fire admits that it did not file a declaratory judgment action by February 4, 2008,

the date of Plaintiffs/Counter-Defendants' Complaint for Declaratory Judgment.  Westchester

Fire denies the remaining allegations contained therein.

## BREACH OF CONTRACT

18.    Beginning in September 2007, Sigma Chi submitted bills to Westchester Fire for its legal defense fees and costs in connection with the defense of the Incentra and IBM claims. However, Westchester Fire has denied all of Sigma Chi's requests to pay the bills or indemnify it for payments made to their attorneys.

**Answer:**    Westchester Fire denies that Plaintiffs/Counter-Defendants submitted bills for its legal defense fees and costs in connection with the Incentra and IBM claims to Westchester Fire in September 2007. Westchester Fire admits that it has not paid legal defense fees and costs related to underlying Claims.

19    Westchester Fire has breached the Policy by denying coverage in the underlying matters and by failing to fund defense costs. The Policy is a valid contract and Sigma Chi has complied with the requirements of the Policy by giving prior notice to Westchester Fire in accordance with the terms of the Policy. Further, Sigma Chi is current with its premium payments to Westchester Fire in accordance with the Policy. Sigma Chi is not in breach of the Policy.

**Answer:**    Westchester Fire denies that it has breached the Policy. Westchester Fire admits that the Policy is a valid contract. Upon information and belief, Westchester Fire admits that Sigma Chi is current with its premium payments. Westchester Fire is without sufficient knowledge or information necessary to form a belief as to the truth of falsity of the remaining allegations and therefore denies the same.

20.    Westchester Fire's denial of coverage and payment of defense costs under the terms of the Policy has caused damages to Sigma Chi and is vexatious and unreasonable. Therefore, in accordance with 215 ILCS 5/155, Sigma Chi Corporation and Sigma Chi Foundation are also entitled to their attorneys' fees and other costs plus at least $60,000.00 in exemplary statutory damages.

**Answer:**    Westchester Fire denies the allegations contained therein.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs Sigma Chi Corporation and Sigma Chi Foundation respectfully pray that the Court enter judgment jointly and severally in their favor and against defendant Westchester Fire Insurance Company as follows:

1.    Declare that Westchester Fire is in breach of the Policy for denying coverage and refusing to advance defense costs for the underlying claims.

2.    Declare that Westchester Fire's denial of coverage and refusal to advance defense costs is vexatious and unreasonable under 215 ILCS 5/155.

3.    Award attorneys' fees, other costs plus at least $60,000.00 to Sigma Chi Corporation and Sigma Chi Foundation in accordance with 215 ILCS 5/155 in an amount to be determined.

4.    Order Westchester Fire to provide full coverage under the terms of the Policy and fund the Policy accordingly.

5.    Grant such other and further relief which the Court deems just and reasonable.

**Answer:**    To the extent that this paragraph requires an answer, Westchester Fire denies the allegations contained therein.

## AFFIRMATIVE DEFENSES

For its affirmative defenses to Plaintiffs/Counter-Defendants' Complaint, Westchester Fire hereby alleges as follows:

## FIRST AFFIRMATIVE DEFENSE

1.    The Complaint fails to allege facts sufficient to state a cause of action and fails to state a claim upon which relief may be granted.

## SECOND AFFIRMATIVE DEFENSE

2.    Plaintiffs' claims against Westchester Fire are barred because the underlying IBM and Incentra Claims do not fall within the scope of coverage afforded by the insuring language, terms, conditions and endorsements of the Policy.

## THIRD AFFIRMATIVE DEFENSE

3.      Plaintiffs' claims against Westchester Fire are barred because of Plaintiffs' failure to satisfy material requirements imposed upon them by the Policy.

## FOURTH AFFIRMATIVE DEFENSE

4.      Plaintiffs' claims against Westchester Fire are barred because coverage for the underlying Claims is specifically excluded from by Section III.L.1. of the Policy.

## FIFTH AFFIRMATIVE DEFENSE

5.      Plaintiffs' claims against Westchester Fire are barred, in whole or in part, due to Plaintiffs' failure to exercise reasonable care and diligence to mitigate, minimize, or avoid the allege damages.

## SIXTH AFFIRMATIVE DEFENSE

6.      Plaintiffs' claims against Westchester Fire are barred by the doctrine of laches, equitable estoppel, acquiescence, and/or waiver.

## SEVENTH AFFIRMATIVE DEFENSE

7.      Plaintiffs' claims against Westchester Fire are barred under the doctrine of unclean hands.

## EIGHTH AFFIRMATIVE DEFENSE

8.      To the extent that coverage is found for the underlying Claims, Plaintiffs have not and cannot plead and prove a claim for punitive damages.  In particular, Plaintiffs have not and cannot plead and prove Westchester Fire's liability for punitive damages under 215 ILCS 5/155.

## NINTH AFFIRMATIVE DEFENSE

9.      Any award of punitive damages as sought by Plaintiffs would violate the Due Process, Equal Protection, and Excessive Fine clauses of the Fifth, Eighth, and Fourteenth Amendments of the United States Constitution.

## TENTH AFFIRMATIVE DEFENSE

10.     To the extent that coverage is found for the underlying Claims, attorneys fees and costs incurred by Plaintiffs' counsel are not reasonable and necessary defense costs.

## COUNTERCLAIM FOR DECLARATORY JUDGMENT

For its Counterclaim for Declaratory Judgment, Defendant/Counter-Plaintiff Westchester Fire, under the Federal Declaratory Judgment Act, 28 USC § 2201(a), alleges:

## JURISDICTIONAL ALLEGATION

1.     This Court has original jurisdiction under 28 USC § 1332 in that it is a civil action between citizens of different states in which the matter in controversy exceeds, exclusive of costs and interest, seventy-five thousand dollars.

## VENUE

2.     Venue is proper in the Northern District of Illinois in that Defendants Sigma Chi Foundation and Sigma Chi Corporation are subject to personal jurisdiction in this district at the time the action is commenced, and there is no district in which the action may otherwise be brought.  (28 USC § 1391(a)(3)).

## THE PARTIES

3.     Westchester Fire, at the time of both the filing of this action and at all relevant times mentioned herein was incorporated under the laws of the state of New York and has its principal place of business in Georgia.  Westchester Fire is and at all relevant times mentioned herein an admitted carrier eligible to do business as an insurer in Illinois.

4.     Westchester Fire is informed and believes, and thereupon alleges, that Sigma Chi Foundation is, and at all relevant times hereto was, incorporated under the laws of the state of Colorado, with its principal place of business located at 1714 Hinman Avenue in Evanston, Illinois in Cook County.

5.    Westchester Fire is informed and believes, and thereupon alleges, that Sigma Chi Corporation is, and at all relevant times hereto was, incorporated under the laws of the state of Illinois, with its principal place of business located at 1714 Hinman Avenue in Evanston, Illinois in Cook County.

6.    Westchester Fire is unaware of the true identities, roles or capacities, whether individual, corporate, or otherwise, of the Counter-Defendants sued and identified herein as DOES 1 through 10, inclusive.  At such time as the true identities, roles and capacities of said fictitiously named defendants become known to Westchester Fire, Westchester Fire will seek leave of this court to amend this Counterclaim accordingly.

## THE UNDERLYING CLAIMS

7.    IBM Credit LLC fka IBM Credit Corporation ("IBM Credit") and Network System Technologies, Inc. dba Incentra Solutions of Illinois ("Incentra") separately allege that Sigma Chi Foundation and/or Sigma Chi Corporation (collectively "Sigma Chi') owe damages based upon Sigma Chi's alleged breach of certain contracts for goods and services.

### THE IBM CREDIT CLAIM

8.    In a letter dated February 23, 2007, IBM Credit notified Sigma Chi that it was in default of certain lease/financing agreements (the "Underlying IBM Credit Claim").  In this connection, IBM Credit advised Sigma Chi that unpaid amounts on the account covering all lease/purchase contracts, totaling $1,490,604.00, were due and payable.  IBM Credit demanded immediate payment of $71,805.00 and subsequent timely payments.  (Attached as Exhibit 1 and incorporated by reference herein is a true and correct copy of the February 23, 2007 letter from IBM Credit.)

## THE INCENTRA CLAIM

9.      In a letter dated May 4, 2007, Incentra, through counsel, notified Sigma Chi that it was in default of the Gridworks Master Services Agreement and certain additional agreements and/or contracts.  Incentra advised that Sigma Chi owed $108,459.93 as of the date of the letter. (Attached as Exhibit 2 and incorporated by reference herein is a true and correct copy of the May 4, 2007 letter from counsel for Incentra.)

10.     On or about September 19, 2007, Incentra filed a lawsuit against Sigma Chi Foundation and Sigma Chi Corporation for breach of contract based upon Sigma Chi's non-performance under the above referenced contracts in the action entitled *Network System Technologies, Inc. v. Sigma Chi Foundation et al.* (Circuit Court of DuPage County, Case No. 2007L000988) (collectively, the May 4, 2007 demand letter and the lawsuit filed in DuPage County constitute the "Underlying Incentra Claim").  In the lawsuit, Incentra brings causes of action for Breach of the Gridworks Master Services Agreement and Breach of Service Agreements.  Incentra requests damages of at least $84,718.93, plus statutory prejudgment interest, all costs of suit, and such further relief as the Court deems appropriate and just. (Attached as Exhibit 3 and incorporated by reference herein is a true and correct copy of the September 19, 2007 civil complaint filed by Incentra.)

11.     Together, the Underlying IBM Credit Claim and the Underlying Incentra Claim constitute the "Underlying Claims" that are the subject of this Counterclaim for Declaratory Judgment.

## THE WESTCHESTER FIRE POLICY

12.     Westchester Fire issued Not-For-Profit Company Management Liability policy number DON G21943885 002 (the "Policy") to Sigma Chi Fraternity, et al. effective September 28, 2006 through September 28, 2007.  The Policy has a $5,000,000 aggregate limit of liability

and a $10,000 retention for each covered Claim.  (Attached as Exhibit 4 and incorporated by reference herein is a true and correct copy of the Policy.)

13.    Pursuant to Endorsement Number 9 to the Policy, Sigma Chi Corporation and Sigma Chi Foundation are Named Insureds under the Policy.

14.    The Policy includes Insuring Agreements for Management Liability, Employment Practices Liability, and Fiduciary Liability; however, Sigma Chi purchased coverage for Management Liability and Employment Practices Liability only.

15.    Section I.A. of the Policy, the Insuring Agreement related to Management Liability, includes four subsections, specifically addressing coverage for Directors' and Officers' Liability, Company Reimbursement, Company Liability, and Outside Entity Directors' and Officers' Liability.

16.    The Underlying Claims do not involve any actual or alleged wrongdoing by Insured Persons.  Therefore, the insuring language in Section I.A.3. of the Policy addressing Company Liability is the only insuring language that arguably provides coverage for the Underlying Claims.  In this connection, Section I.A.3. of the Policy provides:

> The **Insurer** shall pay the **Loss** of the **Company** which the **Company** becomes legally obligated to pay by reason of a **Claim** first made against it and reported to the **Insurer** during the **Policy Period** or, if elected, the **Extended Reporting Period**, for any **Wrongful Acts** taking place prior to the end of the **Policy Period**.

17.    The Policy defines Wrongful Act, in relevant part, as "any error, misstatement, misleading statement, act, omission, neglect, or breach of duty actually or allegedly committed or attempted by… the **Company**, with respect to Insuring Agreement A3, **Company Liability**…"

18.     Section II.P. of the Policy, as modified by Endorsement Number 13, provides, in relevant part:

> **Loss** means the damages, judgments, any award of pre-judgment and post-judgment interest, settlements and **Defense Costs** which the **Insured** becomes legally obligated to pay on account of any **Claim** first made against the **Insured** during the **Policy Period** or, if elected, the **Extended Reporting Period**, for **Wrongful Acts** to which this **Policy** applies…
>
> *          *          *
>
> **Loss** does not include:
>
> 1.     any amount for which the **Insured** is not financially liable or legally obligated to pay;
>
> *          *          *
>
> 5.     matters uninsurable under the laws pursuant to which this **Policy** is construed;
>
> *          *          *
>
> 7.     solely with respect to Insuring Agreement A, Management Liability:
>
>> a.     any amount that represents or is substantially equivalent to disgorgement, restitution or recession damages, or forfeiture of any profits or remuneration;

19.     The exclusionary language in Section III.L.1. of the Policy, addressing coverage for Management Liability, provides that Westchester Fire shall not be liable for Loss on account of any Claim:

alleging, based upon, arising out of, or attributable to the actual or alleged breach of any oral, written, express or implied contract or agreement. However, this exclusion shall not apply to the extent that liability would have attached to the **Company** in the absence of such contract or agreement, or where such **Claim** is covered entirely under Insuring Agreement A1, Directors' and Officers' Liability, and A2, **Company** Reimbursement, and no part of such **Claim** is covered under Insuring Agreement A3, **Company** Liability.

20.    Pursuant to Section X. of the Policy, DEFENSE AND SETTLEMENT, the duty to defend the Underlying Claims lies with Sigma Chi, not Westchester Fire.  Accordingly, Westchester Fire has no duty to defend Sigma Chi in the Underlying Claims.

21.    Section X.F. of the Policy specifically provides for Westchester Fire's right to seek reimbursement of defense costs paid by Westchester Fire to the extent that there is no coverage under the Policy for the Underlying Claims.

## THE TENDER, RESPONSE AND DECLINATION OF COVERAGE

22.    On or about March 21, 2007, Sigma Chi tendered the Underlying IBM Credit Claim to Westchester Fire under the Policy.

23.    On or about June 1, 2007, Sigma Chi, through counsel, tendered the Underlying Incentra Claim to Westchester Fire under the Policy.

24.    On or about June 1, 2007, Westchester Fire issued a declination of coverage letter regarding the Underlying IBM Credit Claim.

25.    On or about June 15, 2007, Westchester Fire issued a declination of coverage letter regarding the Underlying Incentra Claim.

26.    On or about June 21, 2007, Sigma Chi contested Westchester Fire's declinations of coverage for the Underlying Claims, arguing against the application of Section III.L.1. of the Policy.  Upon information and belief, a typographical error in Section III.L. of the Policy forms the sole basis for Sigma Chi's argument for coverage.

27.    On or about July 26, 2007, Westchester Fire provided Sigma Chi with a supplemental coverage letter detailing the various reasons why coverage was precluded for the Underlying Claims.  Westchester Fire's July 26, 2007 letter included a comprehensive reservation of Westchester Fire's rights, remedies and defenses.  Further, Westchester Fire invited Sigma Chi to attempt to resolve this dispute in accordance with Section XXII. of the Policy addressing Alternative Dispute Resolution.  (Attached as Exhibit 5 and incorporated by reference herein is a true and correct copy of Westchester Fire's July 26, 2007 letter.)

28.    On or about September 17, 2007, Westchester Fire agreed to withdraw the prior declinations of coverage pending additional investigation and/or the receipt of additional information and documentation from Sigma Chi related to the Underlying Claims.

29.    On or about September 18, 2007, counsel for Westchester Fire and counsel for Sigma Chi met to discuss the Underlying Claims and coverage generally.  Following the meeting, counsel for Sigma Chi provided counsel for Westchester Fire with a single page stating that legal costs incurred by Sigma Chi in the Underlying Claims totaled $63,536,75.

30.    On or about September 27, 2007, Sigma Chi provided Westchester Fire with a copy of the lawsuit filed by Incentra in DuPage County on September 19, 2007.

31.    On or about October 3, 2007, October 26, 2007, and November 12, 2007, Sigma Chi provided Westchester Fire with redacted invoices of legal fees and costs related to the Underlying Claims.

32.     On or about October 26, 2007, Westchester Fire issued a comprehensive supplemental coverage letter to Sigma Chi, including a mutual non-waiver agreement and a reservation of rights regarding the parties' right to seek declaratory judgment.  Further, pursuant to the language of Section X. of the Policy, Westchester Fire reserved the right to seek reimbursement of any fees and costs paid by Westchester Fire in defending the Underlying Claims.

33.     On or about November 19, 2007, Westchester Fire issued a comprehensive supplemental coverage letter to Sigma Chi reiterating its previous denials of coverage for the Underlying Claims and advising Sigma Chi of its intention to seek declaratory relief in the coverage dispute.  Westchester Fire included a draft Complaint for Declaratory Judgment with the November 19, 2007 correspondence.  Further, Westchester Fire invited Sigma Chi to discuss pre-litigation settlement of the dispute.  (Attached as Exhibit 6 and incorporated by reference herein is a true and correct copy of the November 19, 2007 letter.)

34.     Pursuant to a request by counsel for Sigma Chi, Westchester Fire provided Sigma Chi with non-privileged documents from Westchester Fire's claim and underwriting files on or about November 26, 2007.  Further, on or about November 26, 2007, counsel for Westchester Fire confirmed that the Policy is not a duty to defend policy and that no defense costs were due because of the complete defenses to coverage noted in previous correspondence.  Finally, counsel for the parties discussed the futility of Sigma Chi's argument for payment for defense costs given that the Policy specifically provides for Westchester Fire's right to seek reimbursement of defense costs paid by Westchester Fire where there is no coverage under the Policy.

35.     On or about November 29, 2007, Sigma Chi requested additional time to consider the merits of the denials of coverage.  (Attached as Exhibit 7 and incorporated by reference herein is a true and correct copy of the November 29, 2007 electronic mail communication from Sigma Chi's counsel to Westchester Fire's counsel requesting additional time to consider the merits of the Westchester Fire's arguments.)

36.     On November 30, 2007, Westchester Fire agreed to postpone filing the Complaint for Declaratory Judgment.

37.     The next contact between Westchester Fire and Sigma Chi occurred on or about February 5, 2008, when counsel for Sigma Chi notified counsel for Westchester Fire that the subject complaint had been filed by Sigma Chi.

## REQUEST FOR DECLARATORY JUDGMENT

38.     An actual controversy has arisen between the parties with regard to the extent of their respective rights and obligations under the Policy and applicable law.  It is Westchester Fire's position that it has no duty to indemnify either Sigma Chi Foundation or Sigma Chi Corporation for any damages or defense expenses related to the Underlying Claims.

39.     Westchester Fire is informed and believes, and on that basis alleges, that Sigma Chi contends that Westchester Fire has a duty to indemnify Sigma Chi for damages and defense expenses related to the Underlying Claims.

40.     Westchester Fire desires a judicial determination pursuant of the respective rights and duties of the parties and a declaration that its contentions as set forth above are correct.  Such judicial determinations and declarations are necessary and proper at this time in order that all the parties will be bound by the same interpretation of the Policy and applicable law and may determine their rights and obligations among themselves.

## COUNT I

**(Declaratory Judgment Against Sigma Chi Foundation and Sigma Chi Corporation –
The Policy Does Not Cover Liability Imposed By Contract)**

41.     Westchester Fire incorporates by reference the allegations set forth in paragraphs
1 through 40 as though fully set forth herein.

42.     The insuring language of the Policy, including the phrase "legally obligated to
pay," encompasses tort damages, not contract damages.  IBM Credit and Incentra seek only
contract damages based upon Sigma Chi's intentional breach of service agreements and certain
other express contracts.

## COUNT II

**(Declaratory Judgment Against Sigma Chi Foundation and Sigma Chi Corporation –
The Underlying Claims Do Not Allege A Wrongful Act)**

43.     Westchester Fire incorporates by reference the allegations set forth in paragraphs
1 through 42 as though fully set forth herein.

44.     The Policy does not provide indemnity coverage for intentional breaches of
contractual obligations.  The Underlying Claims involve intentional breaches of contractual
obligations that were voluntarily assumed by Sigma Chi.

## COUNT III

**(Declaratory Judgment Against Sigma Chi Foundation and Sigma Chi Corporation –
The Damages Sought By IBM Credit and Incentra Do Not Constitute Loss)**

45.     Westchester Fire incorporates by reference the allegations set forth in paragraphs
1 through 44 as though fully set forth herein.

46.     Covered Loss does not include restitution, disgorgement, or damages that are
expected or intended from the standpoint of an insured.  The damages sought by IBM Credit and
Incentra constitute restitution and/or were expected by Sigma Chi when it voluntarily breached

the contracts with IBM Credit and Incentra.

## COUNT IV

**(Declaratory Judgment Against Sigma Chi Foundation and Sigma Chi Corporation –
Section III.L. of the Policy Specifically Excludes Coverage for Contract Claims)**

47.     Westchester Fire incorporates by reference the allegations set forth in paragraphs 1 through 46 as though fully set forth herein.

48.     Section III.L.1. of the Policy specifically excludes coverage for Claims "alleging, based upon, arising out of, or attributable to the actual or alleged breach of any oral, written, express or implied contract or agreement."  The allegations made in the Underlying Claims are entirely derivative of Sigma Chi's voluntarily assumed duties under the contracts to pay for equipment and services provided by IBM Credit and Incentra.  Further, liability would not have attached to Sigma Chi in the absence of the contracts.

## COUNT V

**(Declaratory Judgment Against Sigma Chi Foundation and Sigma Chi Corporation –
Strong Public Policy Considerations Preclude Coverage for the Underlying Claims)**

49.     Westchester Fire incorporates by reference the allegations set forth in paragraphs 1 through 48 as though fully set forth herein.

50.     As a matter of public policy, to allow coverage for Sigma Chi's willful and wanton breach of contract would render the Policy meaningless and invite further corporate misbehavior by Plaintiffs/Counter-Defendants in violation of clear public policy enforcing the covenant of good faith and fair dealing inherent in contracts.

## PRAYER FOR RELIEF

WHEREFORE, Westchester Fire prays for judgment as set forth below:

1.     That Plaintiffs/Counter-Defendants take nothing by reason of their Complaint, and that their Complaint be dismissed in its entirety and with prejudice.

2.     That judgment be entered in favor of Westchester Fire on all causes of action in the Complaint.

3.     That this Court find and declare that Westchester Fire has no obligation to indemnify either Sigma Chi Foundation or Sigma Chi Corporation for damages or defense expenses related to the Underlying IBM Credit Claim.

4.     That this Court find and declare that Westchester Fire has no obligation to indemnify either Sigma Chi Foundation or Sigma Chi Corporation for damages or defense expenses related to the Underlying Incentra Claim.

5.     That this Court find and declare that the Policy does not cover liability imposed by contract.

6.     That this Court find and declare that the Underlying IBM Credit Claim does not allege a Wrongful Act as defined by the Policy.

7.     That this Court find and declare that the Underlying Incentra Claim does not allege a Wrongful Act as defined by the Policy.

8.     That this Court find and declare that the damages sought by IBM Credit in the Underlying IBM Credit Claim do not constitute Loss as defined by the Policy.

9.     That this Court find and declare that the damages sought by Incentra in the Underlying Incentra Claim do not constitute Loss as defined by the Policy.

10.    That this Court find and declare that coverage is excluded for the Underlying IBM Credit Claim based upon Section III.L. of the Policy.

11.     That this Court find and declare that coverage is excluded for the Underlying Incentra Claim based upon Section III.L. of the Policy.

12.     That this Court find and declare that coverage is precluded for liability imposed by contract as a matter of public policy;

13.     That this Court find and declare that any agreement to between the parties to fund defense expenses is moot given that there is no coverage for the Underlying Claims and the Policy specifically provides that Westchester Fire would be entitled to full repayment of the subject defense expenses.

14.     For such other relief as this Court deems just and proper under the circumstances.

Respectfully submitted,


By: _____
One of its attorneys

Ryan T. Brown
GORDON & REES LLP
Attorney for Defendant
One North Franklin
Suite 1800
Chicago, Illinois 60606
Tel:  (312) 565-1400
Fax:  (312) 565-6511
Attorney No. 6269256