# EXHIBIT 5

RYAN T. BROWN
RTBROWN@GORDONREES.COM
DIRECT DIAL: (312) 233-1553

# GORDON & REES LLP

ATTORNEYS AT LAW
205 N. MICHIGAN AVENUE
SUITE 2560
CHICAGO, ILLINOIS 60601
PHONE: (312) 565-1400
FAX: (312) 565-6511
WWW.GORDONREES.COM

**_CONFIDENTIAL AND INADMISSIBLE_**
**_FOR SETTLEMENT PURPOSES ONLY_**

July 26, 2007

**VIA ELECTRONIC MAIL AND CERTIFIED MAIL**

Blake T. Hannafan, Esq.
Hannafan & Hannafan, Ltd.
One East Wacker Drive
Suite 1208
Chicago, IL 60601

Re:  Named Insured:   Sigma Chi Fraternity, et al.
     Claimants:       IBM Credit LLC; Incentra Solutions, Inc.
     Policy No.:      DON G21943885 002
     Policy Period:   September 28, 2006 to September 28, 2007
     ACE Claim No.:   JY07J0071577
     G&R Matter No.:  1046395

Dear Attorney Hannafan:

This letter responds to your June 21, 2007 correspondence addressed to Robyn L. Dilts of ACE Westchester Specialty Group Claims. As you have been advised, Gordon & Rees LLP has been retained by Westchester Fire Insurance Company ("Westchester Fire") to assist with addressing the coverage issues presented by the above referenced claims ("Claims") brought by IBM Credit LLC and Incentra Solutions, Inc. against Sigma Chi Fraternity and Sigma Chi Foundation (the "Insureds"). Specifically, this letter responds to your request, on behalf of the Insureds, that Westchester Fire reconsider the previous denials of coverage issued to the Insureds under Policy No. DON G21943885 002 (the "Policy").

Based upon our discussions and your June 21, 2007 letter, we understand that the Insureds contend that the exclusionary language in Section III.L.1. of the Policy should be specifically limited to Insuring Agreement A1. As we discussed, in light of general rules of policy construction and interpretation applicable in Illinois, we respectfully disagree with such an interpretation of the Policy.

Blake T. Hannafan, Esq
July 26, 2007
Page 2

---

As you know, one must first look to the language of the policy itself to determine what the parties reasonably intended by the terms of the contract. Under Illinois law, a court will attempt to ascertain the intent of the parties to the contract by construing the policy as a whole while giving due regard to the risk undertaken. A court will give meaning to each term in the policy unless to do so would render the clause or policy inconsistent or inherently contradictory. In such situations, a court will first attempt to reconcile any inconsistency in the terms by reviewing the conflicting terms in light of the policy language as a whole, including the relevant clause and the surrounding sections. The reasonable meaning of the policy will be enforced where the court is able to determine the parties' intentions through such a review, and extrinsic evidence will not be allowed.

With respect to the above, we note that Section III.L.1. of the Policy provides:

III.   EXCLUSIONS

The **Insurer** shall not be liable for **Loss** on account of any **Claim**:

\*         \*         \*         \*         \*         \*

L.   The following exclusions shall apply to any **Claim** covered, in whole or in part, under Insuring Agreement A, Directors' and Officers' Liability:

1. Contract or Agreement

alleging, based upon, arising out of, or attributable to the actual or alleged breach of any oral, written, express or implied contract or agreement. However, this exclusion shall not apply to the extent that liability would have attached to the **Company** in the absence of such contract or agreement, or where such **Claim** is covered entirely under Insuring Agreement A1, Directors' and Officers' Liability, and A2, **Company** Reimbursement, and no part of such **Claim** is covered under Insuring Agreement A3, **Company** Liability.

We understand that the Insureds maintain that by referencing "Directors' and Officers' Liability" after the phrase "Insuring Agreement A" in the first sentence of Section III.L., the exclusionary language of Section III.L.1. shall be limited to Insuring Agreement A1, and not applicable to any other Insuring Agreement. More specifically, we understand that the Insureds argue that the exclusionary language in Section III.L.1 cannot apply to Insuring Agreement A3 addressing Company Liability (the sole Insuring Agreement arguably at issue in the Claims brought by IBM and Incentra).

As we discussed, the Insureds' interpretation of Section III.L. ignores Illinois law requiring that the entire Policy be considered when determining the intent of the parties, not simply individual words, phrases, or paragraphs. In this connection, the Insureds' interpretation of Section III.L focuses exclusively upon the four words, "Directors' and Officers' Liability", found at the end of the first sentence in Section III.L. This limited reading of Policy language fails to consider the entire provision or the surrounding Policy Sections. In reviewing Section III.L. as a whole, one immediately recognizes that the Insureds' analysis of the "plain language" is flawed. In this connection, we note that the phrases "Insuring Agreement A" and "Directors' and Officers' Liability" create an inconsistency in the Policy language that requires additional analysis in order determine the parties' intent. Specifically, we note that *Insuring Agreement A addresses Management Liability*, whereas, *Insuring Agreement A1 addresses Directors' and Officers' Liability*. (*emphasis added*).

The Insureds, using an improper, limited reading of the Policy, are attempting to exploit the above inconsistency to secure coverage where none exists. As you must know, although Illinois courts will attempt to give meaning to each term in a policy, coverage will not be granted to an insured based solely upon a misplaced or misspelled word, phrase or paragraph. Similarly, an insured cannot argue for coverage based upon an isolated typographical error in the policy when the policy, viewed as a whole, reveals the parties' reasonable intentions.

As noted above, when confronted with an inconsistency in policy terms, an Illinois court will first attempt to reconcile the terms through a review of the policy as a whole, including the relevant policy provision and the surrounding policy sections. Fortunately, the inconsistency at issue here is easily reconciled by reviewing Section III.L. as a whole and surrounding Sections III.N. and III.M. In determining whether the exclusionary language in Section III.L. applies to Insuring Agreement A or Insuring Agreement A1, one only needs to review the first sentence in Section III.L. in context with the full wording of the Section. In this connection, we note that the exclusionary language of Section III.L. specifically addresses coverage under all four Insuring Agreements addressed in Section I.A. of the Policy, including Insuring Agreements A1, A2, A3 and A4. If one were to interpret Section III.L. to apply only to Insuring Agreement A1, the exclusionary language in Section III.L. would be left meaningless and rendered mere surplusage. This is contrary to Illinois rules of policy construction. Further, when properly read in the context of the surrounding Sections III.N. and III.M., one recognizes that these three Sections of the Policy clearly correspond to Insuring Agreements A, B, and C, with each exclusionary Section addressing coverage under each Insuring Agreement.

Next, not only would the Insureds' interpretation of Section III.L. fail to give meaning to significant language in the Policy, such an interpretation would lead to unreasonable and possibly absurd results. In this connection, as you know, any interpretation of policy language also must be viewed for reasonableness in light of the risk undertaken. Here, coverage for damages resulting from the Insureds' intentional breach of contract would be unreasonable and inconsistent with the risk untaken. In fact, finding coverage for breach of contract damages would transform the Policy into something akin to a performance bond.

Blake T. Hannafan, Esq
July 26, 2007
Page 4

Finally, we note that Section XXIII. of the Policy provides:

XXIII. INTERPRETATION

The terms and conditions of this **Policy** shall be interpreted and construed in an evenhanded fashion as between the parties. If the language of this **Policy** is deemed to be ambiguous or otherwise unclear, the issue shall be resolved in the manner most consistent with the relevant terms and conditions of this **Policy**, without regard to authorship of the language, without any presumption or arbitrary interpretation or construction in favor of either the **Insureds** or the **Insurer** and without reference to the reasonable expectations of either the **Insureds** or the **Insured**.

Based upon Section XXIII. of the Policy, any presumption in favor of the Insureds' interpretation of the Policy language will be limited. In light of the above, we find the Insureds' interpretation of the Policy to be unreasonable, incorrect, and without merit. When properly interpreted under Illinois law, the exclusionary language in Section III.L. of the Policy unambiguously applies to Insuring Agreement A addressing Management Liability.

Notwithstanding the above, Westchester Fire will consider any additional facts and/or arguments that you believe may alter the above position. In this connection, and further to our discussions, we suggest that Westchester Fire and the Insureds mediate this matter in an effort to expeditiously resolve the coverage dispute. We note that Section XXII. of the Policy addressing ALTERNATIVE DISPUTE RESOLUTION provides additional guidance on the format of the proposed mediation. Please contact me at your convenience to discuss.

Our enumeration of specific coverage issues in no way serves to waive or limit the rights that Westchester Fire has or may obtain. Further, Westchester Fire reserves the right to supplement and/or amend this letter to address additional coverage issues as they may arise, based upon all of the provisions, terms, conditions, exclusions, endorsements, and definitions found in the Policy and additional facts that may come to their attention.

Nothing stated herein and no further action taken by Westchester Fire or on its behalf should be construed as a waiver of any of its rights under the Policy, at law or in equity. On the contrary, by providing this or any prior correspondence to the Insureds, engaging in any prior or future discussions with the Insureds regarding coverage and settlement, or paying or agreeing to pay any amount to or on behalf of the Insureds, Westchester Fire does not waive any rights that it has under the Policy, at law or in equity.

      I look forward to your response and working with you towards the amicable resolution of this dispute.

                                Very truly yours,

                            *s/   Ryan T. Brown*

                                Ryan T. Brown

RTB:ah

cc:    Robyn L. Dilts, Esq.
        ACE Westchester Specialty Group Claims