# EXHIBIT 6

# Ryan Brown

| | |
|---|---|
| **From:** | Ryan Brown |
| **Sent:** | Monday, November 19, 2007 3:39 PM |
| **To:** | 'Blake Hannafan' |
| **Subject:** | Corr and Draft DJ - Westchester Fire v. Sigma Chi |
| **Attachments:** | DJ Cover Letter w authority - Westchester Fire v. Sigma Chi.pdf; DRAFT - Complaint for Declaratory Judgment - Westchester Fire v. Sigma Chi.pdf |

Dear Blake,

Congrats on the new baby.

Further to our discussion, attached please find a draft of the dj. As we discussed, in light of the birth of your child on 11/22, this will confirm that we will hold off on filing the complaint until at least the week of December 3, 2007. In this connection, I will contact you before any complaint is filed to discuss acceptance of service.

I also have included a cover letter detailing the legal authority supporting Westchester Fire's position related to liability imposed by contract. The letter, read in conjunction with the dj, should address any unresolved issues we discussed this afternoon.

Please feel free to contact me should you have any questions or concerns regarding the above.

Regards,

Ryan

Ryan T. Brown
Gordon & Rees LLP
312-565-1400
312-565-6511 f

RYAN T. BROWN
RTBROWN@GORDONREES.COM

# GORDON & REES LLP

ATTORNEYS AT LAW
205 N. MICHIGAN AVENUE
SUITE 2560
CHICAGO, ILLINOIS 60601
PHONE: (312) 565-1400
FAX: (312) 565-6511
WWW.GORDONREES.COM

November 19, 2007

**VIA ELECTRONIC MAIL**

Blake T. Hannafan, Esq.
Hannafan & Hannafan, Ltd.
One East Wacker Drive
Suite 2800
Chicago, IL 60601

    Re:    Named Insured:    Sigma Chi Fraternity, et al.
           Claimants:    IBM Credit LLC; Incentra Solutions, Inc.
           Policy No.:    DON G21943885 002
           Policy Period:    September 28, 2006 to September 28, 2007
           ACE Claim Nos.:    JY07J0071577; JY07J0133903
           G&R Matter No.:    1046395

Dear Blake:

       As we discussed, Westchester Fire Insurance Company ("Westchester Fire") has directed Gordon & Rees LLP to seek declaratory relief in the ongoing coverage dispute with Sigma Chi Foundation and Sigma Chi Corporation (collectively "Sigma Chi") related to the Claims brought by IBM Credit LLC and Incentra Solutions, Inc. In this connection, attached please find a courtesy copy of the Complaint for Declaratory Judgment to be filed in the United States District Court, Northern District of Illinois[1].

       Next, for your reference and convenience, below is a statement of the legal authority controlling the issues in this dispute and clearly supporting Westchester Fire's position that there can be no coverage for the Claims brought by IBM Credit and Incentra. We request that you objectively review this authority with Sigma Chi and seriously consider my client's reasonable resolution proposal outlined below. In summary, based upon the insuring language in the Policy, there is no coverage for liability imposed by contract. Westchester Fire has received no information and/or documentation suggesting that the underlying Claims seek anything other than liability imposed by contract. Accordingly, even if Sigma Chi is correct in arguing against the application of Section III.L. of the Policy, which it is not, an exclusion cannot expand the scope of coverage beyond that defined by the insuring agreements.

---

[1] In July 2007, Sigma Chi rejected Westchester Fire's suggestion that this matter be resolved in accordance with Section XXII. of the Policy addressing Alternative Dispute Resolution.

I.  **ILLINOIS COURTS AGREE THAT LIABILITY INSURANCE POLICIES DO NOT PROVIDE COVERAGE FOR LIABILITY IMPOSED BY CONTRACT**

Liability insurance is a product designed to protect an insured from damages caused by a fortuitous event. Damage that is expected or intended from the standpoint of the insured is not fortuitous, and thereby precluded from the coverage under a liability policy. State Farm Fire & Casualty Co. v. Watters, 268 Ill.App.3d 501, 644 N.E.2d 492, 205 Ill.Dec. 936 (5th Dist. 1994, appeal denied, 161 Ill.2d 540 (1995). Illinois courts have routinely reject efforts on the part of insureds to obtain coverage under liability policies for breach of contracts damages, as those damages are really nothing more than the natural consequence of the insureds' business decisions. Travelers Insurance Cos. v. P.C. Quote, Inc., 211 Ill.App.3d 719, 570 N.E.2d 614, 145 Ill.Dec. 138 (1st Dist. 1991). In P.C. Quote, the court found that there can be no coverage under a liability policy for breach of contract because the insured necessarily expects or intends damage when it refuses to pay for goods and services that it has ordered. 211 Ill.App.3d at 723. See also Reliance Insurance Company of Illinois v. Nick J. Giannini, Inc., 158 Ill.App.3d 657, 511 N.E.2d 755, 759, 110 Ill.Dec. 578 (1st Dist. 1987).

Similarly, the Northern District has held that breach of contract claims do not fall within the scope of coverage provided by liability policies. Aetna Casualty & Surety Co. v. Spancrete of Illinois, Inc., 726 F. Supp. 204 (N.D. Ill. 1989). See also Deris & Krump Manufacturing Co. v. Phoenix Ins. Co., 548 F.2d 681 (7th Cir. 1977). In Spancrete, the Northern District, applying Illinois law, held that an insurer did not have a duty to indemnify its insured because the damages resulted from the insured's breach of its contractual obligations. Id. at 207.

II. **THE CLEAR AND UNAMBIGUOUS LANGUAGE OF THE WESTCHESTER FIRE MANAGEMENT LIABILITY POLICY PRECLUDES COVERAGE FOR DAMAGES ARISING FROM SIGMA CHI'S BREACH OF CONTRACT**

Liability policies generally, and the Westchester Fire Policy at issue in particular, preclude coverage for Claims based upon an insured's breach of contract in several ways. In this connection, we note that liability insurers specifically define the parameters for coverage through defined, clear and unambiguous terms and conditions in their policies. By incorporating defined and consistently interpreted language into their liability policies, insurers are able to create certainty regarding the risk assumed and guard against an insured's attempt to expand liability beyond the agreed upon scope of coverage. As explained below, the Westchester Fire Policy includes defined, clear and unambiguous terms and conditions that preclude coverage for liability imposed by contract.

    1.   **Westchester Fire shall only pay Loss which Sigma Chi becomes "legally obligated to pay"**

Initially, we note that the Policy's insuring agreements do not encompass breach of contract damages. The insuring language "legally obligated to pay" refers to tort liability, not to damages for breach of contract. See 1 Allan D. Windt, Insurance Claims and Disputes § 11.07 at 224 (3d ed. 1995). In this connection, the phrase "legally obligated to pay" is synonymous with

Blake T. Hannafan, Esq.
November 19, 2007
Page 3

---

language that an insurer is obligated to "pay damages for liability imposed by law." Both phrases have been uniformly interpreted as referring to liability *ex delicto* as distinguished from *ex contractu*. Plainly, liability "imposed by law" (tort liability) is covered, but liability "imposed by contract" (breach of contract) is not covered, regardless of the reason for the breach. See generally International Surplus Lines Ins. Co. v. Devonshire Coverage Corp. (1979) 93 Cal.App.3d 601, 610-11. This fundamental tenant of liability coverage is based upon the fact that a liability policy is not a performance bond.

As you know, Insuring Agreement A.3. of the Westchester Fire Policy provides:

> The **Insurer** shall pay the **Loss** of the **Company** which the **Company** becomes *legally obligated to pay* by reason of a **Claim** first made against it and reported to the **Insurer** during the **Policy Period** or, if elected, the **Extended Reporting Period**, for any **Wrongful Acts** taking place prior to the end of the **Policy Period**. *Emphasis added.*

Accordingly, based upon established, basic rules of policy construction interpreting the clear and unambiguous language of the Policy, there can be no indemnity coverage under the Policy for liability imposed by contract. Therefore, there is no indemnity coverage for damages or defense expenses resulting from the underlying Claims for breach of contract brought by IBM Credit and/or Incentra. Accordingly, Westchester Fire must respectfully deny coverage for these Claims. In this connection, Westchester Fire will not fund or otherwise indemnify Sigma Chi for any damages or defense expenses related to the underlying Claims.[2]

### 2. The Underlying Claims do not Involve a Wrongful Act

Second, we note that Section II.BB. of the Policy provides that a Wrongful Act means "any error, act, omission, neglect, or breach of duty actually or allegedly committed or attempted by the **Company**, with respect to Insuring Agreement A3, **Company** Liability." Courts consistently have held that a wrongful act is not an unintentional act, and a insurer's indemnity coverage obligation is not triggered by an insured's intentional breach of contract. In this connection, liability insurance policies may provide indemnity coverage for unintentional or negligent breaches of duty, but not intentional breaches of contractual obligations that have been voluntarily assumed. Oak Park Calabasas Condominium Assoc. v. State Farm Fire & Cas. Co., 137 Call. App. 4th 557 (2006). Given that the underlying Claims are based upon the intentional acts by Sigma Chi related to its voluntarily assumed contractual obligations, the underlying Claims are not "Claims… for any Wrongful Acts." Based upon the above, the Policy's insuring language has not been triggered and there is no coverage for damages or defense expenses related to the underlying Claims brought by IBM Credit and Incentra.

---

[2] Westchester Fire is not obligated to fund any defense expenses incurred in this matter. However, to the extent that Westchester Fire agrees to fund defense expenses based upon an alleged agreement between the parties, Westchester Fire shall exercise its rights under Section X.F. of the Policy regarding reimbursement of defense expenses advanced toward uncovered Claims.

Blake T. Hannafan, Esq.
November 19, 2007
Page 4

---

    **3.**    <u>**Claimants Do Not Seek Covered Loss**</u>

As noted above, courts interpreting Illinois law have found that coverage is precluded for damages resulting from an insured's breach of contract because the damages are expected or intended from the standpoint of the insured. <u>Reliance Ins. Co. v. Giannini</u>, 158 Ill.App.3d 657. In this connection, damages arising from an insured's failure to meet its contractual obligations fall outside the scope of loss generally covered by liability insurance policies for several reasons. Initially, where a policy's definition of loss or damages includes the phrase "legally obligated to pay," covered loss will only include liability imposed by tort. As you know, Section II.P. of the Policy, as modified by Endorsement Number 13, provides, in part:

> P.    **Loss** means the damages, judgments, any award of pre-judgment and post-judgment interest, settlements and **Defense Costs** which the **Insured** becomes *legally obligated to pay* on account of any **Claim** first made against the **Insured** during the **Policy Period** or, if elected, the **Extended Reporting Period**, for **Wrongful Acts** to which this **Policy** applies…" *Emphasis added.*
>
>     \*    \*    \*
>
> *Loss does not include:*
>
> 1.    *any amount for which the **Insured** is not financially liable or legally obligated to pay;* Emphasis added.

Based upon established, basic rules of policy construction noted above, Loss means the damages, judgments, any award of pre-judgment and post-judgment interest, settlements and Defense Costs which an insured becomes legally obligated to pay *in tort*. Loss does not include an amount for which Sigma Chi is not legally obligated to pay (i.e., liability imposed by contract).

In addition, we note that Section II.P. of the Policy provides that "Loss does not include…any amount that represents or is substantially equivalent to disgorgement, restitution or recession damages, or forfeiture of any profits or remuneration." As you know, restitution is an equitable remedy under which "a person aggrieved by a breach is entitled to be placed in the position in which he would have been in the defendant had not breached." <u>Black's Law Dictionary</u>, 6th ed., p. 1313. (1996). Similarly, disgorgement may be an available remedy for breach of contract. John D. McCamus, <u>Disgorgement For Breach of Contract: A Comparative Perspective</u>, 36 Loy. L.A. L. Rev. 943, 947-8 (2003). <u>See also</u>, Andrew Kull, <u>The "Restitution Interest" and the Restatement of Contracts</u>, 67 So. Cal. L. Rev. 1465 (1994). To the extent that damages sought by IBM Credit and/or Incentra constitute restitution or disgorgement, those damages would be specifically excluded from coverage. Further, to the extent that IBM Credit and/or Incentra only seek uncovered damages, there may be no coverage for the underlying Claims as the duty to defend these Claims rests with Sigma Chi.

Blake T. Hannafan, Esq.
November 19, 2007
Page 5

### 4. Claims for Breach of Contract are Excluded From Coverage

Fourth, as you know, the Policy specifically excludes coverage for the underlying Claims. In this connection, Section III.L.1. of the Policy[3] provides:

> III. EXCLUSIONS
>
> The **Insurer** shall not be liable for **Loss** on account of any **Claim**:
>
> \* \* \*
>
> L. The following exclusions shall apply to any **Claim** covered, in whole or in part, under Insuring Agreement A, Directors' and Officers' Liability:
>
> 1. Contract or Agreement
>
>    alleging, based upon, arising out of, or attributable to the actual or alleged breach of any oral, written, express or implied contract or agreement. However, this exclusion shall not apply to the extent that liability would have attached to the **Company** in the absence of such contract or agreement, or where such **Claim** is covered entirely under Insuring Agreement A1, Directors' and Officers' Liability, and A2, **Company** Reimbursement, and no part of such Claim is covered under Insuring Agreement A3, **Company** Liability.

The allegations made in the underlying Claims are entirely derivative of Sigma Chi's voluntarily assumed duties under the contracts to pay for equipment and services provided by IBM Credit and Incentra. Further, liability would not have attached to Sigma Chi in the absence of the contracts. Given that Section III.L.1. of the Policy specifically excludes coverage for Claims "alleging, based upon, arising out of, or attributable to the actual or alleged breach of any oral, written, express or implied contract or agreement," there is no question that coverage is excluded for the underlying Claims by Section III.L. of the Policy.

Further, we briefly address Sigma Chi's unsupported argument that Section III.L. of the Policy only excludes coverage for Claims under Insuring Agreement A.1. Even assuming that Sigma Chi is correct, which it is not, an exclusion cannot expand the insuring language beyond

---

[3] We understand that the typographical error in Section III.L. of the Policy forms the sole basis for Sigma Chi's argument for coverage. In this connection and as noted above, Section III.L. of the Policy provides, "[t]he following exclusions shall apply to any Claim covered, in whole or in part, under Insuring Agreement A, *Directors' and Officers' Liability*:" Section III.L. of the Policy should provide, "[t]he following exclusions shall apply to any Claim covered, in whole or in part, under Insuring Agreement A, *Management Liability*:" *Emphasis added.*

Blake T. Hannafan, Esq.
November 19, 2007
Page 6
_____

its original scope. August Entertainment, Inc. v. Philadelphia Idem. Ins. Co., 52 Cal.Rptr.3d. 908 (Cal. Ct. App. 2007). Given that the insuring language in the Policy is not triggered by the underlying Claims, the typographical error in the exclusionary language is a red herring raised by Sigma Chi in an attempt to find coverage for the underlying Claims where none exists.

### III.  PUBLIC POLICY CONSIDERATIONS PRECLUDE COVERAGE FOR BREACH OF CONTRACT DAMAGES[4]

Finally, we note that liability insurers, including Westchester Fire, choose to assume specific risks as defined by their policies in return for premiums. Premiums are calculated through actuarial science whereby insurers are able to analyze the random events that cause injury to individuals and entities because, on a large scale, the frequency of such events becomes reasonably predictable. By evaluating and distributing risks, liability insurers are able to provide insurance to individuals and entities that allows them to engage in commercially and socially useful activities that would be impossible to undertake if the associated risks had to be borne by said individuals or entities alone. See generally Robert E. Keeton & Alan I. Widiss, Insurance Law: A Guide to Fundamental Principles, Legal Doctrines, and Commercial Practices, § 1.1(a) at 12-13 (1988).

Forcing an insurer to pay damages resulting from a claim for intentional breach of contract undermines the liability insurance model, grossly skewing the economic incentives in favor of the insured. Without defined parameters of coverage, an insurer cannot analyze risk or calculate premium. In this connection, allowing coverage for damages resulting for an insured's voluntary breach of contract would expose the insurer to risks it did not agree to assume, resulting in potentially unreasonable and excessive liability not bargained for by the parties when the contract was conceived. For this reason, no rationale insurer would issue a policy to an insured insuring against undefined contractual liabilities where the insured could simply enter into any contract, renege on paying under the contract, and shift the bill to the insurer up to the limit of liability. Such a scenario encourages an insured to breach its contracts in violation of clear public policy enforcing the covenant of good faith and fair dealing inherent in contracts.

If Sigma Chi was allowed to obtain coverage for damages resulting from it voluntary breach of contracts with IBM Credit and Incentra, it would be permitted to breach contracts with impunity, because Westchester Fire would bear the cost of the breach. In this connection, forcing Westchester Fire to indemnity Sigma Chi for damages and attorneys' fees arising from breach of contract would unfairly externalize the cost of such a breach onto Westchester Fire as the liability insurer, increasing Sigma Chi's incentive to breach additional contracts. Further, third parties, aware that Sigma Chi could obtain indemnification for liability imposed by contract, would become more wary of entering into contracts with Sigma Chi, as Sigma Chi could breach freely with the knowledge that it was fully insulated from damages under the

_____
[4] As a matter of public policy, "to allow coverage for willful and wanton breach of contact claims would render the contract meaningless. A breach of contract is an uninsurable activity, as to hold otherwise would invite such misbehavior." WDC Venture v. Hartford Accident & Indem. Co., 938 F. Supp. 671, 679 (D. Ha. 1996).

contract. Such a scenario is against established Illinois public policy governing good faith and fair dealing in contracts which encourages parties to honor their contractual commitments. Based upon the above, there can be no coverage for the underlying Claims under the Policy.

## IV. CONCLUSION

In summary, liability policies are not intended to provide coverage for an insured's intentional contractual breaches. In this connection, the Not-For-Profit Company Management Liability Policy issued by Westchester Fire is not the equivalent of a performance bond and does not provide coverage for damages or defense expenses resulting from Sigma Chi's intentional breach of contracts with IBM Credit and Incentra. Rather, based upon the clear and unambiguous language of the Policy, established Illinois law refuting coverage for liability imposed by contract, and strong underlying public policy considerations, there can be no coverage for the underlying Claims brought by IBM Credit and Incentra. Further, as you know, Westchester Fire has acted in good faith throughout the handling of these Claims by diligently investigating Sigma Chi's unsupported arguments for coverage. Finally, as Westchester Fire has acted in good faith, Sigma Chi has no viable argument(s) that Westchester Fire is precluded from raising the above coverage arguments. Accordingly, there is no question that an Illinois court will conclude that Westchester Fire has no duty to indemnify Sigma Chi for damages and/or defense expenses related to the underlying Claims.

Notwithstanding the overwhelming legal authority supporting its coverage position, Westchester Fire continues to desire to resolve this dispute short of litigation against Sigma Chi, an existing insured. In this connection, Westchester Fire has authorized Gordon & Rees to make a pre-litigation settlement offer of $10,000 to amicably resolve this dispute. As you can imagine, Westchester Fire will require a full release regarding the underlying Claims. Westchester Fire's offer expires at 5pm on Friday, November 30, 2007, or upon the filing of any pleading by either party in relation to this dispute. I sincerely hope that Sigma Chi will recognize the gratuitous nature of this offer in light of the above and agree to resolve this dispute short of costly litigation.

Our enumeration of specific coverage issues in no way serves to waive or limit the rights that Westchester Fire has or may obtain. In this connection, Sigma Chi and Westchester Fire agree that neither party has waived any right under the Policy, at law or in equity. As we discussed, Westchester Fire reserves the right to supplement and/or amend this letter to address additional coverage issues as they may arise, based upon all of the provisions, terms, conditions, exclusions, endorsements, and definitions found in the Policy and additional facts that may come to their attention. Further, Westchester Fire reserves the right to file and prosecute a declaratory judgment action against Sigma Chi in order to clarify coverage for the underlying Claims under the Policy.

Nothing stated herein and no further action taken by Westchester Fire or on its behalf should be construed as a waiver of any of its rights under the Policy, at law or in equity. On the contrary, by providing this or any prior correspondence to Sigma Chi, engaging in any prior or future discussions with Sigma Chi regarding coverage and settlement, or paying or agreeing to pay any amount to or on behalf of Sigma Chi, Westchester Fire does not waive any rights that it

Blake T. Hannafan, Esq.
November 19, 2007
Page 8

has under the Policy, at law or in equity, including the right to seek reimbursement of any amounts paid in accordance with Section X.F. of the Policy.

If you have any questions regarding the above, please do not hesitate to contact me.

Very truly yours,

*s/ Ryan T. Brown*

Ryan T. Brown

RTB:ah
Enclosure – *Complaint for Declaratory Judgment*