## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| SIGMA CHI CORPORATION and )<br>SIGMA CHI FOUNDATION )<br>　　　　　　　　　　　　　　　 )<br>　　　Plaintiffs and Counter-Defendants, )<br>　　　　　　　　　　　　　　　 )<br>　　　　　　　　　　　　　　　 )<br>vs.　　　　　　　　　　　　　 )<br>　　　　　　　　　　　　　　　 )<br>WESTCHESTER FIRE INSURANCE )<br>COMPANY, )<br>　　　　　　　　　　　　　　　 )<br>　　　Defendant and Counter-Plaintiff )<br>　　　　　　　　　　　　　　　 ) | CASE NO.  08 C 767<br><br>Judge Ruben Castillo<br><br>Magistrate Judge Arlander Keys<br><br>**JURY TRIAL DEMANDED** |

### <u>SIGMA CHI CORPORATION'S AND SIGMA CHI FOUNDATION'S ANSWER AND AFFIRMATIVE DEFENSES TO WESTCHESTER FIRE INSURANCE COMPANY'S COUNTERCLAIMS</u>

Plaintiffs and Counter-Defendants Sigma Chi Corporation and Sigma Chi Foundation respond to Defendant and Counter-Plaintiff Westchester Fire Insurance Company's counterclaims as follows:

### <u>JURISDICTIONAL ALLEGATION</u>

1.　　This Court has original jurisdiction under 28 USC § 1332 in that it is a civil action between citizens of different states in which the matter in controversy exceeds, exclusive of costs and interest, seventy-five thousand dollars.

**<u>Answer:</u>**　　Admit.

### <u>VENUE</u>

2.　　Venue is proper in the Northern District of Illinois in that Defendants Sigma Chi Foundation and Sigma Chi Corporation are subject to personal jurisdiction in this district at the time the action is commenced, and there is no district in which the action may otherwise be

brought.  (28 USC § 1391(a)(3)).

**Answer:**      Admit.

## THE PARTIES

3.      Westchester Fire. At the time of both the filing of this action and at all relevant times mentioned herein was incorporated under the laws of the state of New York and has its principal place of business in Georgia.  Westchester Fire is and at all relevant time mentioned herein an admitted carrier eligible to do business as an insurer in Illinois.

**Answer:**      Admit the first sentence.    Plaintiffs/Counter-Defendants lack sufficient information to admit or deny the second sentence.

4.      Westchester Fire is informed and believes, and thereupon alleges, that Sigma Chi Foundation is, and at all relevant times hereto was, incorporated under the laws of the state of Colorado, with its principal place of business located at 1714 Hinman Avenue in Evanston, Illinois in Cook County.

**Answer:**      Admit.

5.      Westchester Fire is informed and believes, and thereupon alleges, that Sigma Chi Corporation is, and at all relevant times hereto was, incorporated under the laws of the state of Illinois, with its principal place of business located at 1714 Hinman Avenue in Evanston, Illinois in Cook County.

**Answer:**      Admit.

6.      Westchester Fire is unaware of the true identities, roles or capacities, whether individual, corporate or otherwise, of the Counter-Defendants sued and identified herein as DOES 1 through 10, inclusive.  At such time as the true identities, roles and capacities of said fictitiously named defendants become know to Westchester Fire, Westchester Fire will seek leave of this court to amend this Counterclaim accordingly.

**Answer:**     Plaintiffs/Counter-Defendants have insufficient information to admit or deny paragraph 6.

## THE UNDERLYING CLAIMS

7.     IBM Credit LLC fka IBM Credit Corporation ("IBM Credit") and Network System Technologies, Inc. dba Incentra Solutions of Illinois ("Incentra") separately allege that Sigma Chi Foundation and/or Sigma Chi Corporation (collectively "Sigma Chi") owe damages based upon Sigma Chi's alleged breach of certain contracts for goods and services.

**Answer:**     Admit.

## THE IBM CREDIT CLAIM

8.     In a letter dated February 23, 2007, IBM Credit notified Sigma Chi that it was in default of certain lease/financing agreements (the "Underlying IBM Credit Claim").   In this connection, IBM Credit advised Sigma Chi that unpaid amounts on the account covering all lease/purchase contracts, totaling $1,490,604,00, were due and payable.  IBM Credit demanded immediate payment of $71,805.00 and subsequent timely payments.  (Attached as Exhibit 1 and incorporated by reference herein is a true and correct copy of the February 23, 2007 letter from IBM Credit.)

**Answer:**     Admit that Exhibit 1 is a copy of the February 23, 2007 letter from IBM Credit which was addressed to and received by Sigma Chi Foundation.  Deny the remaining allegations to the extent that they mischaracterize this letter.

## THE INCENTRA CLAIM

9.     In a letter dated May 4, 2007, Incentra, through counsel, notified Sigma Chi that it was in default of the Gridworks Master Services Agreement and certain additional agreements and/or contracts.  Incentra advised that Sigma Chi owed $108,459.93 as of the date of the letter. (Attached as Exhibit 2 and incorporated by reference herein is a true and correct copy of the May 4, 2007 letter from counsel for Incentra.)

**Answer:**        Admit that Exhibit 2 is a copy of the May 4, 2007 letter from Incentra which was received by Sigma Chi Corporation and Sigma Chi Foundation. Deny the remaining allegations to the extent that they mischaracterize this letter.

10.        On or about September 19, 2007, Incentra filed a lawsuit against Sigma Chi Foundation and Sigma Chi Corporation for breach of contract based upon Sigma Chi's non-performance under the above referenced contracts in the action entitled *Network System Technologies, Inc. v. Sigma Chi Foundation et al.* (Circuit Court of DuPage County, Case No. 2007L000988) (Collectively, the May 4, 2007 demand letter and the lawsuit filed in DuPage County constitute the "Underlying Incentra Claim"). In the lawsuit, Incentra brings causes of action for Breach of the Gridworks master Services Agreement and Breach of Service Agreements. Incentra requests damages of at least $84,718.93, plus statutory prejudgment interest, all costs of suit, and such further relief as the Court deems appropriate and just. (Attached as Exhibit 3 and incorporated by reference herein is a true and correct copy of the September 19, 2007 civil complaint filed by Incentra.)

**Answer:**        Admit that Exhibit 3 is a copy of the Complaint filed by Incentra against Sigma Chi Corporation and Sigma Chi Foundation on September 19, 2007. Deny the remaining allegations to the extent that they mischaracterize the Complaint. Further stating, this Complaint was dismissed, pursuant to Plaintiffs/Counter-Defendants' motion to dismiss, on February 21, 2008 with leave to amend. Incentra has not yet filed an Amended Complaint.

11.        Together, the Underlying IBM Credit Claim and the Underlying Incentra Claim constitute the "Underlying Claims" that are the subject of this Counterclaim for Declaratory Judgment.

**Answer:**        Admit.

## THE WESTCHESTER FIRE POLICY

12.        Westchester Fire issued Not-For-Profit Company Management Liability policy number DON G21943885 002 (the "Policy") to Sigma Chi Fraternity, et al. effective September

28, 2006 through September 28, 2007.  The Policy has a $5,000,000 aggregate limit of liability and a $10,000 retention for each covered Claim.  (Attached as Exhibit 4 and incorporated by reference herein is a true and correct copy of the Policy.)

**Answer:**    Admit that Exhibit 4 is a copy of the Policy issued to Sigma Chi.  Deny the remaining allegations to the extent that they mischaracterize the Policy.

13.    Pursuant to Endorsement Number 9 to the Policy, Sigma Chi Corporation and Sigma Chi Foundation are Named Insureds under the Policy.

**Answer:**    Admit.

14.    The Policy includes Insuring Agreements for Management Liability, Employment Practices Liability, and Fiduciary Liability; however, Sigma Chi purchased coverage for Management Liability and Employment Practices Liability only.

**Answer:**    Admit.

15.    Section I.A. of the Policy, the Insuring Agreement related to Management Liability, includes four subsections, specifically addressing coverage for Directors' and Officers' Liability, Company Reimbursement, Company Liability, and Outside Entity Directors' and Officers' Liability.

**Answer:**    Admit that Section I.A. of the Policy relates to "Management Liability" and has four subsections that relate to insurance coverage.  Deny the remaining allegations to the extent they mischaracterize the Policy and/or set forth a legal conclusion to which no response is required.

16.    The Underlying Claims do not involve any actual or alleged wrongdoing by Insured Persons.  Therefore, the insuring language in Section I.A.3. of the Policy addressing Company Liability is the only insuring language that arguably provides coverage for the Underlying Claims.  In this connection, Section I.A.3. of the Policy provides:

The **Insurer** shall pay the **Loss** of the **Company** which the **Company**

becomes legally obligated to pay by reason of a **claim** first made against

it and reported to the **Insurer** during the **Policy Period** or, if elected, the

**Extended Reporting Period**, for any **Wrongful Acts** taking place prior to

the end of the **Policy Period.**

**Answer:**     The first two sentences of paragraph 16 state a legal conclusion and no answer is required.   However, to the extent an answer is required, they are denied. Plaintiffs/Counter-Defendants admit only that the third sentence of paragraph 16 is an accurate excerpt of the Policy and deny the remaining allegations.

17.     The Policy defines Wrongful Act, in relevant part, as "any error, misstatement, misleading statement, act, omission, neglect, or breach of duty actually or allegedly committed or attempted by… the **Company**, with respect to Insuring Agreement A3, **Company** Liability…"

**Answer:**     Plaintiffs/Counter-Defendants admit only that paragraph 17 contains an accurate excerpt of the Policy and deny the remaining allegations.

18.     Section II.P. of the Policy, as modified by Endorsement Number 13, provides, in relevant part:

**Loss** means the damages, judgments, any award of pre-judgment and post-

judgment interest, settlements and **Defense Costs** which the **Insured**

becomes legally obligated to pay on account of any **Claim** first made

against the **Insured** during the **Policy Period** or, if elected, the **Extended**

**Reporting Period**, for **Wrongful Acts** to which this **Policy applies…**

*     *     *

**Loss** does not include:

1.     any amount for which the **Insured** is not financially liable or legally obligated to

pay.

\*   \*   \*

5.      matters uninsurable under the laws pursuant to which this **Policy** is construed;

\*   \*   \*

7.      solely with respect to Insuring Agreement A, Management Liability:

a.      any amount that represents or is substantially equivalent to disgorgement, restitution or recession damages, or forfeiture of any profits or remuneration;

**Answer:**      Paragraph 18 states a legal conclusion and no answer is required. However, to the extent an answer is required, the allegations are denied except Plaintiffs/Counter-Defendants admit only that paragraph 18 contains accurate excerpts of the Policy.

19.      The exclusionary language in Section III.L.1. of the Policy, addressing coverage for Management Liability, provided that Westchester Fire shall not be liable for Loss on account of any Claim:

Alleging, based upon, arising out of, or attributable to the actual or alleged

breach of any oral, written, express or implied contract or agreement.

However, this exclusion shall not apply to the extent that liability would

have attached to the **Company** in the absence of such contract or

agreement, or where such **Claim** is covered entirely under Insuring

Agreement A1, Directors' and Officers' Liability, and A2, **Company**

Reimbursement, and no part of such **Claim** is covered under Insuring

Agreement A3, **Company** Liability.

**Answer:**      Denied.

20.      Pursuant to Section X. of the Policy, DEFENSE AND SETTLEMENT, the duty to defend the Underlying Claims lies with Sigma Chi, not Westchester Fire. Accordingly, Westchester Fire has no duty to defend Sigma Chi in the Underlying Claims.

**Answer:**      Paragraph 20 states a legal conclusion and no answer is required.  However, to the extent that an answer is required, it is denied.

21.    Section X.F. of the Policy specifically provides for Westchester Fire's right to seek reimbursement of defense costs paid by Westchester Fire to the extent that there is no coverage under the Policy for the Underlying Claims.

**Answer:**      Paragraph 21 states a legal conclusion and no answer is required.  However, to the extent that an answer is required, it is denied.

## THE TENDER, RESPONSE AND DECLINATION OF COVERAGE

22.    On or about May 21, 2007, Sigma Chi tendered the Underlying IBM Credit Claim to Westchester Fire under the Policy.

**Answer:**      Deny that it was tendered on May 21, 2007, but admit that it was tendered to Westchester Fire on March 21, 2007.

23.    On or about June 1, 2007, Sigma Chi, through counsel, tendered the Underlying Incentra Claim to Westchester Fire under the policy.

**Answer:**      Deny that it was tendered through counsel and admit the remaining allegations.

24.    On or about June 1, 2007, Westchester Fire issued a declination of coverage letter regarding the Underlying IBM Credit Claim.

**Answer:**      Admit.

25.    On or about June 15, 2007, Westchester Fire issued a declination of coverage letter regarding the Underlying Incentra Claim.

**Answer:**      Admit.

26.    On or about June 21, 2007, Sigma Chi contested Westchester Fire's declinations of coverage for the Underlying Claims, arguing against the application of Section III.L.1. of the Policy.  Upon information and belief, a typographical error in Section III.L. of the Policy forms the sole basis for Sigma Chi's argument for coverage.

**Answer:**    Admit the first sentence of paragraph 26 and admit that Section III.L forms a basis for Sigma Chi's basis for coverage and deny the remainder of the second sentence and specifically deny the existence of an alleged "typographical error."

27.    On or about July 26, 2007, Westchester Fire provided Sigma Chi with a supplemental coverage letter detailing the various reasons why coverage was precluded for the Underlying Claims.   Westchester Fire's July 26, 2007 letter included a comprehensive reservation of Westchester Fire's rights, remedies and defenses.   Further, Westchester Fire invited Sigma Chi to attempt to resolve this dispute in accordance with Section XXII. of the Policy addressing Alternative Dispute Resolution. (Attached as Exhibit 5 and incorporated by reference herein is a true and correct copy of Westchester Fire's July 26, 2007 letter.)

**Answer:**    Admit that Exhibit 5 is a copy of the July 26, 2007 letter from Gordon & Rees, LLP to Hannafan & Hannafan, Ltd.  Deny the remaining allegations to the extent that they mischaracterize this letter.   Further stating, specifically deny that Westchester Fire could reserve any alleged rights, remedies or defenses as a result of its previous denials of coverage.

28.    On or about September 17, 2007, Westchester Fire agreed to withdraw the prior declinations of coverage pending additional investigation and/or the receipt of additional information and documentation from Sigma Chi related to the Underlying Claims.

**Answer:**    Admit only that on September 17, 2007, Westchester Fire sent Sigma Chi a letter withdrawing its prior denials of coverage and agreeing to reimburse and advance Sigma Chi's defense costs.  Deny the remaining allegations.  Further stating, see Sigma Chi's Fifth Affirmative Defense.

29.    On or about September 18, 2007, counsel for Westchester Fire and counsel for Sigma Chi met to discuss the Underlying Claims and coverage generally.   Following the meeting, counsel for Sigma Chi provided counsel for Westchester fire with a single page stating that legal costs incurred by Sigma Chi in the Underlying Claims totaled $63,536.75.

**Answer:**    Admit that, in reliance on Westchester Fire's September 17, 2007 written agreement to reimburse and advance defense costs, on September 18, 2007 counsel for Sigma Chi and counsel for Westchester Fire met to discuss the claims

of IBM and Incentra.  Admit the second sentence and further state that on October 3, 2007, at Westchester Fires Counsel's request, Sigma Chi provided detailed monthly statements of these fees and costs.  Deny the remaining allegations of paragraph 29.

30.    On or about September 27, 2007, Sigma Chi provided Westchester Fire with a copy of the lawsuit filed by Incentra in DuPage County on September 19, 2007.

**Answer:**    Admit.

31.    On or about October 3, 2007, October 26, 2007 and November 12, 2007, Sigma Chi provided Westchester Fire with redacted invoices of legal fees and costs related to the Underlying Claims.

**Answer:**    Admit, but state that the redacted invoices were provided pursuant to Westchester Fire's written agreement in its September 17, 2007 and October 26, 2007 letters to reimburse and advance defense costs to Sigma Chi.  See Sigma Chi's Fifth Affirmative Defense. Further stating, admit that Westchester Fire's counsel suggested and agreed that certain redactions be made.

32.    On or about October 26, 2007, Westchester Fire issued a comprehensive supplemental coverage letter to Sigma Chi, including a mutual non-waiver agreement and a reservation of rights regarding the parties' right to seek declaratory judgment.  Further, pursuant to the language of Section X. of the Policy, Westchester Fire reserved the right to seek reimbursement of any fees and costs paid by Westchester Fire in defending the Underlying Claims.

**Answer:**    Admit only that on October 26, 2007, Westchester Fire sent two letters agreeing to reimburse and advance Sigma Chi's defense costs and also discussed Westchester Fire's "Billing Guidelines."  Deny the remaining allegations to the extent that they mischaracterize these two letters and respectfully deny that Sigma Chi agreed that Westchester Fire could or had any rights to reserve.

33.    On or about November 19, 2007, Westchester fire issued a comprehensive supplemental coverage letter to Sigma Chi reiterating its previous denials of coverage for the underlying claims and advising Sigma Chi of its intention to seek declaratory relief in the

coverage dispute.  Westchester fire included a draft Complaint for Declaratory judgment with the November 19, 2007 correspondence.  Further, Westchester Fire invited Sigma Chi to discuss pre-litigation settlement of the dispute. (Attached as Exhibit 6 and incorporated by reference herein is a true and correct copy of the November 19, 2007 letter.)

**Answer:**    Admit that on November 19, 2007, Westchester Fire sent a copy of Exhibit 6 denying coverage and reneging on its agreement to reimburse and advance defense costs with a draft complaint and invited Sigma Chi to discuss settlement. See Sigma Chi's Fifth Affirmative Defense.  Deny the remaining allegations to the extent that they mischaracterize this letter.

34.    Pursuant to a request by counsel for Sigma Chi, Westchester Fire provided Sigma Chi with non-privileged documents from Westchester Fire's claim and underwriting files on or about November 26, 2007.  Further, on or about November 26, 2007, counsel for Westchester Fire confirmed that the Policy is not a duty to defend policy and that no defense costs were due because of the complete defenses to coverage noted in previous correspondence.  Finally, counsel for the parties discussed the futility of Sigma Chi's argument for payment for defense costs given that the policy specifically provides for Westchester fire's right to seek reimbursement of defense costs paid by Westchester Fire where there is no coverage under the Policy.

**Answer:**    Admit only that Westchester Fire sent Sigma Chi's counsel a packet of documents on or about November 26, 2007.  Deny the remaining allegations of paragraph 34.

35.    On or about November 29, 2007, Sigma Chi requested additional time to consider the merits of the denials of coverage.  (Attached as Exhibit 7 and incorporated by reference herein is a true and correct copy of the November 29, 2007 electronic mail communication from Sigma Chi's counsel to Westchester Fire's counsel requesting additional time to consider the merits of the Westchester Fire's arguments.)

**Answer:**    Admit that Exhibit 7 is a copy of the November 29, 2007 email.  Deny the

remaining allegations to the extent that they mischaracterize this email.

36.    On November 30, 2007, Westchester Fire agreed to postpone filing the Complaint

for Declaratory Judgment.

**Answer:**    Admit only that on November 30, 2007, Westchester Fire agreed to postpone filing its alleged Complaint until December 13, 2007.  Deny the remaining allegations.

37.    The next contact between Westchester Fire and Sigma Chi occurred on or about

February 5, 2008, when counsel for Sigma Chi notified counsel for Westchester Fire that the

subject complaint had been filed by Sigma Chi.

**Answer:**    Admit.

## REQUEST FOR DECLARATORY JUDGMENT

38.    An actual controversy has arisen between the parties with regard to the extent of

their respective rights and obligations under the policy and applicable law.  It is Westchester

Fire's position that it has no duty to indemnify either Sigma Chi Foundation or Sigma Chi

Corporation for any damages or defense expenses related to the Underlying Claims.

**Answer:**    Admit the first sentence.  Admit only that the second sentence states Westchester Fire's current position.  Deny the remaining allegations of paragraph 38.

39.    Westchester Fire is informed and believes, and on that basis alleges, that Sigma

Chi contends that Westchester Fire has a duty to indemnify Sigma Chi for damages and defense

expenses related to the Underlying Claims.

**Answer:**    Deny paragraph 39 as stated.  However, Sigma Chi admits that is has filed a complaint against Westchester Fire seeking certain relief, including damages, insurance coverage and reimbursement and advancement of defense costs under the Policy, related to the Underlying Claims.

40.    Westchester Fire desires a judicial determination pursuant to the respective rights

and duties of the parties and a declaration that its contentions as set forth above are correct.  Such

judicial determinations and declarations are necessary and proper at this time in order that all the parties will be bound by the same interpretation of the Policy and applicable law and may determine their rights and obligations among themselves.

**Answer:**  Admit the first sentence.  The second sentence states a legal conclusion and no response is required.  To the extent a response is required, denied.

## COUNT I

### (Declaratory Judgment Against Sigma Chi Corporation – The Policy does Not Cover Liability Imposed by Contract)

41.  Westchester Fire incorporates by reference the allegations set for the in paragraphs 1 through 40 as though fully set forth herein.

**Answer:**  Plaintiffs/Counter-Defendants repeats their answers to the allegations in paragraphs 1 through 40 as though fully set forth herein.

42.  The insuring language of the Policy, including the phrase "legally obligated to pay," encompasses tort damages, not contract damages.  IBM Credit and Incentra seek only contract damages based upon Sigma Chi's intentional breach of service agreements and certain other express contracts.

**Answer:**  Denied.

## COUNT II

### (Declaratory Judgment Against Sigma Chi Foundation and Sigma Chi Corporation – The Underlying Claims Do Not Allege A Wrongful Act)

43.  Westchester Fire incorporates by reference the allegations set forth in paragraphs 1 through 42 as though fully set forth herein.

**Answer:**  Plaintiffs/Counter-Defendants repeats their answers to the allegations in paragraphs 1 through 42 as though fully set forth herein.

44.  The Policy does not provide indemnity coverage for intentional breaches of contractual obligations.  The Underlying Claims involve intentional breaches of contractual

obligations that were voluntarily assumed by Sigma Chi.

**Answer:**      Denied.

## COUNT III

**(Declaratory Judgment Against Sigma Chi Foundation and Sigma Chi Corporation – The Damages Sought By IBM Credit and Incentra Do Not Constitute Loss)**

45.      Westchester Fire incorporates by reference the allegations set forth in paragraphs 1 through 44 as though fully set forth herein.

**Answer:**      Plaintiffs/Counter-Defendants repeats their answers to the allegations in paragraphs 1 through 44 as though fully set forth herein.

46.      Covered Loss does not include restitution, disgorgement, or damages that are expected or intended from the standpoint of an insured.   The damages sought by IBM Credit and Incentra constitute restitution and/or were expected by Sigma Chi when it voluntarily breached the contracts with IBM Credit and Incentra.

**Answer:**      Denied.

## COUNT IV

**(Declaratory Judgment Against Sigma Chi Foundation and Sigma Chi Corporation – Section III.L. of the Policy Specifically Excludes Coverage for Contract Claims)**

47.      Westchester Fire incorporates by reference the allegations set forth in paragraphs 1 through 46 as though fully set forth herein.

**Answer:**      Plaintiffs/Counter-Defendants repeats their answers to the allegations in paragraphs 1 through 46 as though fully set forth herein.

48.      Section III.L.1. of the Policy specifically excludes coverage for Claims "alleging, based upon, arising out of, or attributable to the actual or alleged breach of any oral, written express or implied contract or agreement."   The allegations made in the underlying Claims are entirely derivative of Sigma Chi's voluntarily assumed duties under the contracts to pay for

equipment and services provided by IBM Credit and Incentra.  Further, liability would not have attached to Sigma Chi in the absence of the contracts.

**Answer:**      Denied.

## COUNT V

**(Declaratory Judgment Against Sigma Chi Foundation and Sigma Chi Corporation – Strong Public Policy Considerations Preclude Coverage for the Underlying Claims)**

49.      Westchester Fire incorporates by reference the allegations set forth in paragraphs 1 through 48 as though fully set forth herein.

**Answer:**      Plaintiffs/Counter-Defendants repeats their answers to the allegations in paragraphs 1 through 48 as though fully set forth herein.

50.      As a matter of public policy, to allow coverage for Sigma Chi's willful and wanton breach of contract would render the Policy meaningless and invite further corporate misbehavior by Plaintiffs/Counter-Defendants in violation of clear public policy enforcing the covenant of good faith and fair dealing inherent in contracts.

**Answer:**      Denied.

**WHEREFORE**, Plaintiffs and Counter-Defendants Sigma Chi Corporation and Sigma Chi Foundation respectfully pray that the Court enter judgment in their favor and against Defendant and Counter-Plaintiff Westchester Fire Insurance Company and dismiss the Complaint as to it with prejudice and award costs in their favor.

## AFFIRMATIVE DEFENSES

Plaintiffs and Counter-Defendants Sigma Chi Corporation and Sigma Chi Foundation assert the following affirmative defenses to each of Westchester Fire's Counterclaims:

## FIRST AFFIRMATIVE DEFENSE

Defendant/Counter-Plaintiff has failed to state a claim for which relief can be granted.

**SECOND AFFIRMATIVE DEFENSE**

Defendant/Counter-Plaintiff's claims are barred by the doctrine of "laches."

**THIRD AFFIRMATIVE DEFENSE**

Defendant/Counter-Plaintiff's claims are barred by the doctrine of "unclean hands."

**FOURTH AFFIRMATIVE DEFENSE**

Defendant/Counter-Plaintiff's claims are barred by the doctrine of equitable estoppel.

**FIFTH AFFIRMATIVE DEFENSE**

In its letters dated September 17, 2007 and its two letters dated October 26, 2007, Westchester Fire agreed to withdraw its prior denials of coverage and agreed to reimburse and advance Sigma Chi's defense costs. Copies of the October 26, 2007 letters are attached as Exhibits 1 and 2.[1]

**SIXTH AFFIRMATIVE DEFENSE**

Westchester Fire failed to take reasonable steps to mitigate damages.

**SEVENTH AFFIRMATIVE DEFENSE**

Westchester Fire's denial of coverage and payment of defense costs under the policy is vexatious and unreasonable in accordance with 215 ILCS 5/155.

**EIGHTH AFFIRMATIVE DEFENSE**

In its letter dated September 17, 2007, and its two letters dated October 26, 2007, Westchester Fire agreed to withdraw its prior denials of coverage and agreed to reimburse and advance Sigma Chi's defense costs. Copies of the October 26, 2007 letters are attached as Exhibits 1 and 2.  Unfortunately, these letters and representations were material facts known by

---

[1] Westchester Fire designated its September 17, 2007 letter as "Confidential" and "For Settlement Purposes Only" even though Sigma Chi does not consider it confidential nor a settlement letter.  Indeed, Westchester Fire specifically refers to its September 17, 2007, agreement to withdraw its prior denials of coverage in paragraph 28 of its Counterclaims.  However, as a precaution, Sigma Chi has not attached Westchester Fire's September 17, 2007, letter to this pleading but will provide the Court a copy at the appropriate time.

Westchester Fire to be false and were intentionally made by Westchester Fire with the intent that Sigma Chi would rely and act upon them. Sigma Chi did not know that these representations were false and had no reason to believe that they were false and reasonably relied upon the misrepresentations and acted to their detriment. Therefore, Westchester Fire's claims are barred by its fraudulent misrepresentations to Sigma Chi.

### NINTH AFFIRMATIVE DEFENSE

Defendant and Counter-Plaintiff's claims are barred by promissory estoppel.

### TENTH AFFIRMATIVE DEFENSE

Defendant and Counter-Plaintiff's claims are barred by waiver.

### ELEVENTH AFFIRMATIVE DEFENSE

Defendant and Counter-Plaintiff's claims are barred by acquiescence.

### JURY DEMAND

Sigma Chi Corporation and Sigma Chi Foundation demand a trial by jury on all counts and issues triable by a jury.

Respectfully submitted,

/s Eric J. Malnar
One of the Attorneys for Sigma Chi
Foundation and Sigma Chi Corporation.

Dated:   April 3, 2008

Michael T. Hannafan
Blake T. Hannafan
Eric J. Malnar
Hannafan & Hannafan, Ltd.
One East Wacker Drive, Suite 2800
Chicago, IL 60601
(312)527-0055
ejm@hannafanlaw.com