# EXHIBIT 2

RYAN T. BROWN
RTBROWN@GORDONREES.COM

# GORDON & REES LLP

ATTORNEYS AT LAW
205 N. MICHIGAN AVENUE
SUITE 2560
CHICAGO, ILLINOIS 60601
PHONE: (312) 565-1400
FAX: (312) 565-6511
WWW.GORDONREES.COM

October 26, 2007

**VIA ELECTRONIC MAIL**

Blake T. Hannafan, Esq.
Hannafan & Hannafan, Ltd.
One East Wacker Drive
Suite 2800
Chicago, IL 60601

| | | |
|---|---|---|
| Re: | Named Insured: | Sigma Chi Fraternity, et al. |
| | Claimants: | IBM Credit LLC; Incentra Solutions, Inc. |
| | Policy No.: | DON G21943885 002 |
| | Policy Period: | September 28, 2006 to September 28, 2007 |
| | ACE Claim Nos.: | JY07J0071577; JY07J0133903 |
| | G&R Matter No.: | 1046395 |

Dear Attorney Hannafan:

As you know, Gordon & Rees LLP has been retained by Westchester Fire Insurance Company ("Westchester Fire") to address coverage issues presented by the above referenced claims ("Claims") brought by IBM Credit LLC and Incentra Solutions, Inc. against Sigma Chi Fraternity and Sigma Chi Foundation (collectively "Sigma Chi"). We understand that you have authority to receive communications on behalf of Sigma Chi. If this understanding is incorrect, or if alternate and/or additional person(s) should receive this and future correspondence regarding coverage for this matter, please advise the undersigned immediately.

Westchester Fire issued Not-For-Profit Company Management Liability insurance policy no. DON G21943885 002 (the "Policy") to Sigma Chi Fraternity, et al. for the policy period of September 28, 2006 to September 28, 2007. The Policy has a limit of liability of $5,000,000 with a $10,000 Retention for each Claim. The Policy is a "claims made and reported" policy, applying only to those claims that are first made against an insured and reported to the insurer during the policy period. We note that this coverage letter should be read in conjunction with the Policy. Further, this letter does not alter the language, terms and/or conditions of the Policy.

Blake T. Hannafan, Esq.
October 26, 2007
Page 2

---

### I. Synopsis of Claims

Based upon the material received to date, we understand that in 2004, Sigma Chi signed a Master Lease Agreement ("MLA") with IBM Credit governing the purchase and lease of certain hardware and software. We understand that in June 2006, Sigma Chi entered into a three year Master Services Agreement ("MSA") with Incentra to provide computer network monitoring/maintenance services for the Headquarters facility. From September through December 2006, Sigma Chi executed various purchase orders, financing agreements and service agreements (collectively, the "disputed contracts) whereby IBM Credit provided Sigma Chi with certain additional hardware and software and Incentra provided Sigma Chi with certain consulting services. We understand that the value of the equipment and services referenced in the disputed contracts totals approximately $1,000,000. We understand that the MLA, MSA, and disputed contracts were executed by Daniel Walker, the former Intellectual Technology Manager for Sigma Chi.

According to Sigma Chi executives, Walker was not authorized to execute the disputed contracts. We understand that after Walker's resignation in January 2007, Sigma Chi notified Incentra and IBM Credit that the contracts were not valid as Walker had no actual or apparent authority to serve as an agent of Sigma Chi. On February 23, 2007, Sigma Chi wrote to Incentra and IBM Credit declining to pay for any of the equipment or services described in the disputed contracts. On March 22, 2007, Sigma Chi requested that IBM Credit arrange for the removal of all disputed hardware/equipment.[1]

On September 19, 2007, Incentra filed a civil complaint against Sigma Chi Corporation in Illinois Circuit Court, Du Page County, alleging 1) breach of the MSA, and 2) breach of the individual service agreements. According to the complaint, Sigma Chi has refused to pay outstanding balances of $83,647.59 in consulting services, $1,071.43 for costs advanced by Incentra, and $23,741.00 due under the MSA for general networking services. We understand that Incentra will argue that Walker had both actual or apparent authority to execute the disputed contracts, and Sigma Chi is liable for the full amount due on all Incentra contracts based upon the acceleration provision in the MSA.

We understand that, to date, IBM Credit has not filed suit against Sigma Chi.

### II. The Policy

Section I. of the Policy includes Insuring Agreements for:

    A. Management Liability,
    B. Employment Practices Liability, and
    C. Fiduciary Liability.[2]

---

[1] On or about September 21, 2007, IBM Credit removed the disputed hardware/equipment.
[2] Sigma Chi purchased coverage for Management Liability and Employment Practices Liability only.

Section I.A. addressing Management Liability is divided into four subsections, including:

A.1. Directors' and Officers' Liability,
A.2. Company Reimbursement,
A.3. Company Liability, and
A.4. Outside Entity Directors' and Officers' Liability.

Westchester Fire and Sigma Chi agree that Insuring Agreement A.3. addressing Company Liability is relevant to the Claims. Further, we agree that the demand letters from IBM Credit and Incentra constitute Claims as defined by Section II.D. of the Policy. However, further to our previous correspondence, we disagree about the interpretation and application of the exclusionary language in Section III.L.1. of the Policy. Whereas Sigma Chi believes that the exclusionary language in Section III.L. is limited to Insuring Agreement A.1., Westchester Fire believes that Section III.L. precludes coverage for claims under Insuring Agreements A.1., A.2., A.3., and A.4., including the Claims brought by IBM Credit and Incentra.

## III. Non-Waiver Agreement

In an effort to amicably resolve the coverage dispute, Westchester Fire has agreed to withdraw the declination of coverage letters previously issued to Sigma Chi. However, Westchester Fire and Sigma Chi agree and acknowledge that neither party has waived or limited its arguments regarding coverage for the Claims under the Policy, at law or in equity. In this connection, Sigma Chi agrees that Westchester Fire retains all of its rights, remedies and defenses regarding the filing, prosecution, and/or defense of any declaratory judgment action involving the above coverage dispute.

## IV. Coverage and Reservation of Rights

Initially, pursuant to the terms of the Policy, the duty to defend the Claims lies with Sigma Chi, not Westchester Fire. In this connection, we note that Section X. of the Policy provides:

> X. DEFENSE AND SETTLEMENT
>
> A. It shall be the duty of the **Insureds** and not the duty of the **Insurer** to defend any **Claim.**
>
> B. The **Insureds** agree not to settle or offer to settle any **Claim**, incur any **Defense Costs** or otherwise assume any contractual obligation or admit any liability with respect to any **Claim** without the prior written consent of the **Insurer**. The **Insurer** shall not be liable for any settlement, **Defense Costs**, assumed obligation or admission to which it has not consented. The **Insureds** shall promptly send to the **Insurer** all settlement demands or offers received by any **Insured** from the claimant(s). However, if the **Insureds** are able

Blake T. Hannafan, Esq.
October 26, 2007
Page 4

        to settle all **Claims** which are subject to a single Retention for an aggregate amount, including **Defense Costs**, not exceeding such Retention, the consent of the **Insurer** shall not be required for the settlement of such **Claims**.

   C.    The **Insurer** shall have the right and shall be given the opportunity to effectively associate with the **Insureds** regarding the defense and negotiation of any settlement of any **Claim**.

   D.    The **Insureds** agree to provide the **Insurer** with all information, assistance and cooperation which the **Insurer** reasonably requests and agree that, in the event of a **Claim**, the **Insureds** will do nothing that shall prejudice the position of the **Insurer** or its potential or actual rights of recovery. The **Insurer** may make any investigation it deems necessary.

   E.    If the **Insurer** recommends a settlement within the **Policy** Limit of Liability which is acceptable to the claimant, but the **Insureds** do not consent to such settlement within 30 days of the date the **Insureds** are first made aware of the potential settlement, the **Insurer's** liability for all **Loss** on account of such **Claim** shall not exceed (i) the amount for which the **Insurer** could have settled such **Claim** plus **Defense Costs** incurred as of the date the potential settlement was proposed in writing by the **Insurer** to the **Insureds** and (ii) 50% of all subsequent covered **Loss** in excess of such amount, the remaining 50% of which shall be borne by the **Insureds** uninsured and at their own risk. However, this subsection does not apply to any potential settlement that is within the Retention.

   F.    The **Insurer** shall, on a quarterly basis, advance on behalf of the **Insureds** covered **Defense Costs** which the **Insureds** have incurred in connection with **Claims** made against them, prior to disposition of such **Claims**. Any advancement of **Defense Costs** shall be subject to the condition that such advanced amounts shall be repaid to the **Insurer** by the **Insureds** severally according to their respective interests if and to the extent the **Insureds** shall not be entitled to coverage for such **Defense Costs** under the terms and conditions of this **Policy**.

Section II.F. of the Policy, as amended by Endorsement 3, provides:

   F.    **Defense Costs** means reasonable and necessary costs, charges, fees and expenses incurred by any **Insured** in defending **Claims** and the premium for appeal, attachment or similar bonds arising.

Blake T. Hannafan, Esq.
October 26, 2007
Page 5

---

>**Defense Costs** also do not include unallocated, routine and ongoing expenses such as the salaries for the **Insured's** and **Insurers** staff attorneys.

Based upon the above, Westchester Fire will review your firm's invoices submitted on October 3, 2007 and fund reasonable and necessary costs, charges, fees and expenses in accordance with the terms and conditions of the Policy. In this connection, we request that you review and adhere to the billing and reporting guidelines applicable to these Claims, forwarded to you under separate cover, and comply with same going forward. The guidelines constitute reasonable requests for information, assistance and cooperation in accordance with Section X.D. of the Policy.

Regarding the applicable Retention for this matter, we note that Section VII.A. of the Policy provides:

> VII.   LIMITS OF LIABILITY
>
> A.   All **Claims** arising out of the same **Wrongful Act** and all **Interrelated Wrongful Acts** of the **Insureds** shall be deemed to be one **Claim**, and such **Claim** shall be deemed to be first made on the date the earliest of such **Claims** is first made, regardless of whether such date is before or during the **Policy Period**. All **Loss** resulting from a single **Claim** shall be deemed a single **Loss**.

Section II.O. of the Policy provides:

> O.   **Interrelated Wrongful Acts** means all **Wrongful Acts** that have as a common nexus any fact, circumstance, situation, event, transaction, cause or series of related facts, circumstances, situations, events, transactions or causes.

Section VIII. of the Policy provides:

> VIII.   RETENTIONS
>
> A.   Except as otherwise provided in this section, the liability of the **Insurer** shall apply only to that part of **Loss** which is excess of the applicable Retention amount shown in Item 3 of the Declarations. Such Retention shall be borne uninsured by the **Insureds** and at their own risk. If different parts of a single **Claim** are subject to different applicable Retentions, the applicable Retentions will be applied separately to each part of such **Loss**, but the sum of such Retentions shall not exceed the largest applicable Retention.

Blake T. Hannafan, Esq.
October 26, 2007
Page 6

---

    B.  A single Retention amount shall apply to **Loss** arising from all **Claims** alleging **Interrelated Wrongful Acts.**

    C.  No Retention shall apply to any **Loss** incurred by any **Insured Person** except when and to the extent that the **Company** has indemnified the **Insured Person.**

  Based upon the above, Westchester Fire will agree that a single $10,000 Retention will apply at this time. However, to the extent we conclusively determine that the IBM Credit Claim and Incentra Claim do not arise out of the same Wrongful Acts or Interrelated Wrongful Acts, Westchester Fire reserves the right to seek payment of separate Retentions for each Claim.

  Our enumeration of specific coverage issues in no way serves to waive or limit the rights that Westchester Fire has or may obtain. In this connection, Sigma Chi and Westchester Fire agree that neither party has waived any right under the Policy, at law or in equity. As we discussed, Westchester Fire reserves the right to supplement and/or amend this letter to address additional coverage issues as they may arise, based upon all of the provisions, terms, conditions, exclusions, endorsements, and definitions found in the Policy and additional facts that may come to their attention. Further, Westchester Fire reserves the right to file and prosecute a declaratory judgment action against Sigma Chi in order to clarify coverage for the Claims under the Policy.

  Nothing stated herein and no further action taken by Westchester Fire or on its behalf should be construed as a waiver of any of its rights under the Policy, at law or in equity. On the contrary, by providing this or any prior correspondence to Sigma Chi, engaging in any prior or future discussions with Sigma Chi regarding coverage and settlement, or paying or agreeing to pay any amount to or on behalf of Sigma Chi, Westchester Fire does not waive any rights that it has under the Policy, at law or in equity, including the right to seek reimbursement of any amounts paid in accordance with Section X.F. of the Policy.

  If you or Sigma Chi have any questions regarding the above, please do not hesitate to contact me. We also invite you or Sigma Chi to provide us with any additional information or documentation that may be pertinent to Westchester Fire's review of coverage for this matter.

              Very truly yours,

              *s/ Ryan T. Brown*

              Ryan T. Brown

RTB:ah
Enclosure

cc:  Robyn L. Dilts, Esq.
    ACE Westchester Specialty Group Claims