UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SIGMA CHI CORPORATION and SIGMA CHI FOUNDATION, <br><br> Plaintiffs and Counter-Defendants, <br><br> v. <br><br> WESTCHESTER FIRE INSURANCE COMPANY, <br><br> Defendant and Counter-Plaintiff. | ) <br> ) <br> ) <br> ) <br> ) Case No. 1:08-cv-00767 <br> ) <br> ) Judge Ruben Castillo <br> ) <br> ) Magistrate Judge Arlander Keyes <br> ) <br> ) |

## MOTION FOR JUDGMENT ON THE PLEADINGS

Pursuant to Fed. R. Civ. P. 12(c), Defendant/Counter-Plaintiff Westchester Fire Insurance Company ("Westchester Fire") moves this Court for an Order granting judgment on the pleadings in favor of Westchester Fire and dismissing the Complaint filed by Plaintiffs/Counter-Defendants Sigma Chi Corporation and Sigma Chi Foundation (collectively "Sigma Chi").

**I.   INTRODUCTION**

The parties seek a determination of their rights under a management liability insurance policy issued by Westchester Fire to Sigma Chi. In addition, Sigma Chi seeks damages and penalties under 215 ILCS 5/155 for alleged vexatious and unreasonable action and/or delay by Westchester Fire. As explained herein, Sigma Chi's claims against Westchester Fire fail as a matter of law. Initially, Sigma Chi's arguments for coverage contradict established Illinois law and basic rules of policy interpretation which provide that liability policies do not cover breach of contract damages. Next, Sigma Chi's demand for advancement of defense costs ignores the declinations of coverage issued by Westchester Fire and the fact that the policy specifically states that the duty to defend lies with Sigma Chi, not Westchester Fire. Further, to the extent that Westchester Fire agreed to advance defense costs, any such agreement was gratuitous, subject to a comprehensive reservation of rights, and in the context of settlement negotiations. Furthermore, any payment of defense costs by Westchester Fire would be futile (and certainly spawn additional litigation) given that the policy specifically provides that Westchester Fire has the right to reimbursement of defense costs for uncovered claims. Finally, penalties under 215 ILCS 5/155 are unwarranted as the clear communication record between the parties evidences that Westchester Fire has acted in good faith in addressing coverage for the underlying claims.

1

## II. STATEMENT OF FACTS

### A. THE WESTCHESTER FIRE POLICY

Westchester Fire issued Not-For-Profit Company Management Liability policy number DON G21943885 002 (the "Policy") to Sigma Chi Fraternity, et al. effective September 28, 2006 through September 28, 2007. [Complaint, ¶ 8, Exhibit 4 to the Counterclaim, Policy, Declarations p. 1.] The Policy has a $5,000,000 aggregate limit of liability and a $10,000 retention for each covered Claim. [Policy, Declarations, p. 1.] Pursuant to Endorsement Number 9 to the Policy, Sigma Chi Corporation and Sigma Chi Foundation are Named Insureds under the Policy. [Policy, Endorsement No. 9.] The Policy includes Insuring Agreements for Management Liability, Employment Practices Liability, and Fiduciary Liability; however, Sigma Chi purchased coverage for Management Liability and Employment Practices Liability only. [Policy, Declarations, pp. 1-2.]

The insuring language in Section I.A.3. of the Policy addressing Company Liability provides:

> The **Insurer** shall pay the **Loss** of the **Company** which the **Company** becomes legally obligated to pay by reason of a **Claim** first made against it and reported to the **Insurer** during the **Policy Period** or, if elected, the **Extended Reporting Period**, for any **Wrongful Acts** taking place prior to the end of the **Policy Period**. [Policy, Form 14385 (09/03), Section I.A.3.]

Section II.BB. of the Policy provides that a Wrongful Act means "any error, act, omission, neglect, or breach of duty actually or allegedly committed or attempted by the **Company**, with respect to Insuring Agreement A3, Company Liability." [Policy, Section II.BB.] Section II.P. of the Policy, as modified by Endorsement Number 13, provides, in part:

> P.   **Loss** means the damages, judgments, any award of pre-judgment and post-judgment interest, settlements and **Defense Costs** which the **Insured** becomes *legally obligated to pay* on account of any **Claim** first made against the **Insured** during the **Policy Period** or, if elected, the **Extended Reporting Period**, for **Wrongful Acts** to which this **Policy** applies…" *(Emphasis added.)*
>
> \*   \*   \*
>
> *Loss* does not include:
>
> 1.   *any amount for which the **Insured** is not financially liable or legally obligated to pay;*
>
> \*   \*   \*

2

       7.      solely with respect to Insuring Agreement A, Management Liability:

            a.    *any amount that represents or is substantially equivalent to disgorgement, restitution or recession damages, or forfeiture of any profits or remuneration.* (Emphasis added.) [Policy, Section II.P.]

Section III.L.1. of the Policy provides:

III.    EXCLUSIONS

    The **Insurer** shall not be liable for **Loss** on account of any **Claim**:

           \*    \*    \*

L.    The following exclusions shall apply to any **Claim** covered, in whole or in part, under Insuring Agreement A, Directors' and Officers' Liability:

    1.    Contract or Agreement

        alleging, based upon, arising out of, or attributable to the actual or alleged breach of any oral, written, express or implied contract or agreement. However, this exclusion shall not apply to the extent that liability would have attached to the **Company** in the absence of such contract or agreement, or where such **Claim** is covered entirely under Insuring Agreement A1, Directors' and Officers' Liability, and A2, **Company** Reimbursement, and no part of such Claim is covered under Insuring Agreement A3, **Company** Liability. [Policy, Section III.L.]

Finally, Section X. of the Policy provides, in part:

X.    DEFENSE AND SETTLEMENT

A.    It shall be the duty of the **Insureds** and not the duty of the **Insurer** to defend any **Claim.**

           \*    \*    \*

F.    …Any advancement of **Defense Costs** shall be subject to the condition that such advanced amounts shall be repaid to the **Insurer** by the **Insureds** severally according to their respective interests if and to the extent the **Insureds** shall not be entitled to coverage for such **Defense Costs** under the terms and conditions of this **Policy**. [Policy, Section X.]

### B. THE UNDERLYING CLAIMS

#### 1. BACKGROUND

In 2004, Sigma Chi signed a Master Lease Agreement ("MLA") with IBM Credit LLC fka IBM Credit Corporation ("IBM Credit") governing the purchase and lease of certain hardware and software. [Exhibit B to the Complaint.] In 2006, Sigma Chi entered into a three year Master Services Agreement ("MSA") with Network System Technologies, Inc. dba Incentra Solutions of Illinois ("Incentra") to provide computer network monitoring/maintenance services for the Sigma Chi Headquarters facility. [Exhibit 3 to the Counterclaim.] From September through December 2006, Sigma Chi executed various purchase orders, financing agreements and service agreements (collectively, the "disputed contracts") whereby IBM Credit provided Sigma Chi with certain additional hardware and software and Incentra provided Sigma Chi with certain consulting services. [Exhibits 1, 2, and 3 to the Counterclaim.] The total alleged value of the equipment and services referenced in the disputed contracts is more than $1,500,000. [Exhibits 1, 2, and 3 to the Counterclaim.] The MLA, MSA, and disputed contracts were executed by Daniel Walker, the former Intellectual Technology Manager for Sigma Chi. [Exhibits 1, 2, and 3 to the Counterclaim.] On February 23, 2007, Sigma Chi notified IBM Credit and Incentra that the contracts were "void and of no force or effect" because Walker was not authorized to execute the disputed contracts. [A true and correct copy of Sigma Chi's February 23, 2007 letter to IBM Credit and Incentra is attached as Exhibit 1.] On March 22, 2007, Sigma Chi, through counsel, notified IBM Credit and Incentra that "[Sigma Chi] will not pay for the equipment or services…" [A true and correct copy of Sigma Chi's March 22, 2007 letter to IBM Credit and Incentra is attached as Exhibit 2.]

#### 2. THE IBM CREDIT CLAIM

In a letter dated February 23, 2007, IBM Credit notified Sigma Chi that it was in default of certain lease/financing agreements (the "Underlying IBM Credit Claim"). [Complaint, ¶ 6, Exhibit 1 to the Counterclaim.] IBM Credit advised Sigma Chi that unpaid amounts on the account covering all lease/purchase contracts, totaling $1,490,604.00, were due and payable. [Complaint, ¶ 6, Exhibit 1 to the Counterclaim.]

#### 3. THE INCENTRA CLAIM

In a letter dated May 4, 2007, Incentra, through counsel, notified Sigma Chi that it was in default of the Gridworks Master Services Agreement and certain additional agreements and/or

4

contracts. Incentra advised Sigma Chi that it owed $108,459.93 as of the date of the letter. [Complaint, ¶ 7, Exhibit 2 to the Counterclaim.] On or about September 19, 2007, Incentra filed a lawsuit against Sigma Chi Foundation and Sigma Chi Corporation alleging breach of express contracts entitled *Network System Technologies, Inc. v. Sigma Chi Foundation et al.* (Circuit Court of DuPage County, Case No. 2007L000988) (collectively, the May 4, 2007 demand letter and the lawsuit filed in DuPage County constitute the "Underlying Incentra Claim"). [Complaint, ¶ 7, Exhibit 3 to the Counterclaim.] In the lawsuit, Incentra brings causes of action for Breach of the Gridworks Master Services Agreement and Breach of Service Agreements. [Exhibit 3 to the Counterclaim.] Incentra requests damages of at least $84,718.93, plus statutory prejudgment interest, all costs of suit, and such further relief as the Court deems appropriate and just. [Complaint, ¶ 7, Exhibit 3 to the Counterclaim.] (Hereinafter, the Underlying IBM Credit Claim and the Underlying Incentra Claim shall be referred to as the "Underlying Claims.")

### C. DECLINATION OF COVERAGE

On or about March 21, 2007, Sigma Chi tendered the Underlying IBM Credit Claim to Westchester Fire under the Policy. [Complaint, ¶ 13.] On or about June 1, 2007, Westchester Fire issued a declination of coverage letter regarding the Underlying IBM Credit Claim. [Complaint, ¶ 13, Exhibit A to the Answer to the Counterclaim.] On or about June 1, 2007, Sigma Chi, through counsel, tendered the Underlying Incentra Claim to Westchester Fire under the Policy. [Complaint, ¶ 14.] On or about June 15, 2007, Westchester Fire issued a declination of coverage letter regarding the Underlying Incentra Claim. [Complaint, ¶ 14.] On or about June 21, 2007, Sigma Chi contested Westchester Fire's declinations of coverage for the Underlying Claims, arguing against the applicability of Section III.L.1. of the Policy to the Underlying Claims. [Complaint, ¶ 14, a true and correct copy of Sigma Chi's June 21, 2007 letter is attached as Exhibit 3.]

On or about July 26, 2007, Westchester Fire provided Sigma Chi with a letter refuting Sigma Chi's arguments for coverage of the Underlying Claims. [Complaint, ¶ 14, Exhibit 5 to the Counterclaim.] Westchester Fire's letter included a comprehensive reservation of rights and invited Sigma Chi to mediate the coverage dispute in accordance with Section XXII. of the Policy addressing Alternative Dispute Resolution. [Exhibit 5 to the Counterclaim, p. 3-4.]

For several months, the parties engaged in settlement discussions in an attempt to resolve the coverage dispute. In this connection, on or about September 17, 2007, Westchester Fire

agreed to withdraw the prior declinations of coverage pending additional settlement discussions between the parties. [Complaint, ¶ 15, a true and correct copy of the September 17, 2007 letter is attached as Exhibit 4.] On or about September 18, 2007, counsel for Westchester Fire and counsel for Sigma Chi met to discuss the Underlying Claims and coverage generally. [Complaint, ¶ 15.] On or about September 27, 2007, Sigma Chi provided Westchester Fire with a copy of the lawsuit filed by Incentra in DuPage County on September 19, 2007. [Exhibit 3 to the Counterclaim.] Westchester Fire initiated a coverage investigation with respect to the lawsuit and confirmed that Incentra's allegations were based entirely upon express contracts. [Exhibit 3 to the Counterclaim.] On or about October 3, 2007, October 26, 2007, and November 12, 2007, Sigma Chi provided Westchester Fire with redacted invoices of legal fees and costs related to both the defense of the Underlying Claims and the coverage dispute. [Complaint, ¶ 15.] Subsequently, on March 18, 2008 and May 27, 2008, Sigma Chi provided Westchester Fire with additional redacted invoices for legal fees and costs through April 2008.

On or about October 26, 2007, Westchester Fire issued a letter to Sigma Chi addressing the coverage dispute. [Complaint, ¶ 16, Exhibit B to the Complaint.] Westchester Fire specifically noted the parties' settlement discussions, the mutual non-waiver agreement, and its express right to seek reimbursement of any fees and costs paid in defending the Underlying Claims pursuant to the language of Section X. of the Policy. [Exhibit B to the Complaint.] On October 26, 2007, under separate cover, Westchester Fire issued a letter to Sigma Chi's counsel generally outlining billing and reporting procedures in accordance with American Bar Association guidelines. [Exhibit A to the Answer to the Counterclaim.]

In mid November 2007, following exchanges with counsel for Sigma Chi, Westchester Fire determined that an amicable resolution of the coverage dispute was unlikely. Thereafter, on or about November 19, 2007, Westchester Fire issued a supplemental coverage letter to Sigma Chi denying coverage for the Underlying Claims and advising Sigma Chi of its intention to seek a judicial determination of the parties' rights under the Policy. [Complaint, ¶ 17, Exhibit 6 to the Counterclaim.] Westchester Fire attached a draft Complaint for Declaratory Judgment to the November 19, 2007 letter. [A true and correct copy of the draft Complaint for Declaratory Judgment is attached as Exhibit 5.] On November 26, 2007, Westchester Fire provided Sigma Chi with copies of non-privileged documents from Westchester Fire's claim and underwriting files. [True and correct copies of the non-privileged documents are attached as Exhibit 6.]

On or about November 29, 2007, Sigma Chi requested additional time to consider the merits of Westchester Fire's coverage position. [Exhibit 7 to the Counterclaim.] Thereafter, Westchester Fire agreed to postpone filing the Complaint for Declaratory Judgment. The next contact between Westchester Fire and Sigma Chi occurred on or about February 5, 2008, when counsel for Sigma Chi notified counsel for Westchester Fire that the subject complaint had been filed by Sigma Chi. Thereafter, Westchester Fire promptly filed a Counterclaim seeking a determination of the parties' rights and obligations under the Policy.

### III.   LEGAL STANDARD

Westchester Fire brings this motion for judgment on the pleadings under Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings may be made where, as is the case here, "the pleadings are closed." Fed. R. Civ. P. 12(c). Like a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a motion for judgment on the pleadings challenges the legal sufficiency of the complaint. By testing whether a plaintiff's complaint can survive as a matter of law, a motion for judgment on the pleadings "may save the parties needless and often considerable time and expense which otherwise would be incurred during discovery and trial." *Alexander v. City of Chicago*, 994 F.2d 333, 336 (7th Cir. 1993).

A motion for judgment on the pleadings is decided based on the same standard as a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *See, e.g., Strigliabotti v. Franklin Resources, Inc.*, 398 F. Supp.2d 1094, 1097 (N.D. Cal 2005). In this connection, a court is limited to the allegations contained in the pleadings themselves. However, documents incorporated by reference into the pleadings and documents attached to the pleading as exhibits are considered part of the pleadings for all purposes. *See* Fed. R. Civ. P. 10(c). Further, documents that a defendant attaches to a motion are considered a part of the pleadings if they are referred to in the plaintiff's complaint and are central to the claim. *Venture Associates Corp. v. Zenith Data Systems Corp.*, 987 F.2d 429, 431 (7th Cir. 1993).

As the moving party, Westchester Fire is entitled to judgment on the pleadings when, assuming the truth of all material facts plead in the complaint, plaintiffs' claims fail as a matter of law. *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1989). The court need not accept as true the conclusory factual allegations, contentions of law, or unreasonable inferences in plaintiffs' complaint. *Beliveau v. Caras*, 873 F. Supp. 1393, 1395-1396 (C.D. Cal. 1995). Illinois law treats the interpretation of an insurance policy and the

7

respective rights and obligations of the insurer and insured as questions of law that the court may resolve summarily. *Roman Catholic Diocese of Springfield in Ill. v. Maryland Cas. Co.*, 139 F.3d 561, 565 (7th Cir. 1998).

## IV. ARGUMENT

### A. THE UNDERLYING CLAIMS ARE NOT COVERED

#### 1. ILLINOIS LAW IS CLEAR THAT LIABILITY INSURANCE POLICIES DO NOT PROVIDE COVERAGE FOR LIABILITY IMPOSED BY CONTRACT

The Policy is not a performance bond or an "all risk" policy. Rather, the Policy is a liability insurance product designed to protect an insured from damages caused by a fortuitous event. Damages that are expected or intended from the standpoint of the insured are not fortuitous, and thereby must be precluded from the coverage under a liability policy. *State Farm Fire & Cas. Co. v. Watters*, 268 Ill. App. 3d 501, 644 N.E.2d 492, 495-496, 205 Ill. Dec. 936 (5th Dist. 1994, *appeal denied*, 161 Ill. 2d 540 (1995). Damages resulting from a breach of contract are expected or intended, and an insured cannot obtain coverage under a liability policy for what is really nothing more than the natural consequence of its business decision. *Travelers Ins. Cos. v. P.C. Quote, Inc.*, 211 Ill. App. 3d 719, 570 N.E.2d 614, 620, 145 Ill. Dec. 138 (1st Dist. 1991). In *P.C. Quote*, the court found that there is no coverage for breach of contract under a liability policy because the insured necessarily expects or intends damage when it refuses to pay for goods and services that it has ordered. *Id*.

Similarly, the Northern District of Illinois, interpreting Illinois law, has held that breach of contract claims do not fall within the scope of coverage provided by liability policies. *Aetna Cas. & Sur. Co. v. Spancrete of Ill., Inc.*, 726 F. Supp. 204, 206 (N.D. Ill. 1989). See also *Deris & Krump Mfg. Co. v. Phoenix Ins. Co.*, 548 F.2d 681 (7th Cir. 1977). In *Spancrete*, the court held that an insurer did not have a duty to indemnify its insured because the damages arose out of the insured's contractual duties, and thus, were not covered under the liability policy. *Id*. at 206.

#### 2. THE CLEAR AND UNAMBIGUOUS LANGUAGE OF THE POLICY PRECLUDES COVERAGE FOR DAMAGES ARISING FROM SIGMA CHI'S BREACH OF CONTRACT

By incorporating defined and consistently interpreted language into the Policy, Westchester Fire has created certainty regarding the risk assumed in order to guard against an insured's creative attempts to expand liability beyond the agreed upon scope of coverage. Sigma

Chi, through the creative arguments of its counsel, should not be allowed to expand liability to include breach of contract damages that are clearly beyond the agreed upon scope of coverage.

### a.     The Policy's Insuring Agreements Are Not Triggered

For Westchester Fire to have any payment obligation under the Policy, Sigma Chi must first prove that the Underlying Claims fall within one or more of the insuring agreements of the Policy. Quite simply, Sigma Chi cannot do so because the Policy's insuring agreements do not encompass breach of contract damages. The insuring language "legally obligated to pay" refers to tort liability, not to damages for breach of contract. *See* Allan D. Windt, *Insurance Claims & Disputes* § 11.07 at 224 (3d ed. 1995). In this connection, the phrase "legally obligated to pay" is synonymous with language that an insurer is obligated to "pay damages for liability imposed by law." *Id.* Both phrases have been uniformly interpreted as referring to liability *ex delicto* as distinguished from *ex contractu*. *Data Specialties, Inc. v. Transcontinental Ins. Co.*, 125 F.3d 909, 913 (5th Cir. 1997). Plainly, liability "imposed by law" (tort liability) is covered, but liability "imposed by contract" (breach of contract) is not covered, regardless of the reason for the breach. See generally *International Surplus Lines Ins. Co. v. Devonshire Coverage Corp.*, 93 Cal. App. 3d 601, 610-11 (1979).

### b.     The Underlying Claims Do Not Involve A Wrongful Act Or Loss As Defined By The Policy

Courts in Illinois and elsewhere consistently have held that a "wrongful act" covered by a liability policy cannot be an intentional act. See *Reliance Ins. Co. of Ill. v. Nick J. Giannini, Inc.*, 158 Ill.App.3d 657, 511 N.E.2d 755, 759, 110 Ill.Dec. 578 (1st Dist. 1987). In this connection, liability insurance policies may provide indemnity coverage for unintentional or negligent breaches of duty, but not intentional breaches of contractual obligations that have been voluntarily assumed. *Oak Park Calabasas Condo. Assoc. v. State Farm Fire & Cas. Co.*, 137 Cal. App. 4th 557, 564, 40 Cal.Rptr.3d 263 (Cal. Ct. App. 2006). Given that the Underlying Claims are based upon intentional acts by Sigma Chi related to its voluntarily assumed contractual obligations, the Underlying Claims are not "… for any Wrongful Acts" as defined by the Policy. Therefore, there can be no coverage for the Underlying Claims under the Policy.

Similarly, damages imposed by contract do not constitute covered "Loss resulting from a Wrongful Act," because damages imposed by contract do not result from the insured's act in refusing to honor its contractual obligations, but from the contract itself. *Waste Corp. of Am.,*

9

*Inc. v. Genesis Ins. Co.*, 382 F. Supp 2d 1349, 1355-1356 (S.D. Fla. 2005). In this connection, damages arising from an insured's failure to meet its contractual obligations fall outside the defined scope of "loss" generally covered by liability insurance policies because covered "loss" will only include liability imposed by tort. Barry R. Ostrager and Thomas R. Newman, *Handbook on Insurance Coverage Disputes* § 7.01 (8th ed. 1995). Furthermore, the Policy's definition of Loss specifically provides that "Loss shall not include … any amount for which the Insured is not...legally obligated to pay." As noted above, the phrase "legally obligated to pay" refers only to tort liability, not to damages for breach of contract. See *Data Specialties, Inc. v. Transcontinental Ins. Co.*, 125 F.3d at 913 (5th Cir. 1997). Finally, the Policy also provides that "Loss does not include…any amount that represents or is substantially equivalent to disgorgement, restitution or recession damages, or forfeiture of any profits or remuneration." Restitution is an equitable remedy under which "a person aggrieved by a breach is entitled to be placed in the position in which he would have been in the defendant had not breached." *See* Black's Law Dictionary 1313 (6th ed. 1996). In light of the above, the Underlying Claims do not involve Loss resulting from a Wrongful Act. Accordingly, there is no coverage under the Policy, and Westchester Fire has no obligation advance Sigma Chi's defense costs.

        c.    <u>**Claims For Breach Of Contract Are Specifically Excluded From Coverage**</u>

Assuming that an insuring agreement in the Policy is triggered, which it is not, Section III.L. of the Policy specifically excludes coverage for breach of contract damages. In this connection, the allegations made in the Underlying Claims are entirely derivative of Sigma Chi's voluntarily assumed duties under the contracts to pay for goods and services provided by IBM Credit and Incentra. *See* Exhibits 1, 2 and 3 to the Counterclaim. Further, liability would not have attached to Sigma Chi in the absence of the contracts. Given that Section III.L.1. of the Policy specifically excludes coverage for Claims "alleging, based upon, arising out of, or attributable to the actual or alleged breach of any oral, written, express or implied contract or agreement," the Underlying Claims are excluded from coverage under the Policy.

Next, we briefly address any argument that the exclusionary language in Section III.L. applies only to Claims under Insuring Agreement A.1. against Directors and Officers. When construing the language of an insurance policy, a court's primary objective is to ascertain and give effect to the intentions of the parties as expressed by the words of the policy. *Cent. Ill.*

*Light Co. v. Home Ins. Co.*, 213 Ill. 2d 141, 153, 821 N.E.2d 206, 213 (2004). To ascertain the meaning of the policy's language and the parties' intent, the court must construe the policy as a whole and take into account the type of insurance purchased, the nature of the risk involved, the reasonable expectations of the parties, and the overall purpose of the contract. *Travelers Ins. Co. v. Eljer Mfg, Inc*., 197 Ill. 2d 278, 292, 757 N.E.2d 481, 258 Ill. Dec. 792 (2001). A court should not allow an insured to torture the policy language in an attempt to find coverage where none otherwise exists; rather, only reasonable interpretations of the policy should be entertained. *Ill. Farmers Ins. Co. v. Hall*, 363 Ill. App. 3d 989, 993, 844 N.E.2d 973, 300 Ill. Dec. 530 (2006).

An interpretation limiting the exclusionary language in Section III.L. to Claims under Insuring Agreement A.1. would violate established rules of policy construction/interpretation in Illinois. *Coles-Moultrie Elec. Coop. v. City of Sullivan*, 304 Ill. App. 3d 153, 159, 709 N.E. 2d 249, 237 Ill. Dec. 263 (1999). Initially, such an interpretation would leave much of the remaining exclusionary language meaningless. Also, such an interpretation would lead to unreasonable and possibly absurd results whereby the Policy is converted into a performance bond. Further, Sigma Chi can have no reasonable expectation of coverage for breach of contract damages under a liability policy purchased to cover errors and omissions.

Finally, and most importantly, even assuming Sigma Chi's interpretation is accepted by the Court, an exclusion cannot expand the insuring agreements beyond their original scope. *August Entm't, Inc. v. Philadelphia Idem. Ins. Co.*, 146 Call. App. 4th 565, 52 Cal. Rptr. 3d. 908, 917-918 (Cal. Ct. App. 2007). "Even in the absence of an express exclusion, courts have held that a claim alleging breach of contract is not covered under a professional liability policy because there is no 'wrongful act' and no 'loss' since the insured is simply being required to pay an amount it agreed to pay." Eric Mills Holmes, *Holmes' Appleman on Insurance 2d* § 146.6 (2003). Accordingly, given that the insuring agreements in the Policy are not triggered by the Underlying Claims, any typographical error in the exclusionary language is nothing more than a red herring raised by Sigma Chi in an attempt to create coverage where none otherwise exists.

### 3. PUBLIC POLICY CONSIDERATIONS PRECLUDE COVERAGE FOR BREACH OF CONTRACT DAMAGES

An agreement to indemnify a person for damages resulting from his or her own intentional conduct, as a general rule, would be contrary to public policy and unenforceable. *Lincoln Logan Mut. Ins. Co. v. Fornshell*, 309 Ill. App. 3d 479, 722 N.E.2d 239, 242 Ill. Dec.

750 (4th Dist. 1999), appeal denied, 192 Ill. 2d 691 (2000). "If a single insured is allowed through intentional acts to consciously control risks covered by the policy, the central concept of insurance is violated." *Id*. As a matter of public policy, "to allow coverage for willful and wanton breach of contact claims would render the contract meaningless. A breach of contract is an uninsurable activity, as to hold otherwise would invite such misbehavior." *WDC Venture v. Hartford Accident & Indem. Co.,* 938 F. Supp. 671, 679 (D. Haw. 1996).

### B.   **WESTCHESTER FIRE HAS NOT VIOLATED 215 ILCS 5/155**

Under Section 155 of the Illinois Insurance Code, an insured must prove that an insurer's action in denying liability, refusing to pay a covered loss, or delaying the settlement of a claim was vexatious and unreasonable. *Buckner v. Causey*, 311 Ill. App. 3d 139, 724 N.E.2d 95, 104-105, 243 Ill. Dec. 786 (1st Dist. 1999). Whether an insurer's conduct was vexatious and unreasonable is determined after examining the totality of circumstances. *Golden Rule Ins. Co. v. Schwartz*, 203 Ill. 2d 456, 786 N.E.2d 1010, 1018, 272 Ill. Dec. 176 (2003). Although the question of what constitutes vexatious and unreasonable conduct is a fact-specific inquiry, the final evaluation of the insurer's conduct is made by the court as a matter of law. *Horning Wire Corp. v. Home Indem. Co.*, 8 F.3d 587, 590 (7th Cir. 1993) (affirming denial of penalties for vexatious conduct).

A wrongful denial of coverage is not enough by itself to warrant statutory penalties under 215 ILCS 5/155; rather, the denial of coverage must be unreasonable and vexatious. *Matsushita Elec. Corp. of Am. v. Home Indem. Co.*, 907 F. Supp. 1193, 1200 (N.D.Ill. 1995). When there is a bona fide dispute as to where an insurance policy provides coverage for a loss, an insurer's failure to fulfill (or its delay in fulfilling) its duties under the insurance policy will not be considered actionable under 215 ILCS 5/155. *Knoll Pharm. Co. v. Auto. Ins. Co. of Hartford*, 210 F. Supp.2d 1017, 1028-29 (N.D. Ill. 2002). Illinois courts have found that a bona fide dispute exists when an insurer relies on Illinois case law to support its coverage position. *Ragan v. Columbia Mut. Ins. Co*., 291 Ill. App. 3d 1088, 684 N.E.2d 1108, 1115, 226 Ill. Dec. 112 (5th Dist. 1997). Further, a bona fide coverage dispute can also exist when an insurer takes a "reasonable legal position on an unsettled issue of law." *Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co*., 200 F.3d 1102, 1110 (7th Cir. 2000).

The communication record noted in the pleadings clearly evidences that there is a bona fide dispute regarding the applicability of Section III.L. of the Policy. In this connection,

Westchester Fire's correspondence to Sigma Chi references the coverage dispute and identifies Illinois case law supporting the position that there can be no coverage for breach of contract damages under the Policy. Further, as noted above, any delay by Westchester Fire in bringing the declaratory judgment action coincided with settlement discussions between the parties and a request from Sigma Chi for additional time to review the merits of Westchester Fire's coverage arguments. Finally, in Illinois, a liability insurer is not liable for attorneys' fees or bad faith damages merely because it litigated, and lost, the issue of whether its policy provided insurance coverage. *Mobil Oil Corp. v. Maryland Cas. Co.*, 224 Ill.Dec. 237, 288 Ill.App.3d 743, 681 N.E.2d 552 (1997). Based upon the above, penalties under 215 ILCS 5/155 are not warranted.

### C. WESTCHESTER FIRE HAS NO "DUTY TO DEFEND" AND SHOULD NOT BE REQUIRED TO ADVANCE DEFENSE COSTS

Section X. of the Policy specifically states that the duty to defend any Claim lies with Sigma Chi, not Westchester Fire. Given that the Policy is not a "duty to defend" policy, Westchester Fire's obligations under the Policy are governed by a "duty to indemnify" standard. The "duty to indemnify" relates to the insurer's duty to satisfy fixed covered loss by an insured. *Gen. Agents Ins. Co. of Am., Inc. v. Midwest Sporting Goods Co.*, 215 Ill. 2d 146, 828 N.E.2d 1092, 1103, 293 Ill. Dec. 594 (2005). In marked contrast to the duty to defend, a duty to indemnify an insured is much narrower for the insurer. *Atl. Mut. Ins. Co. v. Am. Acad. of Orthopedic Surgeons*, 315 Ill. App. 3d 552, 734 N.E.2d 50, 56-57, 248 Ill. Dec. 342 (1st Dist. 2000). The duty to indemnify does not arise unless the policy actually covers the underlying claim and alleged damages. *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 620 N.E.2d 1073, 1081, 189 Ill. Dec. 756 (1993). Therefore, the mere potential for coverage does not trigger a payment obligation. Similarly, simply incurring defense costs does not trigger a payment obligation by the insurer without proper notice of the fixed covered Loss incurred by the insured. Because Sigma Chi has failed to provide Westchester Fire a statement of fixed covered Loss incurred, Westchester Fire has no payment obligation. Regardless, as there is no coverage for the Underlying Claims, Westchester Fire has no obligation under the Policy to advance defense costs or otherwise fund any defense costs or damages incurred by Sigma Chi.

Next, we address whether Westchester Fire has agreed to advance defense costs. Initially, we note that any agreement to pay Sigma Chi's attorneys' fees was prefaced with a

comprehensive reservation of rights in furtherance of pre-litigation settlement. Once it became clear that the parties were unable to amicably resolve the coverage dispute, Westchester Fire promptly reiterated its declination of coverage and advised Sigma Chi of its intention to seek a judicial determination of the parties' rights and obligations in a declaratory judgment action. Any argument that Westchester Fire promised to advance defense costs ignores the settlement context of any agreement, the declinations of coverage, and the "duty to indemnify" standard noted above.

In addition to the above, Westchester Fire maintains that any payment would be futile and lead to additional litigation between the parties given that Section X.F. of the Policy specifically provides that Westchester Fire has the right to reimbursement of defense costs for uncovered Claims. Under Illinois law, an insurer may seek reimbursement of defense costs expended towards uncovered claims where the policy provides such a right. *Gen. Agents Ins. Co. of Am., Inc. v. Midwest Sporting Goods Co.*, 828 N.E.2d at 1103. Where the Policy clearly provides that Westchester Fire has no "duty to defend," Westchester Fire should not be forced to advance defense costs prior to receiving a judicial determination regarding coverage for the Underlying Claims. In the unlikely event that Court determines that coverage exists for the Underlying Claims and/or that Westchester Fire must advance defense costs going forward, we note that Westchester Fire would be entitled to evaluate the reasonableness of the expenses claimed pursuant to the express terms of the Policy. *Platinum Tech., Inc. v. Fed. Ins. Co.*, 282 F.3d 927, 932-933 (7th Cir. 2002). Given the previous dialogue between the parties' attorneys, Westchester Fire anticipates subsequent litigation to determine what amounts constitute "reasonable and necessary" defense costs.

### D. THERE IS NO WAIVER OR ESTOPPEL

Westchester Fire has not waived its right to deny coverage for the Underlying Claims, and Westchester Fire cannot be estopped from raising its coverage defenses. In this connection, waiver involves an intentional relinquishment of a known right. *Western Cas. & Sur. Co. v. Brochu*, 105 Ill. 2d 486, 475 N.E.2d 872, 878, 86 Ill.Dec. 493 (1985). Sigma Chi is unable to point to any words or actions that manifest Westchester Fire's intention to waive its right to deny coverage for the Underlying Claims. To the contrary, the communication record clearly evidences that Westchester Fire continually held the position that there was no coverage for the Underlying Claims, and every correspondence included a detailed reservations of rights,

including language referencing the non-waiver agreement between the parties and Westchester Fire's right to seek reimbursement of any defense costs actually paid.

Similarly, Westchester Fire is not estopped from denying coverage for the Underlying Claims. To establish estoppel, an insured must show that it was in some manner misled by the acts or statements of the insurer, that it relied on this conduct or representation, and that it was prejudiced thereby. *Schoonover v. Am. Family Ins. Co.*, 214 Ill. 3d 33, 572 N.E.2d 1258, 1265, 157 Ill. Dec. 794 (1991). Sigma Chi is unable to meet any of these factors. Initially, as noted above, the communication record is clear and consistent that there is no coverage for the Underlying Claims. In other words, there was no misleading act or statement by Westchester Fire. Next, Sigma Chi has failed to plead that it relied upon any misleading act or statement or that it was prejudiced thereby.

## V.   CONCLUSION

For the reasons set forth above, Westchester Fire is entitled to judgment on the pleadings in its favor on Plaintiffs' claims for breach of contract and violations of Section 155 of the Illinois Insurance Code. The Policy does not provide coverage for Sigma Chi's intentional breaches of contract. Based upon the clear and unambiguous language of the Policy, established Illinois law and strong underlying public policy considerations, there can be no coverage for the Underlying Claims brought by IBM Credit and Incentra. Accordingly, as a matter of law, this Court should conclude that Westchester Fire has no duty to indemnify Sigma Chi for damages and defense expenses related to the Underlying Claims. In this connection, we respectfully request that this Court grant judgment on the pleadings in favor of Westchester Fire and dismiss Sigma Chi's Complaint with prejudice.

Respectfully submitted,

By:   s/ Ryan T. Brown
Attorney for Westchester Fire
Insurance Company

Ryan T. Brown
GORDON & REES LLP
One North Franklin
Suite 1800
Chicago, Illinois 60606
Tel: (312) 565-1400
Fax: (312) 565-6511