# EXHIBIT 6-3

**Dilts, Robyn L**

| | |
|---|---|
| **From:** | Blake Hannafan [bth@hannafanlaw.com] |
| **Sent:** | Friday, April 27, 2007 6:19 PM |
| **To:** | Dilts, Robyn L |
| **Cc:** | mth@hannafanlaw.com |
| **Subject:** | Sigma Chi- Policy # DON G21943885 002 and Claim #JY07J0071577- CONFIDENTIAL |
| **Attachments:** | IBM Credit's Claim Materials.pdf |

Dear Ms. Dilts,

Thank you for taking the time today to discuss our clients' policy and the claims made by IBM Credit, LLC regarding various leases. As you requested, attached is the correspondence that I mentioned this afternoon, including IBM Credit's February 23, 2007, letter to Sigma Chi claiming a default and that almost $1.5 million is now due. In addition, as you will see, IBM Credit has threatened legal action against Sigma Chi. As I told you this afternoon, this letter from IBM Credit constitutes a "Claim" as defined in Sigma Chi's policy, Section II.D.1. Therefore, in addition to Mark Anderson's March 21, 2007, letter to your company, we are again making a demand for insurance coverage under the Policy, including defense costs, on Sigma Chi's behalf.

If you have any questions or need additional information, please contact me. Thank you and have a nice weekend.

Sincerely,

Blake T. Hannafan

Hannafan & Hannafan, Ltd.

One East Wacker Drive

Suite 1208

Chicago, IL. 60601

(312) 527-0055

(312) 527-0220 (fax)

bth@hannafanlaw.com

www.hannafanlaw.com



 *Credit LLC*

1360 René Lévesque W., Montréal, QC, Canada H3G 2W6, 1-888-245-5572

February 23, 2007

Sigma Chi Foundation
Attn: Mark V. Anderson
1714 Hinman Ave
Evanston, IL 60201
U.S.A

Account Number:     8166686

Dear IBM Customer,

IBM Credit LLC hereby notifies you that, because of failure to make payments when due, you are in default of IBM Credit lease agreement and/or IBM Credit financing agreement and supplement number VP0D37327, D00D37027, D00D37051, D00D18153 and VP0D45350.

Since the default has not been rectified and is continuing, IBM Credit LLC, in the exercise of its rights, declares all unpaid billed and unbilled amounts immediately due and payable. Therefore, Sigma Chi Foundation owes IBM Credit LLC a total of $1,490,604.00.

Unless the unpaid billed amount of $71,805.00 is paid within 10 days of receipt of this notice, and then subsequent timely payments are made, the IBM Credit LLC will pursue any legal remedies which it has in regard to the machines, including repossession without interference.

Repossession does not waive the amount due as shown above.

If payment has been made, please disregard this notice. If you should have any questions regarding your account, please contact the IBM business operations manager or customer operations manager responsible for accounts receivable at (888)-245-5572, extension 40290.

Sincerely,

Sylvie Lavoie
IBM CSO Manager



SIGMA CHI
FRATERNITY

INTERNATIONAL HEADQUARTERS
1714 Hinman Avenue, Evanston, IL 60201
t: 847.869.3655
f: 847.869.4906
www.sigmachi.org

February 23, 2007

To The Attention of:  Messrs. Saladin Kurjakovic, Accounts Receivable;
                      Tony Praino, Account Restructuring;
                      Chris W. Hanson, IBM Relationship Manager

IBM Credit LLC
North Castle Drive
Armonk, NY  10504-1785

                                via Email:  saladin@ca.ibm.com;
                                            Praino@us.ibm.com;
                                            Hansoncw@us.ibm.com

To the Attention of:  Messrs. Davie Costello;
                      Robert Wosneski

Incentra Solutions
2050-80 Finley Road
Lombard, IL  60148

                                via Email:  dcostello@incentrasolutions.com;
                                            rwosneski@incentrasolutions.com

Gentlemen:

As you know from your conversations with Mr. Brad Nihls and/or Mr. Ashley Woods of Sigma Chi Corporation and Sigma Chi Foundation respectively, we wish to confirm that the execution of various documents for the lease of equipment and the provision of services by Mr. Daniel Walker was done without authority and without the knowledge of any authorized officer or agent of Sigma Chi Foundation ("Foundation") or Sigma Chi Corporation ("Corporation"). As a result, all of the documents executed by Mr. Daniel Walker and identified further below are considered by both the Foundation and the Corporation to be void and of no force or effect:

Incentra Solutions Proposal NSTQ5171 of September 7, 2006 and the related IBM Credit LLC Document US9B-6TMTLE-4 of September 15, 2006, now #VP0D37327 and

Incentra Solutions Proposal INCQ6473 of December 12, 2006, and the related IBM Credit LLC Documents VP0D45350 of December 14, 2006, and

Incentra Solutions Proposal NSTQ5515 of October 15, 2006, and the related IBM Credit LLC Documents USAB-6UHUZT now D00D37027 of November 2, 2006, and

IBM Credit LLC Document USAB-6UHUP5-2 now D00D37051 of November 2, 2006

Messrs.   Saladin Kurjakovic, Accounts Receivable;
          Tony Praino, Account Restructuring;
          Chris W. Hanson, IBM Relationship Manager;
          Davie Costello;
          Robert Wosneski
February 23, 2007
Page 2

We recently learned of Mr. Walker's unauthorized execution of these documents and their content when our Accounting department advised us of the receipt of unexpected IBM invoices apparently related to the equipment described within these documents.

Although no longer an employee of either organization, Mr. Walker had no authority to bind either organization to these agreements. Moreover, in previous dealings with Incentra Solutions, we advised Incentra representatives that all contracts must be signed by the Foundation CEO, Greg Harbaugh, or Mr. Ashley Woods for the Foundation or Mr. Mark Anderson, President, for the Corporation. Therefore, Mr. Walker had no actual or apparent authority to execute the documents in question nor was he authorized to order the equipment or services described within the documents. As a result, we decline to pay the invoices received from IBM and decline to pay for any of the equipment or services described within the documents.

We do sincerely regret any inconvenience that both Incentra and IBM may experience as a result of Mr. Walker's actions. We will do all we reasonably can to assist you with your prompt removal of any equipment or items delivered as a result of these documents. All arrangements for this removal should be coordinated through Mr. Ashley Woods for the Foundation and Mr. Bradley Nihls for the Corporation.

Sincerely yours,

Greg Harbaugh
President & CEO, Sigma Chi Foundation

Mark V. Anderson
President, Sigma Chi Corporation

Attachments

cc:  Ashley Woods
     Brad Nihls

bcc: Michael T. Hannafan
     Blake Hannafan

# HANNAFAN & HANNAFAN, LTD.

One East Wacker Drive
Suite 1208
Chicago, Illinois 60601
(312) 527-0055
Fax: (312) 527-0220

www.hannafanlaw.com

March 22, 2007

To The Attention of:  Messrs. Saladin Kurjakovic, Accounts Receivable;
Tony Praino, Account Restructuring;
Chris W. Hanson, IBM Relationship Manager

IBM Credit LLC
North Castle Dr.
Armonk, NY 10504-1785

To The Attention of:  Mr. Sylvie Lavoie, IBM CSO Manager

IBM Credit LLC
1360 Rene Levesque W.
Montreal, QC Canada
H3G 2W6

To The Attention of:  Messrs. David Costello;
Robert Wosneski

Incentra Solutions
2050-80 Finley Road
Lombard, IL 60148

To The Attention of:  Karl R. Guest, Esq.

Law Offices of Karl R. Guest
94 Underhill Road
Orinda, CA  94563

Re:  Sigma Chi Foundation- Request to Uninstall Equipment

Gentlemen:

Our firm has been retained by Sigma Chi Foundation and Sigma Chi Corporation
regarding the dispute relating to the alleged contracts identified in Mr. Greg Harbaugh's and Mr.
Mark V. Anderson's February 23, 2007, letter to you.  As you know, in that letter, our clients
told you that they will not pay for the equipment or services described in those documents and
requested that you remove any equipment or items delivered.  Our clients are also in receipt of

000072

Mr. Lavoie's February 23, 2007, letter stating that IBM considers them in default and threatening to repossess the equipment. The alleged agreements provide that in the event of default IBM shall repossess the equipment. Therefore, we want to reiterate that our clients want you to please remove the equipment and items described in the four unauthorized agreements, without jeopardizing their other software and hardware, immediately and will assist you in this removal.

This letter is also to confirm that our clients are only contesting the alleged contracts identified in their February 23, 2007, letter and will continue to honor their obligations under the other contracts with IBM.

Our clients would like to attempt to amicably resolve this situation as soon as possible. Therefore, will you please provide us with the names and phone numbers of your respective counsel or ask them to contact us to discuss this matter. Finally, please direct all future correspondence and communications regarding this matter to either myself or my partner, Michael T. Hannafan.

Very truly yours,

Blake T. Hannafan

Cc: Greg Harbaugh
    Mark V. Anderson
    Bob Jones

2

000073



**ace westchester
specialty group**

ACE Westchester Specialty
Group
500 Colonial Center Parkway
3rd Floor
Roswell, GA 30076
USA

678-795-4374 *tel*
678-795-4081 *fax*

Robyn.Dilts@ace-ina.com
www.ace-ina.com

**Robyn L. Dilts**
*Senior Claims Adjuster*

April 2, 2007                                    **Personal & Confidential**

Mark V. Anderson
Sigma Chi Fraternity
1714 Hinman Avenue
P.O. Box 469
Evanston, IL 60204-0469

|  | | |
|---|---|---|
| *RE:* | **Insured:** | *Sigma Chi Fraternity, et al* |
| | **Policy #:** | *DON G21943885 002* |
| | **Claimant:** | *IBM Credit* |
| | **Claim #:** | *JY07J0071577* |

Dear Mr. Anderson:

This is to acknowledge receipt of your correspondence dated **March 21, 2007** which you have submitted in connection with the above-referenced matter. Presently, we are in the process of establishing a claim file and reviewing the submitted information. I will be handling this claim. Once I complete my initial review of the correspondence, I will contact you to discuss this matter further.

In the interim, we bring your attention to Section X of the **Westchester Fire Insurance** Contract entitled "Defense and Settlement", which requires:

A.      It shall be the duty of the Insureds and not the duty of the Insurer to defend any Claim.

B.      The Insureds agree not to settle or offer to settle any Claim, incur any Defense Costs or otherwise assume any contractual obligation or admit any liability with respect to any Claim without the prior written consent of the Insurer. The Insurer shall not be liable for any settlement, Defense Costs, assumed obligation or admission to which it has not consented. The Insureds shall promptly send to the Insurer all settlement demands or offers received by any Insured from the claimant(s). However, if the Insureds are able to settle all Claims which are subject to a single Retention for an aggregate amount, including Defense Costs, not exceeding such Retention, the consent of the Insurer shall not be required for the settlement of such Claim.

000075



# ace westchester
# specialty group

Accordingly, we will determine our rights and obligations under the **Westchester Fire Insurance** Contract. In an effort to do so, we will need to conduct further investigation in order analyze whether coverage is available for this claim. In this regard, please provide us with any additional materials which are relevant to this matter.

If there are exigent circumstances which require immediate attention, please call me as soon as possible. If you have any questions, please feel free to contact me at either (678) 795-4374 or Robyn.Dilts@ace-ina.com

Sincerely,

*Robyn L. Dilts, Esq.*

Senior Claims Specialist

*LL*

Page 2/2



# SIGMA CHI FRATERNITY

*Mark V. Anderson*
President, Sigma Chi Corporation
mark.anderson@sigmachi.org

March 21, 2007

ACE Westchester Specialty Group
Professional Risk Claims
500 Colonial Center Parkway
Roswell, GA  30076

RE:  Possible Claim against Sigma Chi Foundation / Sigma Chi Corporation
     Policy Number DON G21943885 001

To Whom It May Concern:

I am writing to advise you of the potential claim for leased computer equipment and services by IBM Credit.  The underlining issue is the unauthorized execution of lease contracts by an employee who is no longer employed by Sigma Chi.  The execution of these agreements occurred just prior to his departure from the staff.

I write now simply to make you aware and to advise you of the potential for claim and litigation against Sigma Chi Foundation and Corporation for these unauthorized contract amounts.

If you have any questions regarding this, please do not hesitate to contact the undersigned or Greg Harbaugh, CEO and President, Sigma Chi Foundation.

Sincerely yours,

Mark V. Anderson
President

MVA/js

cc:   Laronna Woolf, Thilman Filippini
      Ann Hodyl, Benefits Administrator
      Greg Harbaugh

000077



ACE Westchester Specialty
Group Claims
500 Colonial Center Parkway
Suite 200
Roswell, GA 30076
USA

678-795-4374 *tel*
678-795-4081 *fax*

robyn.dilts@ace-ina.com
www.ace-ina.com

**Robyn L. Dilts**
*Senior Claims Specialist*

June 15, 2007

<u>VIA CERTIFIED MAIL</u>
<u>RETURN RECEIPT REQUESTED</u>

Blake Hannafan
Hannafan & Hannafan
One East Wacker Drive
Suite 1280
Chicago, IL 60601

|  | | |
|---|---|---|
| Re: | Insured: | Sigma Chi Fraternity |
| | Policy No.: | DON G21943885 002 |
| | Claimant: | Incentra Solutions |
| | Claim No.: | JY07J0133903 |

Dear Mr. Hannafan:

I am writing on behalf of Westchester Fire Insurance Company ("Westchester Fire"), to once again acknowledge receipt of correspondence and materials concerning the above matter. This correspondence is directed to you as the authorized representative of Sigma Chi Fraternity; if this is incorrect please advise accordingly. According to the materials provided, on or about May 4, 2007 Thomas Oddo, as counsel for Incentra Solutions, sent a letter to your attention alleging that Sigma Chi Fraternity/Sigma Chi Foundation had materially breached the Gridworks Master Services Agreement between Incentra and Sigma Chi. Sigma Chi Foundation was added as a Named Insured on the Policy by Endorsement 9. Incentra demanded payment of $108,459.93 from Sigma Chi based on the alleged breach of the agreement. A subsequent letter was sent from Mr. Oddo on May 17, 2007, which demanded payment of the $108,459.93 from Sigma Chi and threatened to file suit if the payment was not made by June 4, 2007 (the "<u>Incentra</u> Claim").

Westchester Fire has not made any determination as to the validity of claimants' allegations nor do we assert that any liability exists.

The purpose of this letter is to regretfully advise you that there is no coverage available for the <u>Incentra</u> Claim under the Policy, based upon our review of the information received to date. In the event there is any additional information that you feel would impact our position, please forward same to my attention.

The Management Liability Insuring Agreement of the ACE Advantage Not-For-Profit Company insurance policy issued to Sigma Chi Fraternity is a claims made and reported policy with a Policy Period of September 28, 2006 to September 28, 2007. The aggregate limit of liability for this Policy is $5,000,000 with a $10,000 retention for each Claim under the Management Liability Insuring Agreement.

Please refer to the Policy Management Liability Insuring Agreements, which state:

I.    INSURING AGREEMENTS

    A.   Management Liability

If Management Liability coverage is purchased as indicated in Item 3 of the Declarations:

    1.   Directors' and Officers' Liability

The Insurer shall pay the Loss of the Insured Persons for which the Insured Persons are not indemnified by the Company and which the Insured Persons have become legally obligated to pay by reason of a Claim first made against the Insured Persons and reported to the Insurer during the Policy Period or, if elected, the Extended Reporting Period, for any Wrongful Acts taking place prior to the end of the Policy Period.

    2.   Company Reimbursement

The Insurer shall pay the Loss of the Company for which the Company has indemnified the Insured Persons and which the Insured Persons have become legally obligated to pay by reason of a Claim first made against the Insured Persons and reported to the Insurer during the Policy Period or, if elected, the Extended Reporting Period, for any Wrongful Acts taking place prior to the end of the Policy Period.

    3.   Company Liability

The Insurer shall pay the Loss of the Company which the Company becomes legally obligated to pay by reason of a Claim first made against it and reported to the Insurer during the Policy Period or, if elected, the Extended Reporting Period, for any Wrongful Acts taking place prior to the end of the Policy Period.

    4.   Outside Entity Directors' and Officers' Liability

The Insurer shall pay the Loss of any Outside Entity Insured Person which the Outside Entity Insured Person is legally obligated to pay by reason of a Claim first made against them and reported to the Insurer during the Policy Period or, if elected, the Extended Reporting Period, for any Wrongful Acts taking place prior to the end of the Policy Period, but only excess of (i) any indemnification provided by an Outside Entity and (ii) any insurance coverage afforded to an Outside Entity or its executives applicable to such Claim.

Please also see Policy Section III. L. 1, which states:

III.   EXCLUSIONS

Page 2/3



The Insurer shall not be liable for Loss on account of any Claim:

    L.  The following exclusions shall apply to any Claim covered, in whole or in part, under Insuring Agreement A, Directors' and Officers' Liability:

        1.  Contract or Agreement

            alleging, based upon, arising out of, or attributable to the actual or alleged breach of any oral, written, express or implied contract or agreement. However, this exclusion shall not apply to the extent that liability would have attached to the Company in the absence of such contract or agreement, or where such Claim is covered entirely under Insuring Agreement A1, Directors' and Officers' Liability, and A2, Company Reimbursement, and no part of such Claim is covered under Insuring Agreement A3, Company Liability.

Pursuant to the above exclusion the Policy does not provide coverage for claims made against the Company for breach of contract or agreement. As the <u>Incentra</u> Claim is based on allegations that Sigma Chi Fraternity materially breached a service agreement between Sigma Chi and Incentra, this matter is not covered under the Policy.

Lastly, Westchester Fire reserves its right to deny coverage based upon grounds other than those expressly set forth in this letter and to supplement and/or amend this letter to address additional coverage issues as they may arise, based upon all of the provisions, terms, conditions, exclusions, endorsements and definitions found in the Policy and additional facts that may come to Westchester Fire's attention. Nothing stated herein and no further action taken by Westchester Fire or on its behalf should be construed as a waiver of any of its rights under the Policy. On the contrary, by providing this or any prior correspondence to the Insured, engaging in any prior or future discussions with the Insured, or paying or agreeing to pay any amount to or on behalf of the Insured, Westchester Fire does not waive any rights that it has under the Policy.

If there are any questions, please do not hesitate to contact me at (678) 795-4374.

Very truly yours,

Robyn L. Dilts
Senior Claims Specialist

000131



## ace westchester specialty group

ACE Westchester Specialty Group
500 Colonial Center Parkway
3rd Floor
Roswell, GA 30076
USA

678-795-4374 *tel*
678-795-4081 *fax*

Robyn.dilts@ace-ina.com
www.ace-ina.com

**Robyn L. Dilts**
*Sr. Claims Specialist*

June 7, 2007                          **Personal & Confidential**

Mark V. Anderson
Sigma Chi Fraternity
1714 Hinman Ave., POB 469
Evanston, IL 60204-0469

         *RE:*   **Insured:**      **Sigma Chi Fraternity**
                 **Policy #:**     **DON G21943885 002**
                 **Claimant:**     **Incentra Solutions**
                 **Claim #:**      **JY07J0133903**

---

Dear Mr. Anderson:

This is to acknowledge receipt of your correspondence dated **June 1, 2007** which you have submitted in connection with the above-referenced matter. Presently, we are in the process of establishing a claim file and reviewing the submitted information. I will be handling this claim. Once I complete my initial review of the correspondence, I will contact you to discuss this matter further.

In the interim, we bring your attention to Section X of the **Westchester Fire Insurance Contract** entitled "Defense and Settlement", which requires:

A. It shall be the duty of the **Insureds** and not the duty of the **Insurer** to defend any **Claim** .

B. The **Insureds** agree not to settle or offer to settle any **Claim**, incur any **Defense Costs** or otherwise assume any contractual obligation or admit any liability with respect to any **Claim** without the prior written consent of the **Insurer**. The **Insurer** shall not be liable for any settlement, **Defense Costs**, assumed obligation or admission to which it has not consented. The **Insureds** shall promptly send to the **Insurer** all settlement demands or offers received by any **Insured** from the claimant(s). However, if the **Insureds** are able to settle all **Claims** which are subject to a single Retention for an aggregate amount, including **Defense Costs**, not exceeding such Retention, the consent of the **Insurer** shall not be required for the settlement of such **Claims**.

Accordingly, we will determine our rights and obligations under the **Westchester Fire Insurance Contract**. In an effort to do so, we will need to conduct further investigation in order analyze whether coverage is available for this claim. In this regard, please provide us with any additional materials which are relevant to this matter.



# ace westchester
# specialty group

If there are exigent circumstances which require immediate attention, please call me as soon as possible. If you have any questions, please feel free to contact me at either (678) 795-4374 or robyn.dilts@ace-ina.com

Sincerely,

*Robyn L. Dilts*

Senior Claims Specialist

/mpl

000123



# SIGMA CHI FRATERNITY

*Mark V. Anderson*
President, Sigma Chi Corporation
mark.anderson@sigmachi.org

June 1, 2007

ACE Westchester Specialty Group
Professional Risk Claims
500 Colonial Center Parkway
Roswell, GA  30076

RE:  Claim against Sigma Chi Foundation / Sigma Chi Corporation / Sigma Chi Fraternity
     Policy Number DON G21943885 002

To Whom It May Concern:

I am writing to advise you of the claim for breach of Gridworks Master Services Agreement between Incentra and Sigma Chi as evidenced by the attached May 4 and May 17, 2007 correspondence to Attorney Blake Hannafan.  The underlining issue is the unauthorized execution of these contracts by an employee who is no longer employed by Sigma Chi.  The execution of these Agreements occurred just prior to his departure from the staff.

I write now to make you aware and to advise you of the potential for claim and litigation against the name Sigma Chi insured's for these unauthorized contract amounts.

If you have any questions regarding this, please do not hesitate to contact the undersigned or Greg Harbaugh, CEO and President, Sigma Chi Foundation.

Sincerely yours,

Mark V. Anderson
President


MVA/js

Attachments

cc:   Greg Harbaugh, Sigma Chi Foundation
      Ashley Woods, Sigma Chi Foundation
      Blake Hannafan, Hannafan & Hannafan, Ltd.
      Bob Jones
      Dennis Santoli

International Headquarters
1714 Hinman Avenue, Post Office Box 469 Evanston, Illinois 60204-0469 Telephone: 847 869 3655 Fax: 847 869 4906 www.sigmachi.org

000124

MARK D. ANDERSON
MAUREEN A. BECK
LYNN E. CAGNEY
DANIEL G. COMAN
JAMES A. HOCHMAN*
JOHN A. LIPINSKY
THOMAS G. ODDO
JEFFREY R. PLATT
GEORGE S. WEEMS
   Of Counsel:
JUDITH L. KRANIC**
* Also admitted in Wisconsin
**Also admitted in Ohio

## COMAN & ANDERSON, P.C.
### ATTORNEYS AT LAW
### 2525 CABOT DRIVE
### SUITE 300
### LISLE, ILLINOIS 60532
TELEPHONE: (630) 428-2660
FACSIMILE: (630) 428-2549

THOMAS G. ODDO

PARTNER

TODDO@COMANANDERSON.COM

May 17, 2007

**Via facsimile (312) 527-0220 and**
**First Class Mail**

Mr. Blake T. Hannafan
Hannafan & Hannafan, Ltd.
One East Wacker Drive, Suite 1208
Chicago, Illinois 60601

Re:     **Incentra Solutions v. Sigma Chi Foundation**
        **Final Notice**

Dear Mr. Hannafan:

        As you already know, this firm represents Incentra Solutions of Illinois ("Incentra"). On May 4, 2007, you received notice that your client must pay Incentra $108,459.93 no later than June 4, 2007. In the last voicemail message that I left at your office, I asked you whether or not your client disputes owing this debt. I have not received a response. As a result, if my client does not receive payment in full of the $108,459.93 which is owed on or before May 4, 2007, I have been instructed to file suit against your client.

                                        Very truly yours,

                                        Thomas G. Oddo

cc: Incentra Solutions of Illinois

MARK D. ANDERSON
MAUREEN A. BECK
LYNN E. CAGNEY
DANIEL G. COMAN
JAMES A. HECKMAN*
JOHN A. LIPINSKY
THOMAS G. ODDO
JEFFREY R. PLATT
GEORGE S. WEEMS
Of Counsel:
JUDITH L. KRAMER**
* Also admitted in Wisconsin
** Also admitted in Ohio

# COMAN & ANDERSON, P.C.
### ATTORNEYS AT LAW
## 2525 CABOT DRIVE
## SUITE 300
## LISLE, ILLINOIS 60532
TELEPHONE: (630) 428-2660
FACSIMILE: (630) 428-2549

THOMAS G. ODDO

PARTNER

TODDO@COMANANDERSON.COM

May 4, 2007

**Via facsimile (312) 527-0220 and**
**First Class Mail**

Mr. Blake T. Hannafan
Hannafan & Hannafan, Ltd.
One East Wacker Drive, Suite 1208
Chicago, Illinois 60601

Re:   Incentra Solutions v. Sigma Chi Foundation

Dear Mr. Hannafan:

This firm represents Incentra Solutions of Illinois ("Incentra"). This letter serves as written notice that your client, Sigma Chi Foundation ("Sigma Chi"), has materially breached the May 31, 2006, Gridworks Master Services Agreement ("Agreement") between Incentra and Sigma Chi, as well as various Purchase Orders placed with Incentra by Sigma Chi, through its non-payment of amounts owed under the Agreement and the Purchase Orders. Specifically, your client owes Incentra a total of $108,459.93 as of the date of this letter. The amount owed is evidenced by the attached invoices, which your client has received and ignored without excuse. By this letter, Incentra demands that your client pay the entire balance owed within the next 30 days. If your client fails to make payment in full, Incentra will exercise its right to terminate all services provided under the Agreement. In addition, Incentra will file suit to collect all amounts owed, including interest, attorney's fees, and costs. Your client's immediate attention to this matter is required.

Although it is not relevant to the amount owed to Incentra by your client, I will address the issues raised in your client's February 23, 2007, letter to my client. Put bluntly, your client's contentions are not supported by fact or law. Your client's former IT Director, Daniel Walker, executed and bound Sigma Chi to numerous contracts and agreements on which your client has made payments and, therefore, acknowledged – not the least of which is the above-referenced Agreement. Both Incentra and IBM Credit, LLC ("IBM") have numerous, other documents that prove Mr. Walker's actual authority to enter into contracts on your client's behalf. Moreover, your client's payments on those contracts acknowledged and ratified Mr. Walker's actual authority to contractually bind your client.

05/04/2007  09:56    16364202549              COMAN & ANDERSON                      PAGE  03/21

Mr. Blake T. Hannafan
May 4, 2007
Page 2

However, Mr. Walker's actual or apparent authority to enter into the contracts disputed in your client's February 23, 2007, letter has absolutely no bearing whatsoever on your client's obligation to pay Incentra on the attached invoices. That issue, if it exists, is solely between your client and IBM. Your client cannot withhold payment on independent, undisputed contracts simply because it disputes separate, distinct contracts that it entered into with another party. Such a refusal is willful and vexatious and should subject your client to an award of statutory prejudgment interest. The award of prejudgment interest is in addition to the principal balance already owed, the contractually agreed interest, as well as the attorney's fees and costs your client will owe if this matter is litigated.

Please contact me immediately to make arrangements for payment of the outstanding amounts owed by your client within thirty days of the date of this letter.

Very truly yours,

Thomas G. Oddo

Enclosures
cc: Incentra Solutions of Illinois (without enclosures)



**ace westchester
specialty group**

500 Colonial Center Pkwy
Roswell, GA 30076
United States

678-795-4268    tel
678-795-4150    fax

Andrea.Cox@ace-ina.com
www.ace-ina.com

Andrea Cox, CPCU
*Senior Underwriter*

September 28, 2007

Jimmie Tarver
Tri-City Brokerage of Illinois
550 W. Van Buren, Suite 1500
Chicago, Illinois 60607

RE:   **Insured:**         **Sigma Chi Fraternity, et al**
      Coverage:       Ace Advantage Not-For-Profit Company Management Liability Policy
      Policy No:       G21943885 003
      **Company Paper:**  **Westchester Fire Insurance Company**
      Policy Form:     PF-14384 (09-03)/PF-14385 (09-03)
      Policy Period:    9/28/2007 to 9/28/2008

Dear Jimmie,

We are pleased to enclose the original policy for the captioned account.

As producer of record, you are responsible for collecting and filing all necessary surplus lines taxes, fees and documentation in accordance with state surplus lines laws and/or regulations, if applicable.

Also, as a reminder, all claim notices under this policy should be provided in writing to the following address:

      ACE Westchester Specialty Group
      Attention:  Professional Risk Claims Unit
      500 Colonial Center Parkway, Suite 200
      Roswell, GA 30076

We have reviewed the policy and trust you will find it to be in order. Should you have any questions or concerns, please advise us promptly.

Thank you for working with us on the placement of this risk. We appreciate your support and look forward to working with you in the future.

Regards,

Andrea Cox, CPCU
Senior Underwriter
ACE Westchester-Diversified Risk

*One of the ACE Group of Insurance & Reinsurance Companies*

000128

 Westchester Fire Insurance Company

# ACE Advantage<sup>SM</sup>
## Not-For-Profit Company
## Management Liability Policy
## Declarations

### This Policy is issued by the stock insurance company listed above.

THIS POLICY IS A CLAIMS MADE AND REPORTED POLICY. EXCEPT AS OTHERWISE PROVIDED HEREIN, THIS POLICY COVERS ONLY CLAIMS FIRST MADE AGAINST THE INSUREDS AND REPORTED TO THE INSURER DURING THE POLICY PERIOD. THE INSURER DOES NOT ASSUME ANY DUTY TO DEFEND. PLEASE READ THIS POLICY CAREFULLY.

THE LIMITS OF LIABILITY AVAILABLE TO PAY INSURED LOSS SHALL BE REDUCED BY AMOUNTS INCURRED FOR DEFENSE COSTS. FURTHER NOTE THAT AMOUNTS INCURRED FOR DEFENSE COSTS AND LOSS SHALL ALSO BE APPLIED AGAINST THE RETENTION AMOUNT.

TERMS THAT APPEAR IN BOLD FACE TYPE HAVE SPECIAL MEANING. PLEASE REFER TO SECTION II, DEFINITIONS.

**Policy No.** G21943885 003

**Item 1.** **Named Insured**
Principal Address:
Sigma Chi Fraternity, et al
1714 Hinman Avenue
Evanston, Illinois 60201

**Item 2.** **Policy Period:**
From 12:01 a.m. 9/28/2007 To 12:01 a.m. 9/28/2008
(Local time at the address shown in Item 1)

**Item 3.** Limit(s) of Liability and Retention(s):

A. Single Aggregate Limit of Liability and Retention        Granted: ☒ Yes ☐ No

| Insuring Agreements Purchased: | Limit(s) of Liability: (including **Defense Costs**) | Retention(s): |
|---|---|---|
| ☒ Management Liability | | $10,000 each Claim |
| ☒ Employment Practices Liability | $5,000,000 Aggregate Limit | $10,000 each Claim |
| ☐ Fiduciary Liability | | Not Applicable |

B. Separate Limits of Liability and Retentions        Granted: ☐ Yes ☒ No

| Insuring Agreements Purchased: | Limit(s) of Liability: (including **Defense Costs**) | Retention(s): |
|---|---|---|
| ☐ Management Liability | Not Applicable | Not Applicable |
| ☐ Employment Practices Liability | Not Applicable | Not Applicable |
| ☐ Fiduciary Liability | Not Applicable | Not Applicable |

PF-14384 (9/03)                © ACE USA, 2003

Item 4.    Notice to **Insurer**:

        A.    Notice of **Claim** or **Wrongful Act**:

                ACE Westchester Specialty Group
                Professional Risk Claims
                500 Colonial Center Parkway
                Roswell, GA 30076

        B.    All other notices:

                Chief Underwriting Officer
                ACE Westchester Specialty Group  - Professional Risk
                1325 Avenue of the Americas
                New York, NY 10019

Item 5.    Prior or Pending Proceeding Date:
    ☒ Management Liability         8/29/1996
    ☒ Employment Practices Liability    8/29/1996
    ☐ Fiduciary Liability

Item 6.  **Policy** Premium:

                                $ 14,000.00

Item 7.    **Voluntary Compliance Loss** Sublimit of Liability:    $ Not Applicable

IN WITNESS WHEREOF, the **Insurer** has caused this **Policy** to be countersigned by a duly authorized representative of the **Insurer**.

DATE:    _9/28/2007_

                                      _RB Pntcook_

                                   Authorized Representative

000130