# EXHIBIT 6-4



**ace usa**

# ACE Advantage<sup>SM</sup>
# Not-For-Profit Company
# Management Liability Policy

In consideration of the payment of the premium, in reliance upon the **Application**, and subject to the Declarations and the terms and conditions of this **Policy**, the **Named Insured**, the **Insureds**, and the **Insurer** agree as follows:

I.    INSURING AGREEMENTS

    A.    Management Liability

        If Management Liability coverage is purchased as indicated in Item 3 of the Declarations:

        1.    Management Liability

            The **Insurer** shall pay the **Loss** of the **Insured Persons** for which the **Insured Persons** are not indemnified by the **Company** and which the **Insured Persons** have become legally obligated to pay by reason of a **Claim** first made against the **Insured Persons** and reported to the **Insurer** during the **Policy Period** or, if elected, the **Extended Reporting Period**, for any **Wrongful Acts** taking place prior to the end of the **Policy Period**.

        2.    Company Reimbursement

            The **Insurer** shall pay the **Loss** of the **Company** for which the **Company** has indemnified the **Insured Persons** and which the **Insured Persons** have become legally obligated to pay by reason of a **Claim** first made against the **Insured Persons** and reported to the **Insurer** during the **Policy Period** or, if elected, the **Extended Reporting Period**, for any **Wrongful Acts** taking place prior to the end of the **Policy Period**.

        3.    Company Liability

            The **Insurer** shall pay the **Loss** of the **Company** which the **Company** becomes legally obligated to pay by reason of a **Claim** first made against it and reported to the **Insurer** during the **Policy Period** or, if elected, the **Extended Reporting Period**, for any **Wrongful Acts** taking place prior to the end of the **Policy Period**.

        4.    Outside Entity Management Liability

            The **Insurer** shall pay the **Loss** of any **Outside Entity Insured Person** which the **Outside Entity Insured Person** is legally obligated to pay by reason of a **Claim** first made against them and reported to the **Insurer** during the **Policy Pe riod** or, if elected, the **Extended Reporting Period**, for any **Wrongful Acts** taking place prior to the end of the **Policy Period,** but only excess of (i) any indemnification provided by an **Outside Entity** and (ii) any insurance coverage afforded to an **Outside Entity** or its executives applicable to such **Claim**.

    B.    Employment Practices Liability

        If Employment Practices Liability coverage is purchased as indicated in Item 3 of the Declarations:

        The **Insurer** shall pay the **Loss** of the **Insureds** which the **Insureds** have become legally obligated to pay by reason of a **Claim** first made against them and reported to the **Insurer** during the **Policy Period** or, if elected, the **Extended Reporting Period**, for any **Wrongful Acts** taking place prior to the end of the **Policy Period**, if such **Claim** is brought and maintained by or on behalf of:

        1.    any past, present or prospective full-time, part-time, temporary or leased employee(s) of the **Company**; or

2. any natural person who is a customer or client, or any group of such customers or clients, other than an employee or applicant for employment with the **Company** or any **Outside Entity**.

C. Fiduciary Liability

If Fiduciary Liability coverage is purchased as indicated in Item 3 of the Declarations:

The **Insurer** shall pay the **Loss** of the **Insureds** which the **Insureds** have become legally obligated to pay by reason of a **Claim** first made against them and reported to the **Insurer** during the **Policy Period** or, if elected, the **Extended Reporting Period**, for any **Wrongful Acts** taking place prior to the end of the **Policy Period**.

II.  DEFINITIONS

When used in this **Policy**:

A. **Administration** means (i) counseling employees, beneficiaries or **Plan** participants with respect to any **Plans**, (ii) providing interpretations with respect to any **Plan**, (iii) handing records in connection with any **Plan**, and (iv) enrolling, terminating or canceling employees under any **Plan**.

B. **Annual Premium** means the original annualized premium and the fully annualized amount of any additional premiums charged by the **Insurer** for or during the **Policy Period**.

C. **Application** means all applications, including any attachments thereto, and all other information and materials submitted by or on behalf of the **Insureds** to the **Insurer** in connection with the **Insurer** underwriting this **Policy** or any policy of which this **Policy** is a direct or indirect renewal or replacement. **Application** also includes any public documents filed by the **Company**, prior to inception of this **Policy**, with any federal, state, local or foreign regulatory body. All such applications, attachments, information, materials and documents are deemed attached to and incorporated into this **Policy**.

D. **Claim** means:

1. a written demand against the **Insured** for monetary damages, or, except with respect to Insuring Agreement B Employment Practices Liability, non-monetary or injunctive relief;

2. a civil proceeding against the **Insured** seeking monetary damages or non-monetary or injunctive relief, commenced by the service of a complaint or similar pleading;

3. a criminal proceeding against the **Insured** commenced by a return of an indictment, information, or similar document, or receipt or filing of a notice of charges;

4. an arbitration proceeding against the **Insured** seeking monetary damages or non-monetary or injunctive relief;

5. a civil, administrative or regulatory proceeding against the **Insured** commenced by the filing of a notice of charges, investigative order or similar document; or

6. a civil, administrative or regulatory investigation against the **Insured**, commenced by the service upon or other receipt by the **Insured** of a written notice or subpoena from the investigating authority identifying the **Insured** as an individual against whom a civil, administrative or regulatory investigation or proceeding may be commenced;

including any appeal therefrom. However, notwithstanding the foregoing, with respect to Insuring Agreement B, Employment Practices Liability, **Claim** shall not include a labor or grievance proceeding which is pursuant to a collective bargaining agreement.

E. **Company** means the **Named Insured** and any **Subsidiary**, including any such organization as a debtor-in-possession or the bankruptcy estate of such entity under United States bankruptcy law or an equivalent status under the law of any other jurisdiction.

F. **Defense Costs** means reasonable and necessary costs, charges, fees and expenses incurred by any **Insured** in defending **Claims** and the premium for appeal, attachment or similar bonds arising

out of covered judgments, but with no obligation to furnish such bonds. **Defense Costs** do not include wages, salaries or fees of the directors, officers, trustees or employees of the **Company**.

G. **Domestic Partner** means any natural person qualifying as a domestic partner under the provisions of any applicable federal, state or local law or under the provisions of any formal program established by the **Company**.

H. **ERISA** means the Employee Retirement Income Security Act of 1974, as amended (including but not limited to amendments relating to the Consolidated Omnibus Budget Reconciliation Act of 1985, the Health Insurance Portability and Accountability Act of 1996, the Newborns' and Mothers' Health Protection Act of 1996, the Mental Health Parity Act of 1996, and the Women's Health and Cancer Rights Act of 1998, as amended),or any similar state or local common or statutory law, and any rules and regulations promulgated thereunder. **ERISA** also means, but solely with respect to paragraph 3b of the definition of **Wrongful Act**, Part 164 of the regulations under the Health Insurance Portability and Accountability Act of 1996, popularly known as HIPAA Privacy Regulations.

I. **Executive Officer** means the chairperson, president, chief executive officer, chief financial officer, in-house general counsel and, with respect to Insuring Agreement B, Employment Practices Liability, if purchased, the director of human resources or equivalent position.

J. **Extended Reporting Period** means the period for the extension of coverage, if elected, described in section VI, **Extended Reporting Period**.

K. **Financial Impairment** means the status of the **Company** resulting from (1) the appointment by any state or federal official, agency or court of any receiver, conservator, liquidator, trustee, rehabilitator or similar official to take control of, supervise, manage or liquidate the **Company**, or (2) the **Company** becoming a debtor in possession.

L. **Insured** means:

   1. any **Insured Person**;

   2. Except with respect to Insuring Agreement A1, Management Liability, the **Company**;

   3. Solely with respect to Insuring Agreement C, Fiduciary Liability, the **Company** and **Plans**.

M. **Insured Person** means any person who was, now is or shall become:

   1. a duly elected or appointed director, trustee (excluding a bankruptcy trustee), trustee emeritus, executive director, department head, officer or similar executive of the **Company**, and any member of the management board of a limited liability company;

   2. a person not described in paragraph 1 of this definition who was, is or shall become a full time or part time employee, member of a duly constituted committee, staff or faculty member (salaried or non-salaried) or volunteer of the **Company**. However, such person shall not be considered an **Insured Person** for purposes of Exclusion L3 (**Insured** vs. **Insured**) of this **Policy**; and

   3. Solely for purposes of coverage under Insuring Agreement C, Fiduciary Liability, any one or more natural persons who were, now are, or shall become duly elected or appointed trustees, directors, officers or employees of any **Plan**.

N. **Insurer** means the insurance company providing this insurance.

O. **Interrelated Wrongful Acts** means all **Wrongful Acts** that have as a common nexus any fact, circumstance, situation, event, transaction, cause or series of related facts, circumstances, situations, events, transactions or causes.

P. **Loss** means the damages, judgments, any award of pre-judgment and post-judgment interest, settlements and **Defense Costs** which the **Insured** becomes legally obligated to pay on account of any **Claim** first made against the **Insured** during the **Policy Period** or, if elected, the **Extended Reporting Period**, for **Wrongful Acts** to which this **Policy** applies, including such damages and

**Defense Costs** if incurred in connection with the U.S. Department of Labor's (DOL) Voluntary Fiduciary Correction Program as set forth in the Federal Register, resulting from an **Wrongful Act** occurring during the **Policy Period**, or during the policy period of any policy of which this **Policy** is a continuous renewal, provided that such compliance with such DOL Program results in the **Insured** obtaining a 'No Action' letter from the DOL.

**Loss** does not include:

1. any amount for which the **Insured** is not financially liable or legally obligated to pay;

2. taxes, fines or penalties (solely with respect to Insuring Agreement C, fines or penalties shall not be construed to include the 5% or less, or the 20% or less, civil penalties imposed under Sections 502 (i) or 502(l) of ERISA) or (iii) **Voluntary Compliance Loss** to the extent set forth in Item 7 of the Declarations;

3. punitive or exemplary damages, or the multiple portion of any multiplied damage award;

4. any amount incurred by the **Company**, including its board of directors or any committee of the board of directors, in connection with the investigation or evaluation of any **Claim** or potential **Claim** by or on behalf of the **Company**;

5. matters uninsurable under the laws pursuant to which this **Policy** is construed;

6. employment related benefits, perquisites, stock options, deferred compensation or any other type of compensation other than salary, wages or bonus compensation;

7. solely with respect to Insuring Agreement A, Management Liability:

   a. any amount that represents or is substantially equivalent to disgorgement, restitution or rescission damages, or forfeiture of any profits or remuneration;

   b. the cost of any remedial, preventative or other non-monetary relief, including without limitations any costs associated with compliance with any such relief of any kind or nature imposed by any judgment, settlement or governmental authority.

Q. **Named Insured** means the organization first named in Item 1 of the Declarations, which qualifies as a not-for-profit organization under Section 501(c)(3) of the United States Internal Revenue Code of 1986, as amended.

R. **Outside Entity** means any not-for-profit organization under Section 501(c)(3) of the United States Internal Revenue Code of 1986, as amended, or any other entity listed by endorsement to this **Policy**.

S. **Outside Entity Insured Person** means any duly elected or appointed director, trustee, trustee (excluding a bankruptcy trustee), trustee emeritus, executive director, department head, officer or similar executive of a **Company**, and any member of the management board of a limited liability company, who is or was acting as a director of an **Outside Entity** at the specific written request or direction of such **Company**.

T. **Pension Plan** means any employee pension benefit plan as defined in ERISA, other than:

1. any employee stock ownership plan as defined in ERISA; or

2. any other plan, fund, trust or program which was, is or shall be sponsored solely by the **Named Insured**, or jointly by the **Named Insured** and a labor organization, solely for the benefit of the employees and/or the directors, officers, governors, management committee members, members of the board of managers or natural person general partners of the **Named Insured**, under which investments are made primarily in securities of the **Named Insured**, or whose assets at any time within twelve months prior to the inception date of this **Policy** were comprised of 20% or more of securities of the **Named Insured**.

U. **Plan** means:

© ACE USA, 2003

1. any **Pension Plan** or any **Welfare Plan** which was, is now, or hereafter becomes sponsored solely by the **Company**, or sponsored jointly by the **Company** and a labor organization, solely for the benefit of the employees of the **Company**; provided any **Pension Plan** created or acquired by the **Company** during the **Policy Period** shall be included in this definition only if and to the extent coverage is afforded with respect thereto pursuant to subsection A of section XIII of this **Policy**;

2. any government-mandated insurance for workers' compensation, unemployment, social security or disability benefits for employees of the **Company**, but solely for a **Wrongful Act** as defined in subsection 3b of the definition of **Wrongful Act**; and

3. any deferred compensation plan, supplemental executive retirement plan, top-hat plan, or excess benefit plan for a select group of management or highly compensated directors, officers and/or employees.

V. **Policy** means, collectively, the Declarations, the **Application**, this policy form and any endorsements.

W. **Policy Period** means the period of time specified in Item 2 of the Declarations, subject to prior termination pursuant to section XVI, Termination of the **Policy**.

X. **Securities** means:

1. common or preferred stock or rights, warrants or options in such stock representing an ownership interest in the **Company** or a right to acquire or dispose of such interest; and

2. notes, bonds or debentures representing a debt owed by the **Company** to the extent such instruments would be deemed securities under the federal or state laws of the United States.

Y. **Subsidiary** means any entity that is not formed as a partnership or joint venture of which the **Named Insured** owns or has the right to vote more than 50% of the outstanding voting securities representing the present right to vote for election of directors, or the managers or members of the board of managers or equivalent executives of a limited liability company, on or before the inception date of the **Policy**, either directly or indirectly, In any combination, by one or more other **Subsidiaries**.

Z. **Voluntary Compliance Loss** means:

1. Fines, penalties, sanctions, voluntary correction fees, compliance fees or user fees assessed against or collected from an **Insured** by the Internal Revenue Service (IRS) pursuant to a written agreement to correct an inadvertent **Plan** defect under an Employee Plans Compliance Resolution System, provided that such agreement was entered into in writing by the **Insured** with the IRS during the **Policy Period**, or during the policy period of any policy of which this **Policy** is a continuous renewal; and

2. Penalties assessed by the U.S. Department of Labor or the IRS under a Delinquent Filer Voluntary Compliance Program for inadvertent failure to file Form 5500, provided that the failure to file such Form 5500 occurred during the **Policy Period**, or during the policy period of any policy of which this **Policy** is a continuous renewal.

© ACE USA, 2003

AA. **Welfare Plan** means any employee welfare benefit plan as defined in **ERISA**.

BB. **Wrongful Act** means:

1. With respect to Insuring Agreement A, Management Liability: any error, misstatement, misleading statement, act, omission, neglect, or breach of duty actually or allegedly committed or attempted by:

   a. any **Insured Person** in his or her capacity as such, or any matter claimed against any **Insured Person** solely by reason of his or her serving in such capacity, with respect to Insuring Agreement A1, Management Liability, and Insuring Agreement A2, **Company Reimbursement**;

   b. the **Company**, with respect to Insuring Agreement A3, **Company** Liability; or

   c. any **Outside Entity Insured Person** in his or her capacity as such, or any matter claimed against any **Outside Entity Insured Person** solely by reason of his or her serving in such capacity, with respect to Insuring Agreement A4, **Outside Entity** Management Liability.

2. With respect to Insuring Agreement B, Employment Practices Liability: any **Wrongful Employment Practice** actually or allegedly committed or attempted by the **Insured Persons** in their capacity as such, or by the **Company**.

3. With respect to Insuring Agreement C, Fiduciary Liability:

   a. any violation by any **Insured** of any of the responsibilities, obligations or duties imposed upon fiduciaries under **ERISA** with respect to any **Plan**, or any matter claimed against any **Insured** solely by reason of his, her or its status as a fiduciary under **ERISA**, the **Plan** or the **Named Insured**, but only with respect to the **Plan**, or

   b. any negligent act, error, or omission actually or allegedly committed or attempted by any **Insured** solely in the **Administration of a Plan**.

CC. **Wrongful Employment Practice** means any actual or alleged:

1. wrongful dismissal or discharge or termination of employment, whether actual or constructive,

2. employment related misrepresentation;

3. violation of any federal, state or local laws (common or statutory) concerning employment or discrimination in employment;

4. sexual harassment or unlawful workplace harassment;

5. wrongful deprivation of a career opportunity or failure to employ or promote;

6. wrongful discipline of employees;

7. retaliation against employees for the exercise of any legally protected right or for engaging in any legally protected activity;

8. negligent evaluation of employees;

9. failure to adopt adequate workplace or employment policies and procedures;

10. employment related libel, slander, defamation, or invasion of privacy;

11. employment related wrongful infliction of emotional distress;

12. solely with respect to paragraph 2 of Insuring Agreement B, Employment Practices Liability, any actual or alleged discrimination, sexual harassment, or violation of a natural person's civil rights relating to such discrimination or sexual harassment, whether direct, indirect, intentional or unintentional.

The foregoing definitions shall apply equally to the singular and plural forms of the respective words.

III.    EXCLUSIONS

The **Insurer** shall not be liable for **Loss** on account of any **Claim**:

A.  Bodily Injury and Property Damage

alleging, based upon, arising out of, or attributable to bodily injury, mental anguish or emotional distress (except with respect to any **Claim** under Insuring Agreement B, Employment Practices Liability), sickness, disease or death of any person, or damage to or destruction of any tangible or intangible property including loss of use thereof, whether or not such property is physically injured.

B.  Employee Benefits and Statutes

for an actual or alleged violation of the responsibilities, obligations or duties imposed by (i) any law governing workers' compensation, unemployment insurance, social security, disability or pension benefits or similar law, (ii) the Employee Retirement Income Security Act of 1974; (ii) the Fair Labor Standards Act (except the Equal Pay Act); (iii) the National Labor Relations Act or Labor Management Relations Act; (iv) the Worker Adjustment and Retraining Notification Act; (v) the Consolidated Omnibus Budget Reconciliation Act of 1985 (vi) the Occupational Safety and Health Act, or (vi) any similar state or local laws, and any rules and regulations promulgated thereunder and amendments thereto. However, this exclusion shall not apply to that part of any **Claim** under Insuring Agreement C, Fiduciary Liability; and shall not apply to that part of any **Claim** under Insuring Agreement B, Employment Practices Liability, where such **Claim** is for any actual or alleged retaliatory treatment of the claimant by the **Insured** on account of the claimant's exercise of rights pursuant to any such law, rule or regulation.

C.  Fraud

alleging, based upon, arising out of, or attributable to any fraudulent or criminal act, error or omission, or any intentional or knowing violation of the law; however, this exclusion shall not apply shall not apply unless and until there is a final judgment against any **Insured** as to such conduct. When there is a final judgment, the **Insured** shall reimburse the **Insurer** for any **Defense Costs** advanced.

D.  Personal Injury

alleging, based upon, arising out of, or attributable to injury from false arrest, detention, or imprisonment; wrongful eviction from, wrongful entry into or invasion of right of private occupancy of a dwelling; libel, slander, defamation or disparagement; violation of a right of privacy of a person. However, this exclusion shall not apply to that part of any **Claim** under Insuring Agreement B, Employment Practices Liability.

E.  Personal Profit and Insider Trading

alleging, based upon, arising out of, or attributable to:

1.  the gaining in fact of any profit, remuneration or financial advantage to which any **Insured Person** was not legally entitled; or

2.  an accounting of profits in fact made from the purchase and sale or sale and purchase by any **Insured Person** of securities of the **Company** within the meaning of Section 16(b) of the Securities Exchange Act of 1934, as amended, or similar provisions of any state statutory law, regulation or common law.

F.  Pollution

alleging, based upon, arising out of, or attributable to:

1.  the actual, alleged or threatened discharge, dispersal, release, escape, seepage, migration or disposal of **Pollutants**; or

2.  any direction or request that any **Insured** or **Outside Entity** test for, monitor, clean up, remove, contain, treat, detoxify or neutralize **Pollutants**, or any voluntary decision to do so;

including without limitation any **Claim** by or on behalf of the **Company** or **Outside Entity**, its securities holders or creditors based upon, arising out of, or attributable to the matters described in this exclusion.

However, this exclusion shall not apply to:

(i) that part of any **Claim** under Insuring Agreement B, Employment Practices Liability where such **Claim** is for any actual or alleged retaliatory treatment of the claimant by the **Insured** on account of the claimant's actual or threatened disclosure of the matters described in 1 or 2 above of this exclusion; or

(ii) any **Securities Claim** against **Insured Persons** for which the **Company** does not indemnify the **Insured Persons** either because the **Company** is neither permitted nor required to grant such indemnification or because of the **Financial Impairment** of the **Company**.

For purposes of this exclusion, **Pollutants** mean any substance exhibiting any hazardous characteristics as defined by, or identified on a list of hazardous substances issued by the United States Environmental Protection Agency or any federal, state, county, municipal or local counterpart thereof or any foreign equivalent. Such substances shall include, without limitation, solids, liquids, gaseous or thermal irritants, contaminants or smoke, vapor, soot, fumes, acids, alkalis, chemicals or waste materials. **Pollutants** shall also mean any other air emission, odor, waste water, oil or oil products, infectious or medical waste, asbestos or asbestos products, noise, fungus (including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi, but does not include any fungi intended by the **Insured** for consumption) and electric or magnetic or electromagnetic field.

G.  Prior Notice

alleging, based upon, arising out of, or attributable to:

1.  any **Wrongful Act**, fact, circumstance or situation which has been the subject of any written notice given under any other policy of which this **Policy** is a renewal or replacement or which it succeeds in time; or

2.  any other **Wrongful Act** whenever occurring which, together with a **Wrongful Act** which has been the subject of such notice, would constitute **Interrelated Wrongful Acts**.

H.  Prior or Pending Proceeding

alleging, based upon, arising out of, or attributable to:

1.  any prior or pending litigation or administrative or regulatory proceeding filed on or before the prior or pending proceeding date shown in Item 5 of the Declarations, or the same or substantially the same **Wrongful Act**, fact, circumstance or situation underlying or alleged therein; or

2.  any other **Wrongful Act** whenever occurring which, together with a **Wrongful Act** underlying or alleged in such prior or pending proceeding, would constitute **Interrelated Wrongful Acts**.

I.  **Securities**

alleging, based upon, arising out of, or attributable to any actual or alleged violation of the Securities Act of 1933, the Securities Exchange Act of 1934, the Investment Company Act of 1940, any rules or regulations of the Securities Exchange Commission adopted thereunder, any federal, state or provincial statute or common law regulating securities similar to the foregoing, all as they may be amended, any rules or regulations adopted pursuant thereto, or any other federal, state or provincial law or common law relating to securities. However, this exclusion shall not apply to the issuance by the **Company** of tax exempt bond debt or **Claims** brought by holders of tax exempt bonds.

J.  **Subsidiary Wrongful Acts**

alleging, based upon, arising out of, or attributable to any **Wrongful Act** actually or allegedly committed or attempted by a **Subsidiary** or **Insured Persons** thereof:

1. before the date the **Subsidiary** became an **Insured**;

2. after the date the **Subsidiary** ceased to be an **Insured**.

K.   Wages

alleging, based upon, arising out of, or attributable to any claims for unpaid wages or overtime pay for hours actually worked or labor actually performed by any employee of a **Company**, for improper payroll deductions or any violation of any federal state, local or foreign statutory law or common law that governs the same topic or subject, and any rules, regulations and amendments thereto.

L.   The following exclusions shall apply to any **Claim** covered, in whole or in part, under Insuring Agreement A, Management Liability:

1.   Contract or Agreement

alleging, based upon, arising out of, or attributable to the actual or alleged breach of any oral, written, express or implied contract or agreement. However, this exclusion shall not apply to the extent that liability would have attached to the **Company** in the absence of such contract or agreement, or where such **Claim** is covered entirely under Insuring Agreement A1, Management Liability, and A2, **Company** Reimbursement, and no part of such **Claim** is covered under Insuring Agreement A3, **Company** Liability.

2.   Customer or Client

brought or maintained by or on behalf of or in the right of a customer or client of the **Company** in connection with the actual or alleged rendering or failure to render any service to or for the benefit of such customer or client. However, this exclusion shall not apply to:

a.   that part of **Loss** otherwise covered under Insuring Agreement A1, Management Liability, and A2, **Company** Reimbursement; or

b.   any **Claim** covered in whole or in part under Insuring Agreement B, Employment Practices Liability.

3.   **Insured** vs. **Insured**

brought or maintained by, on behalf of, or in the right of any **Insured Person**, the **Company**, or any bankruptcy or insolvency trustee, receiver, examiner, liquidator or similar official for the **Company**, in any respect and whether or not collusive, or which is brought by any securities holder or member of the **Company**, whether directly or derivatively, unless the **Claim** of such securities holder or member is instigated and continued totally independent of, and totally without the solicitation, assistance, active participation, or intervention of, any **Insured Person** or the **Company**; provided, however, this exclusion shall not apply:

a.   to any **Claim** brought or maintained by any **Insured Person** in the form of a cross-claim or a third-party claim for contribution or indemnity which is part of, and results directly from, a **Claim** that is covered by this **Policy**;

b.   to an employment-related **Claim** brought by an **Insured Person**, other than an **Insured Person** who is or was a member of the Board of Directors (or equivalent governing body) of the **Company**; or

c.   any **Claim** brought by any past **Insured Person** of the **Company** who has not provided service as a duly elected or appointed director, officer, trustee, governor, management committee member, member of the management board, General Counsel, Risk Manager (or equivalent position) of or consultant for the **Company** for at least four years prior to such **Claim** being first made against any person.

4.   Intellectual Property and **Company** Goods and Products

alleging, based upon, arising out of, or attributable to (i) any actual or alleged infringement, misappropriation, or violation of copyright, patent, service marks, trademarks, trade secrets, title or other proprietary or licensing rights or intellectual property of any products, technologies or services, or (ii) any goods or products manufactured, produced, processed, packaged, sold, marketed, distributed, advertised or developed by the **Company**. However, this exclusion shall apply only to that part of **Loss** otherwise covered under Insuring Agreement A3, **Company Liability**.

5.  Outside Directorship Liability

    for a **Wrongful Act** actually or allegedly committed or attempted by any **Insured Person** in his or her capacity as a director, officer, trustee, manager, member of the board of managers or equivalent executive of a limited liability company or employee of, or independent contractor for or in any other capacity or position with any organization other than an **Outside Entity** or the **Company**, even if service in such capacity or position is with the knowledge and consent of, at the direction or request of, or part of the duties regularly assigned to the **Insured Person** by the **Company**.

6.  **Outside Entity** Claims

    brought or maintained by, on behalf of, or in the right of any **Outside Entity**, or any past, present or future duly elected or appointed director, officer, trustee, governor, or management committee member of any **Outside Entity**, or any bankruptcy or insolvency trustee, receiver, examiner, liquidator or similar official for the **Outside Entity**, in any respect and whether or not collusive, or which is brought by any securities holder or member of the **Outside Entity**, whether directly or derivatively, unless the claim of such securities holder or member is instigated and continued totally independent of, and totally without the solicitation, assistance, active participation, or intervention of, any **Outside Entity** or such person.

7.  **Outside Entity** Prior Act

    with respect to any **Outside Entity Insured Person**, for any **Wrongful Act** occurring prior to the effective date of this **Policy** or any **Policy** issued by the **Insurer**, or any affiliate thereof, of which this is a direct or indirect renewal or replacement, if any **Insured**, as of such date, knew or could have reasonably foreseen that such **Wrongful Act** could lead to a **Claim** under this **Policy**.

8.  **Wrongful Employment Practice**

    alleging, based upon, arising out of, or attributable to a **Wrongful Employment Practice**.

M.  The following exclusions shall apply only to any **Claim** covered in whole or in part under Insuring Agreement B, Employment Practices Liability:

1.  Contract or Obligation

    damages determined to be owing under an express written contract with or express written severance obligation of the **Company**; but this exclusion shall not apply if and to the extent that liability would have attached to the **Insureds** in the absence of the written contract with or obligation of the **Company**. However, this exclusion shall not apply to **Defense Costs**.

2.  Compensation Earned or Due

    compensation earned by or due to the claimant in the course of employment but not paid by the **Company**, including any unpaid salary, bonus, hourly pay, overtime pay, severance pay, retirement benefits, vacation days or sick days. However, this exclusion shall not apply to any (i) back pay or front pay allegedly due as the result of discrimination, and (ii) **Defense Costs**.

3.  Medical or Insurance Benefits

    medical or insurance benefits to which the claimant allegedly was entitled or would have been entitled had the **Company** provided the claimant with a continuation or conversion of insurance. However, this exclusion shall not apply to **Defense Costs**.

4. Remedial, Preventative and Non-Monetary Relief

the cost of any remedial, preventive or other non-monetary relief including without limitation (i) any costs associated with compliance with any such relief of any kind or nature imposed by any judgment, settlement, or governmental authority, or (ii) any costs associated with providing any reasonable accommodations required by, made as a result of, or to conform with the requirements of, the Americans with Disabilities Act and any amendments thereto or any similar federal, state or local statute, regulation, or common laws.

N. The following exclusions shall apply only to any **Claim** covered in whole or in part under Insuring Agreement C, Fiduciary Liability:

1. Benefits Due

benefits due or to become due under any **Plan**, benefits which would be due under any **Plan** if such **Plan** complied with all applicable law, or that portion of any settlement or judgment which constitutes such benefits. However, this exclusion shall not apply to **Defense Costs**, or to the extent that recovery for such benefits is based upon a covered **Wrongful Act** by an **Insured Person** and such benefits are payable as a personal obligation of such **Insured Person**.

2. Contract or Agreement

alleging, based upon, arising out of, or attributable to the actual or alleged breach of any oral, written, express or implied contract or agreement. However, this exclusion shall not apply to (i) **Defense Costs**, and (ii) to the extent that liability would have attached to the **Company** in the absence of such contract or agreement, or where the liability was assumed in accordance with or under the trust agreement or equivalent document pursuant to which the **Plan** was established.

3. Contributions Owed

alleging, based upon, arising out of, or attributable to the failure to collect from the **Company** contributions it owed to any **Plan**, or the failure to fund a **Plan** in accordance with ERISA, any similar state or local law, or the **Plan** instrument. However, this exclusion shall not apply to **Defense Costs**.

4. Discrimination

for discrimination in violation of any law other than (i) any law governing workers' compensation, unemployment insurance, social security, disability or pension benefits or similar law, (ii) the Employee Retirement Income Security Act of 1974; (ii) the Fair Labor Standards Act (except the Equal Pay Act); (iii) the National Labor Relations Act or Labor Management Relations Act; (iv) the Worker Adjustment and Retraining Notification Act; (v) the Occupational Safety and Health Act, or (vi) any similar state or local laws, and any rules and regulations promulgated thereunder and amendments thereto.

5. Government Mandated Insurance

alleging, based upon, arising out of, or attributable to any actual or alleged obligation of any Insured pursuant to any government-mandated insurance for worker's compensation, unemployment, social security or disability benefits. However, this exclusion shall not apply to any actual or alleged obligation of any Insured pursuant to the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended.

IV.   SEVERABILITY OF EXCLUSIONS

For the purpose of determining the applicability of exclusions C, Fraud, and E, Personal Profit and Insider Trading, of section III, Exclusions, the **Wrongful Act** of any **Insured Person** shall not be imputed to any other **Insured Person** who had no knowledge of and did not participate in the conduct, and the **Wrongful Act** of any **Executive Officer** shall be imputed to the **Company**.

V.    ESTATES, LEGAL REPRESENTATIVES, AND SPOUSES

The estates, heirs, legal representatives, assigns, spouses and **Domestic Partners** of **Insured Persons** shall be considered **Insureds** under this **Policy**; but coverage is afforded to such estates, heirs, legal representatives, assigns, spouses and **Domestic Partners** only for a **Claim** arising solely out of their status as such and, in the case of a spouse or **Domestic Partner**, where the **Claim** seeks damages from marital community property, jointly held property or property transferred from the **Insured Person** to the spouse or **Domestic Partner**. No coverage is provided for any **Wrongful Act** of an estate, heir, legal representative, assign, spouse or **Domestic Partner**. All of the terms and conditions of this **Policy** including, without limitation, the Retention applicable to **Loss** incurred by **Insured Persons** shown in Item 3 of the Declarations, shall also apply to **Loss** incurred by such estates, heirs, legal representatives, assigns, spouses and **Domestic Partners**.

VI.    EXTENDED REPORTING PERIOD

A.    If the **Insurer** or the **Named Insured** terminates or does not renew this **Policy** (other than for failure to pay a premium when due), the **Named Insured** shall have the right, upon payment of the additional premium described below, to a continuation of the coverage granted by this **Policy** for the **Extended Reporting Period** of one year following the effective date of such termination or nonrenewal, but only with respect to **Claims** first made during the **Extended Reporting Period** and arising from **Wrongful Acts** taking place prior to the effective date of such termination or nonrenewal. This right to continue coverage shall lapse unless written notice of such election is given by the **Named Insured** to the **Insurer** within 30 days following the effective date of termination or nonrenewal. A change in policy terms, conditions, exclusions and/or premiums shall not be considered a nonrenewal for purposes of triggering the rights to the **Extended Reporting Period** .

B.    The **Insurer** shall give the **Named Insured** notice of the premium due for the **Extended Reporting Period** as soon as practicable following the date the **Named Insured** gives such notice of such election and such premium shall be paid by the **Named Insured** to the **Insurer** within 10 days following the date of such notice by the **Insurer** of the premium due. The **Extended Reporting Period** is not cancelable and the entire premium for the **Extended Reporting Period** shall be deemed fully earned and non-refundable upon payment.

C.    The Limit of Liability applicable to the **Extended Reporting Period**, if elected, shall be part of and not in addition to the Limit of Liability shown in Item 3, and the Sublimit of Liability shown in Item 7, of the Declarations for the immediately preceding **Policy Period**. The purchase of the **Extended Reporting Period** shall not increase or reinstate the Limit of Liability or the Sublimit of Liability, which shall be the maximum liability of the **Insurer** for the **Policy Period** and **Extended Reporting Period**, combined.

VII.    LIMITS OF LIABILITY

A.    All **Claims** arising out of the same **Wrongful Act** and all **Interrelated Wrongful Acts** of the **Insureds** shall be deemed to be one **Claim**, and such **Claim** shall be deemed to be first made on the date the earliest of such **Claims** is first made, regardless of whether such date is before or during the **Policy Period**. All **Loss** resulting from a single **Claim** shall be deemed a single **Loss**.

B.    If a single aggregate Limit of Liability is granted as provided in Item 3A of the Declarations, the amount stated in Item 3A of the Declarations shall be the maximum aggregate liability of the **Insurer** for each **Policy Period**, regardless of the number of **Claims** or losses, the coverage(s) purchased, or the time of payment by the **Insurer**. The **Voluntary Compliance Loss** Sublimit of Liability set forth in Item 7 of the Declarations is the maximum aggregate limit of the Insurer's liability for each **Policy Period** and, if elected, the **Extended Reporting Period**, for all **Voluntary Compliance Loss**. The **Voluntary Compliance Loss** Sublimit of Liability is part of, and not in addition to, the Limit of Liability set forth in Item 3A of the Declarations and in no way shall be deemed to increase the Limit of Liability as set forth therein.

C.    If separate Limits of Liability are granted as provided in Item 3B of the Declarations:

1. The maximum aggregate liability of the **Insurer** for all **Loss** under each Insuring Agreement resulting from all **Claims** first made during the **Policy Period** and, if elected, the **Extended Reporting Period**, shall be the respective Limit of Liability for such Insuring Agreement as set forth in Item 3B, regardless of the number of **Claims or Losses** or the time of payment by the **Insurer**. The **Voluntary Compliance Loss** Sublimit of Liability set forth in Item 7 of the Declarations is the maximum aggregate limit of the **Insurer's** liability for each **Policy Period** and, if elected, the **Extended Reporting Period**, for all **Voluntary Compliance Loss**. The **Voluntary Compliance Loss** Sublimit of Liability is part of, and not in addition to, the respective Limit of Liability set forth in Item 3B of the Declarations and in no way shall be deemed to increase the respective Limit of Liability as set forth therein.

2. If more than one Insuring Agreement applies to a **Claim**, the maximum aggregate liability of the **Insurer** under all such Insuring Agreements, combined, with respect to such **Claim** shall be the largest of such applicable Limits of Liability.

3. The Limit of Liability for each Insuring Agreement described in subsection 1 and 2 above are sublimits applicable only to each such Insuring Agreement, and cannot be applied to and do not increase the **Insurer's** maximum liability under any other Insuring Agreement.

D. **Defense Costs** shall be part of and not in addition to the applicable Limit(s) of Liability shown in Item 3 of the Declarations, and **Defense Costs** shall reduce such Limit(s) of Liability. If the Limit(s) of Liability are exhausted by payment of **Loss**, the obligations of the **Insurer** under this **Policy** shall be completely fulfilled and extinguished.

VIII.   RETENTIONS

A. Except as otherwise provided in this section, the liability of the **Insurer** shall apply only to that part of **Loss** which is excess of the applicable Retention amount shown in Item 3 of the Declarations. Such Retention shall be borne uninsured by the **Insureds** and at their own risk. If different parts of a single **Claim** are subject to different applicable Retentions, the applicable Retentions will be applied separately to each part of such **Loss**, but the sum of such Retentions shall not exceed the largest applicable Retention.

B. A single Retention amount shall apply to **Loss** arising from all **Claims** alleging **Interrelated Wrongful Acts**.

C. No Retention shall apply to any **Loss** incurred by any **Insured Person** except when and to the extent that the **Company** has indemnified the **Insured Person**.

IX.    NOTICE

A. The **Insureds** shall, as a condition precedent to their rights under this **Policy**, give to the **Insurer** written notice of any **Claim** made against the **Insureds** as soon as practicable, but in no event later than the termination of the **Policy Period** or, if elected, the **Extended Reporting Period**.

B. If during the **Policy Period** the **Insureds** first become aware of facts or circumstances which may reasonably give rise to a future **Claim** covered under this **Policy**, give written notice to the **Insurer** during the **Policy Period** of:

1. the identity of the potential claimants;

2. a description of the anticipated **Wrongful Act** allegations;

3. the identity of the **Insureds** allegedly involved;

4. the circumstances by which the **Insureds** first became aware of the facts or circumstances;

5. the consequences which have resulted or may result; and

6. the nature of the potential monetary damages and non-monetary relief;

then any **Claim** which arises out of such **Wrongful Act** shall be deemed to have been first made at the time such written notice was received by the **Insurer**. No coverage is provided for fees, expenses and other costs incurred prior to the time such **Wrongful Act** results in a **Claim**.

C.  All notices under any provision of this **Policy** shall be in writing and given by prepaid express courier, certified mail or facsimile transmission properly addressed to the appropriate party. Notice to the **Insureds** may be given to the **Named Insured** at the address shown in Item 1 of the Declarations. Notice to the **Insurer** of any **Claim** or **Wrongful Act** shall be given to the **Insurer** at the address shown in Item 4A of the Declarations. All other notices to the **Insurer** under this **Policy** shall be given to the **Insurer** at the address shown in Item 4B of the Declarations. Notice given as described above shall be deemed to be received and effective upon actual receipt thereof by the addressee or one day following the date such notice is sent, whichever is earlier.

D.  No notice that may be given during the **Policy Period** under section IX, Notice, at subsection B may be given during the **Extended Reporting Period**, if elected.

X.  DEFENSE AND SETTLEMENT

A.  It shall be the duty of the **Insureds** and not the duty of the **Insurer** to defend any **Claim** .

B.  The **Insureds** agree not to settle or offer to settle any **Claim**, incur any **Defense Costs** or otherwise assume any contractual obligation or admit any liability with respect to any **Claim** without the prior written consent of the **Insurer**. The **Insurer** shall not be liable for any settlement, **Defense Costs**, assumed obligation or admission to which it has not consented. The **Insureds** shall promptly send to the **Insurer** all settlement demands or offers received by any **Insured** from the claimant(s). However, if the **Insureds** are able to settle all **Claims** which are subject to a single Retention for an aggregate amount, including **Defense Costs**, not exceeding such Retention, the consent of the **Insurer** shall not be required for the settlement of such **Claims**.

C.  The **Insurer** shall have the right and shall be given the opportunity to effectively associate with the **Insureds** regarding the defense and negotiation of any settlement of any **Claim**.

D.  The **Insureds** agree to provide the **Insurer** with all information, assistance and cooperation which the **Insurer** reasonably requests and agree that, in the event of a **Claim**, the **Insureds** will do nothing that shall prejudice the position of the **Insurer** or its potential or actual rights of recovery. The **Insurer** may make any investigation it deems necessary.

E.  If the **Insurer** recommends a settlement within the **Policy Limit** of Liability which is acceptable to the claimant, but the **Insureds** do not consent to such settlement within 30 days of the date the **Insureds** are first made aware of the potential settlement, the **Insurer's** liability for all **Loss** on account of such **Claim** shall not exceed (i) the amount for which the **Insurer** could have settled such **Claim** plus **Defense Costs** incurred as of the date the potential settlement was proposed in writing by the **Insurer** to the **Insureds**, and (ii) 50% of all subsequent covered **Loss** in excess of such amount, the remaining 50% of which shall be borne by the **Insureds** uninsured and at their own risk. However, this subsection does not apply to any potential settlement that is within the Retention.

F.  The **Insurer** shall, on a quarterly basis, advance on behalf of the **Insureds** covered **Defense Costs** which the **Insureds** have incurred in connection with **Claims** made against them, prior to disposition of such **Claims**. Any advancement of **Defense Costs** shall be subject to the condition that such advanced amounts shall be repaid to the **Insurer** by the **Insureds** severally according to their respective interests if and to the extent the **Insureds** shall not be entitled to coverage for such **Defense Costs** under the terms and conditions of this **Policy**.

XI.  PRESUMPTIVE INDEMNIFICATION

The **Company** agrees to indemnify the **Insured Persons** to the fullest extent permitted by law, taking all steps necessary or advisable in furtherance thereof, including the making in good faith of any application for court approval, the passing of any resolution by the board of directors or shareholders of the **Company**, the amendment of any charter, bylaws, operating agreement or similar documents of

the **Company** or the execution of any contract. The **Company** further agrees to advance **Defense Costs** actually and reasonably incurred by any **Insured Person** in defending any threatened, pending or contemplated action, suit or proceeding prior to a final disposition of any such action, suit or proceeding and shall not require any determination or adjudication, interim or final, of the entitlement of the **Insured Person** to indemnification, where permitted by law to do so. The financial ability of any **Insured Person** to make repayment shall not be a prerequisite to the making of such an advance, and the right to receive advancement of **Defense Costs** herein is a contractual right. The agreements contained in this paragraph are binding upon the **Company** and enforceable by the **Insurer** or the **Insured Persons**.

XII.  OTHER INSURANCE

If any **Loss** covered under this **Policy** is covered under any other valid insurance, then this **Policy** shall cover the **Loss**, subject to its terms and conditions, only to the extent that the amount of the **Loss** is in excess of the amount of such other insurance whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written only as specific excess insurance over the Limit of Liability provided by this **Policy**.

XIII.  MATERIAL CHANGES IN CONDITIONS

A.  Acquisition or Creation of Another Organization or **Plan**

For purposes of this subsection A:

(i)   Publicly-held organization means any company with securities registered with the Securities and Exchange Commission pursuant to the Securities Act of 1933.
(ii)  Privately-held organization means any company which does not have securities registered with the Securities and Exchange Commission pursuant to the Securities Act of 1933, amendments thereto, and rules and regulations promulgated thereunder.
(iii) Not-for-profit organization means any company which qualifies as a not-for-profit organization under Section 501(c)(3) of the United States Internal Revenue Code of 1986, as amended.

Privately-Held or Not-for-Profit Organization

If, during the **Policy Period**, the **Company**:

1.  acquires voting securities in another organization or creates another organization which is a privately-held organization or a not-for-profit organization, which as a result of such acquisition or creation becomes a **Subsidiary**;
2.  acquires any privately-held organization or a not-for-profit organization by merger into or consolidation with the **Company**; or
3.  with respect to the Insuring Agreement C, Fiduciary Liability, if purchased, creates a **Plan**,

then, subject to the terms and conditions of this **Policy** including the paragraph immediately below, such organization, **Plan** and its **Insured Persons** shall be covered under this **Policy** but only with respect to **Claims** for **Wrongful Acts** taking place after such acquisition or creation, unless the **Insurer** agrees to provide coverage by endorsement for **Wrongful Acts** taking place prior to such acquisition, creation or change in qualification.

If the total assets of such acquired organization or **Plan**, as reflected in the then most recent consolidated financial statements of the organization, or most recent financial statements of the **Plan**, exceeds 10% of the total assets of the **Named Insured** and the **Subsidiaries** as reflected in the then most recent consolidated financial statements of the **Named Insured**, or 10% of the total assets of the **Plan** as reflected in its most recent financial statements, the **Named Insured**, as a condition precedent to coverage with respect to such **Insureds**, shall, prior to such acquisition:

a.  give written notice of such acquisition or creation to the **Insurer**;
b.  pay any additional premium required by the **Insurer**; and

PF-14385 (9/03)                    © ACE USA, 2003

c.   agree to any additional terms and conditions of this **Policy** as required by the **Insurer**.

Publicly-Held Organization

If, during the **Policy Period**, the **Company**:

(1)  acquires voting securities in another organization or creates another organization which is a publicly-held organization, which as a result of such acquisition or creation becomes a **Subsidiary**; or
(2)  acquires any publicly-held organization by merger into or consolidation with the **Company**;

the **Named Insured**, as a condition precedent to coverage for such organization, **Plan** and its **Insured Persons**, shall, prior to such acquisition:

(a)  give written notice of such acquisition or creation to the **Insurer**;
(b)  pay any additional premium required by the **Insurer**; and
(c)  agree to any additional terms and conditions of this **Policy** as required by the **Insurer**.

B.   Acquisition of the **Named Insured**

If, during the **Policy Period**, any of the following events occurs:

1.   the acquisition of the **Named Insured**, or of all or substantially all of its assets, by another entity, or the merger or consolidation of the **Named Insured** into or with another entity such that the **Named Insured** is not the surviving entity; or

2.   the obtaining by any person, entity or affiliated group of persons or entities of the right to elect, appoint or designate at least 50% of the directors of the **Named Insured**;

then coverage under this **Policy** will continue in full force and effect until termination of this **Policy**, but only with respect to **Claims** for **Wrongful Acts** taking place before such event. Coverage under this **Policy** will cease as of the effective date of such event with respect to **Claims** for **Wrongful Acts** taking place after such event.

C.   Termination of a **Subsidiary**

If before or during the **Policy Period** an organization ceases to be a **Subsidiary**, coverage with respect to the **Subsidiary** and its **Insured Persons** shall continue until termination of this **Policy**. Such coverage continuation shall apply only with respect to **Claims** for **Wrongful Acts** taking place prior to the date such organization ceased to be a **Subsidiary**.

D.   Termination of a **Plan**

If before or during the **Policy Period** a **Plan** is terminated, sold or run-off, coverage with respect to such **Plan** under Insuring Agreement C, Fiduciary Liability, if purchased, shall continue until termination of this **Policy**. Such coverage continuation shall apply only with respect to **Claims** for **Wrongful Acts** taking place prior to the date such **Plan** was terminated, sold or run-off.

E.   Section 501 (c)(3) Status

If, during the **Policy Period**, the **Company** ceases to qualify as a not-for-profit organization under Section 501(c)(3) of the United States Internal Revenue Code of 1986, as amended, then such organization, **Plan** and its **Insured Persons** shall be covered under this **Policy** only with respect to **Claims** for **Wrongful Acts** taking place prior to such cessation.

F.   Other Organizational Changes

Coverage with respect to an **Insured** or **Plan** under Insuring Agreement C, Fiduciary Liability, if purchased, is afforded only for **Wrongful Acts** committed or allegedly committed after the effective time such **Insured** or **Plan** became an **Insured** and prior to the effective time that such **Insured** or **Plan** ceases to be an **Insured** or **Plan**.

XIV.   PAYMENT PRIORITY

A. If the amount of any **Loss** which is otherwise due and owing by the **Insurer** exceeds the then-remaining Limit of Liability applicable to the **Loss**, the **Insurer** shall pay the **Loss** (subject to such Limit of Liability) in the following priority:

1. First, the **Insurer** shall pay any **Loss** covered under Insuring Agreement A1, Management Liability, in excess of any applicable Retention shown in Item 3 of the Declarations;

2. Second, only if and to the extent the payment under paragraph 1 above does not exhaust the applicable Limit of Liability, the **Insurer** shall pay any **Loss** in excess of the Retention shown in Item 3 of the Declarations covered under any other applicable Insuring Agreement.

B. Subject to the foregoing paragraph, the **Insurer** shall, upon receipt of a written request from the Chief Executive Officer of the **Named Insured**, delay any payment of **Loss** otherwise due and owing to or on behalf of the **Company** until such time as the Chief Executive Officer of the **Named Insured** designates, provided the liability of the **Insurer** with respect to any such delayed **Loss** payment shall not be increased, and shall not include any interest, on account of such delay.

XV.   REPRESENTATIONS

A. The **Insureds** represent and acknowledge that the statements and information contained in the **Application** are true and accurate and:

1. are the basis of this **Policy** and are to be considered as incorporated into and constituting a part of this **Policy**; and

2. shall be deemed material to the acceptance of this risk or the hazard assumed by the **Insurer** under this **Policy**.

It is understood and agreed that this **Policy** is issued in reliance upon the truth and accuracy of such representations.

B. In the event the **Application**, including materials submitted or required to be submitted therewith, contains any misrepresentation or omission made with the intent to deceive or which materially affects either the acceptance of the risk or the hazard assumed by the **Insurer** under this **Policy**, this **Policy** shall be void ab initio as to (i) any **Company** or **Plan** if any **Executive Officer** knew the facts that were not truthfully disclosed or that were omitted in the Application, and (ii) any **Insured Person** who knew the facts that were not truthfully disclosed or that were omitted, whether or not such **Insured Person** knew the **Application** contained such misrepresentation or omission. Except with respect to the **Company's** Chief Executive Officer and Chief Financial Officer, such knowledge shall not be imputed to any other **Insured Persons**.

XVI.   TERMINATION OF THE **POLICY**

A. This **Policy** shall terminate at the earliest of the following times:

1. the effective date of termination specified in a prior written notice by the **Named Insured** to the **Insurer**;

2. 30 days after receipt by the **Named Insured** of a written notice of termination from the **Insurer**;

3. 10 days after receipt by the **Named Insured** of a written notice of termination from the **Insurer** for failure to pay a premium when due, unless the premium is paid within such 10 day period;

4. upon expiration of the **Policy Period** as shown in Item 2 of the Declarations; or

5. at such other time as may be agreed upon by the **Insurer** and the **Named Insured**.

B. If this **Policy** is terminated by the **Named Insured**, the **Insurer** shall refund the unearned premium computed at the customary short rate. If this **Policy** is terminated by the **Insurer**, the **Insurer** shall refund the unearned premium computed *pro rata*. Payment or tender of any unearned premium by

the **Insurer** shall not be a condition precedent to the effectiveness of such termination, but such payment shall be made as soon as practicable.

XVII.  TERRITORY AND VALUATION

A.  All premiums, limits, retentions, **Loss** and other amounts under this **Policy** are expressed and payable in the currency of the United States of America.  If judgment is rendered, settlement is denominated or another element of **Loss** under this **Policy** is stated in a currency other than United States of America dollars, payment under this **Policy** shall be made in United States dollars at the applicable rate of exchange as published in *The Wall Street Journal* as of the date the final judgment is reached, the amount of the settlement is agreed upon or the other element of **Loss** is due, respectively or, if not published on such date, the next date of publication of *The Wall Street Journal.*

B.  Coverage under this **Policy** shall extend to **Wrongful Acts** taking place or **Claims** made anywhere in the world.

XVIII.  SUBROGATION

In the event of any payment under this **Policy**, the **Insurer** shall be subrogated to the extent of such payment to all the rights of recovery of the **Insureds**.  The **Insureds** shall execute all papers required and shall do everything necessary to secure and preserve such rights, including the execution of such documents necessary to enable the **Insurer** effectively to bring suit or otherwise pursue subrogation rights in the name of the **Insureds**.

XIX.  ACTION AGAINST THE **INSURER** AND BANKRUPTCY

Except as provided in section XXII, Alternative Dispute Resolution, no action shall lie against the **Insurer**.  No person or organization shall have any right under this **Policy** to join the **Insurer** as a party to any action against any **Insured** to determine the  liability of the **Insured** nor shall the **Insurer** be impleaded by any **Insured** or its legal representatives.  Bankruptcy or insolvency of any **Insured** or of the estate of any **Insured** shall not relieve the **Insurer** of its obligations nor deprive the **Insurer** of its rights or defenses under this **Policy**.

XX.  AUTHORIZATION CLAUSE

By acceptance of this **Policy**, the **Named Insured** agrees to act on behalf of all **Insureds** with respect to the giving and receiving of notice of **Claim** or termination, the payment of premiums and the receiving of any return premiums that may become due under this **Policy**, the agreement to and acceptance of endorsements, and the giving or receiving of any other notice provided for in this **Policy**, and the **Insureds** agree that the **Named Insured** shall so act on their behalf.

XXI.  ALTERATION, ASSIGNMENT AND HEADINGS

A.  No change in, modification of, or assignment of interest under this **Policy** shall be effective except when made by a written endorsement to this **Policy** which is signed by an authorized representative of the **Insurer**.

B.  The titles and headings to the various parts, sections, subsections and endorsements of this **Policy** are included solely for ease of reference and do not in any way limit, expand or otherwise affect the provisions of such parts, sections, subsections or endorsements.

XXII.  ALTERNATIVE DISPUTE RESOLUTION

The **Insureds** and the **Insurer** shall submit any dispute or controversy arising out of or relating to this **Policy** or the breach, termination or invalidity thereof to the alternative dispute resolution ("ADR") process described in this section.

Either an **Insured** or the **Insurer** may elect the type of ADR process discussed below; provided, however, that the **Insured** shall have the right to reject the choice by the **Insurer** of the type of ADR

process at any time prior to its commencement, in which case the choice by the **Insured** of ADR process shall control.

There shall be two choices of ADR process: (1) non-binding mediation administered by any mediation facility to which the **Insurer** and the **Insured** mutually agree, in which the **Insured** and the **Insurer** shall try in good faith to settle the dispute by mediation in accordance with the then-prevailing commercial mediation rules of the mediation facility; or (2) arbitration submitted to any arbitration facility to which the **Insured** and the **Insurer** mutually agree, in which the arbitration panel shall consist of three disinterested individuals. In either mediation or arbitration, the mediator or arbitrators shall have knowledge of the legal, corporate management, or insurance issues relevant to the matters in dispute. In the event of arbitration, the decision of the arbitrators shall be final and binding and provided to both parties, and the award of the arbitrators shall not include attorneys' fees or other costs. In the event of mediation, either party shall have the right to commence arbitration in accordance with this section; provided, however, that no such arbitration shall be commenced until at least 60 days after the date the mediation shall be deemed concluded or terminated. In all events, each party shall share equally the expenses of the ADR process.

Either ADR process may be commenced in New York, New York or in the state indicated in Item 1 of the Declarations as the principal address of the **Named Insured**. The **Named Insured** shall act on behalf of each and every **Insured** in connection with any ADR process under this section.

XXIII.   INTERPRETATION

The terms and conditions of this **Policy** shall be interpreted and construed in an evenhanded fashion as between the parties. If the language of this **Policy** is deemed to be ambiguous or otherwise unclear, the issue shall be resolved in the manner most consistent with the relevant terms and conditions of this **Policy**, without regard to authorship of the language, without any presumption or arbitrary interpretation or construction in favor of either the **Insureds** or the **Insurer** and without reference to the reasonable expectations of either the **Insureds** or the **Insurer**.



**ace usa**

# U.S. Treasury Department's Office Of Foreign Assets Control ("OFAC") Advisory Notice to Policyholders

This Policyholder Notice shall not be construed as part of your policy and no coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

## TRADE OR ECONOMIC SANCTIONS ENDORSEMENT

| Named Insured | | | Endorsement Number |
| --- | --- | --- | --- |
| Sigma Chi Fraternity, et al | | | |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| DON | G21943885 003 | 9/28/2007 To 9/28/2008 | |
| Issued By (Name of Insurance Company) | | | |
| Westchester Fire Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This insurance does not apply to the extent that trade or economic sanctions or other laws or regulations prohibit us from providing insurance, but not limited to, the payment of claims. All other terms and conditions of policy remain unchanged.

Authorized Agent

ALL-21101 (11-06) Ptd. In U.S.A.

## SIGNATURES

| Named Insured | | | | Endorsement Number |
|---|---|---|---|---|
| Sigma Chi Fraternity, et al | | | | |
| Policy Symbol | Policy Number | Policy Period | | Effective Date of Endorsement |
| DON | G21943885 003 | 9/28/2007 To 9/28/2008 | | |
| Issued By (Name of Insurance Company) | | | | |
| Westchester Fire Insurance Company | | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

THE ONLY SIGNATURES APPLICABLE TO THIS POLICY ARE THOSE REPRESENTING THE COMPANY NAMED ON THE FIRST PAGE OF THE DECLARATIONS.

By signing and delivering the policy to you, we state that it is a valid contract.

**INDEMNITY INSURANCE COMPANY OF NORTH AMERICA**
436 Walnut Street, P.O. Box 1000, Philadelphia, Pennsylvania 19106-3703

**BANKERS STANDARD FIRE AND MARINE COMPANY**
436 Walnut Street, P.O. Box 1000, Philadelphia, Pennsylvania 19106-3703

**BANKERS STANDARD INSURANCE COMPANY**
436 Walnut Street, P.O. Box 1000, Philadelphia, Pennsylvania 19106-3703

**ACE INDEMNITY INSURANCE COMPANY**
436 Walnut Street, P.O. Box 1000, Philadelphia, Pennsylvania 19106-3703

**ACE AMERICAN INSURANCE COMPANY**
436 Walnut Street, P.O. Box 1000, Philadelphia, Pennsylvania 19106-3703

**ACE PROPERTY AND CASUALTY INSURANCE COMPANY**
436 Walnut Street, P.O. Box 1000, Philadelphia, Pennsylvania 19106-3703

**INSURANCE COMPANY OF NORTH AMERICA**
436 Walnut Street, P.O. Box 1000, Philadelphia, Pennsylvania 19106-3703

**PACIFIC EMPLOYERS INSURANCE COMPANY**
436 Walnut Street, P.O. Box 1000, Philadelphia, Pennsylvania 19106-3703

**ACE FIRE UNDERWRITERS INSURANCE COMPANY**
436 Walnut Street, P.O. Box 1000, Philadelphia, Pennsylvania 19106-3703

GEORGE D. MULLIGAN, Secretary

JOHN J. LUPICA, President

**WESTCHESTER FIRE INSURANCE COMPANY**

1325 Avenue of the Americas, 19th Floor, New York, NY 10019

GEORGE D. MULLIGAN, Secretary

DENNIS A. CROSBY, JR., President

_____
Authorized Agent

CC-1K11e  (02/06) Ptd. in U.S.A.



## ACE Producer Compensation
## Practices & Policies

ACE believes that policyholders should have access to information about ACE's practices and policies related to the payment of compensation to brokers and independent agents. You can obtain that information by accessing our website at http://www.aceproducercompensation.com or by calling the following toll-free telephone number: 1-866-512-2862.

000153

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

| Named Insured | | Endorsement Number |
|---|---|---|
| Sigma Chi Fraternity, et al | | |
| Policy Symbol<br>DON | Policy Number<br>G21943885 003 | Policy Period<br>9/28/2007 to 9/28/2008 | Effective |
| Issued By (Name of Insurance Company)<br>Westchester Fire Insurance Company | | |

**30 Day Post Policy Reporting Endorsement**

It is agreed that Section IX, Notice, is amended by deleting subsection A in its entirety and inserting the following:

A.  The **Insureds** shall, as a condition precedent to their rights under this **Policy**, give to the **Insurer** written notice of any **Claim** made against the **Insureds** as soon as practicable:

    (1)  during the **Policy Period** or, if elected, the **Extended Reporting Period**, or

    (2)  within 30 days after the end of the **Policy Period** or, if elected, the **Extended Reporting Period**, as long as such **Claim** was first made against an **Insured** within the final 30 days of the **Policy Period** or **Extended Reporting Period**.

All other terms and conditions of this **Policy** remain unchanged.

Authorized Representative