# EXHIBIT 6-7

Publicly-Held Organization

If, during the **Policy Period**, the **Company**:

(1) acquires voting securities in another organization or creates another organization which is a publicly-held organization, which as a result of such acquisition or creation becomes a **Subsidiary**; or

(2) acquires any publicly-held organization by merger into or consolidation with the **Company**;

the **Named Insured**, as a condition precedent to coverage for such organization, **Plan** and its **Insured Persons**, shall, prior to such acquisition:

(a) give written notice of such acquisition or creation to the **Insurer**;
(b) pay any additional premium required by the **Insurer**; and
(c) agree to any additional terms and conditions of this **Policy** as required by the **Insurer**.

B. Acquisition of the **Named Insured**

If, during the **Policy Period**, any of the following events occurs:

1. the acquisition of the **Named Insured**, or of all or substantially all of its assets, by another entity, or the merger or consolidation of the **Named Insured** into or with another entity such that the **Named Insured** is not the surviving entity; or

2. the obtaining by any person, entity or affiliated group of persons or entities of the right to elect, appoint or designate at least 50% of the directors of the **Named Insured**;

then coverage under this **Policy** will continue in full force and effect until termination of this **Policy**, but only with respect to **Claims** for **Wrongful Acts** taking place before such event. Coverage under this **Policy** will cease as of the effective date of such event with respect to **Claims** for **Wrongful Acts** taking place after such event.

C. Termination of a **Subsidiary**

If before or during the **Policy Period** an organization ceases to be a **Subsidiary**, coverage with respect to the **Subsidiary** and its **Insured Persons** shall continue until termination of this **Policy**. Such coverage continuation shall apply only with respect to **Claims** for **Wrongful Acts** taking place prior to the date such organization ceased to be a **Subsidiary**.

D. Termination of a **Plan**

If before or during the **Policy Period** a **Plan** is terminated, sold or run-off, coverage with respect to such **Plan** under Insuring Agreement C, Fiduciary Liability, if purchased, shall continue until termination of this **Policy**. Such coverage continuation shall apply only with respect to **Claims** for **Wrongful Acts** taking place prior to the date such **Plan** was terminated, sold or run-off.

E. Section 501 (c)(3) Status

If, during the **Policy Period**, the **Company** ceases to qualify as a not-for-profit organization under Section 501(c)(3) of the United States Internal Revenue Code of 1986, as amended, then such organization, **Plan** and its **Insured Persons** shall be covered under this **Policy** only with respect to **Claims** for **Wrongful Acts** taking place prior to such cessation.

F. Other Organizational Changes

Coverage with respect to an **Insured** or **Plan** under Insuring Agreement C, Fiduciary Liability, if purchased, is afforded only for **Wrongful Acts** committed or allegedly committed after the effective time such **Insured** or **Plan** became an **Insured** and prior to the effective time that such **Insured** or **Plan** ceases to be an **Insured** or **Plan**.

XIV. PAYMENT PRIORITY

A. If the amount of any Loss which is otherwise due and owing by the Insurer exceeds the then-remaining Limit of Liability applicable to the Loss, the Insurer shall pay the Loss (subject to such Limit of Liability) in the following priority:

1. First, the Insurer shall pay any Loss covered under Insuring Agreement A1, Directors' and Officers' Liability, in excess of any applicable Retention shown in Item 3 of the Declarations;

2. Second, only if and to the extent the payment under paragraph 1 above does not exhaust the applicable Limit of Liability, the Insurer shall pay any Loss in excess of the Retention shown in Item 3 of the Declarations covered under any other applicable Insuring Agreement.

B. Subject to the foregoing paragraph, the Insurer shall, upon receipt of a written request from the Chief Executive Officer of the Named Insured, delay any payment of Loss otherwise due and owing to or on behalf of the Company until such time as the Chief Executive Officer of the Named Insured designates, provided the liability of the Insurer with respect to any such delayed Loss payment shall not be increased, and shall not include any interest, on account of such delay.

XV. REPRESENTATIONS

A. The Insureds represent and acknowledge that the statements and information contained in the Application are true and accurate and:

1. are the basis of this Policy and are to be considered as incorporated into and constituting a part of this Policy; and

2. shall be deemed material to the acceptance of this risk or the hazard assumed by the Insurer under this Policy.

It is understood and agreed that this Policy is issued in reliance upon the truth and accuracy of such representations.

B. In the event the Application, including materials submitted or required to be submitted therewith, contains any misrepresentation or omission made with the intent to deceive or which materially affects either the acceptance of the risk or the hazard assumed by the Insurer under this Policy, this Policy shall be void ab initio as to (i) any Company or Plan if any Executive Officer knew the facts that were not truthfully disclosed or that were omitted in the Application, and (ii) any Insured Person who knew the facts that were not truthfully disclosed or that were omitted, whether or not such Insured Person knew the Application contained such misrepresentation or omission. Except with respect to the Company's Chief Executive Officer and Chief Financial Officer, such knowledge shall not be imputed to any other Insured Persons.

XVI. TERMINATION OF THE POLICY

A. This Policy shall terminate at the earliest of the following times:

1. the effective date of termination specified in a prior written notice by the Named Insured to the Insurer;

2. 30 days after receipt by the Named Insured of a written notice of termination from the Insurer;

3. 10 days after receipt by the Named Insured of a written notice of termination from the Insurer for failure to pay a premium when due, unless the premium is paid within such 10 day period;

4. upon expiration of the Policy Period as shown in Item 2 of the Declarations; or

5. at such other time as may be agreed upon by the Insurer and the Named Insured.

B. If this Policy is terminated by the Named Insured, the Insurer shall refund the unearned premium computed at the customary short rate. If this Policy is terminated by the Insurer, the Insurer shall refund the unearned premium computed *pro rata*. Payment or tender of any unearned premium by the Insurer shall not be a condition precedent to the effectiveness of such termination, but such payment shall be made as soon as practicable.

XVII.   TERRITORY AND VALUATION

   A. All premiums, limits, retentions, **Loss** and other amounts under this **Policy** are expressed and payable in the currency of the United States of America. If judgment is rendered, settlement is denominated or another element of **Loss** under this **Policy** is stated in a currency other than United States of America dollars, payment under this **Policy** shall be made in United States dollars at the applicable rate of exchange as published in *The Wall Street Journal* as of the date the final judgment is reached, the amount of the settlement is agreed upon or the other element of **Loss** is due, respectively or, if not published on such date, the next date of publication of *The Wall Street Journal*.

   B. Coverage under this **Policy** shall extend to **Wrongful Acts** taking place or **Claims** made anywhere in the world.

XVIII.   SUBROGATION

   In the event of any payment under this **Policy**, the **Insurer** shall be subrogated to the extent of such payment to all the rights of recovery of the **Insureds**. The **Insureds** shall execute all papers required and shall do everything necessary to secure and preserve such rights, including the execution of such documents necessary to enable the **Insurer** effectively to bring suit or otherwise pursue subrogation rights in the name of the **Insureds**.

XIX.   ACTION AGAINST THE **INSURER** AND BANKRUPTCY

   Except as provided in section XXII, Alternative Dispute Resolution, no action shall lie against the **Insurer**. No person or organization shall have any right under this **Policy** to join the **Insurer** as a party to any action against any **Insured** to determine the liability of the **Insured** nor shall the **Insurer** be impleaded by any **Insured** or its legal representatives. Bankruptcy or insolvency of any **Insured** or of the estate of any **Insured** shall not relieve the **Insurer** of its obligations nor deprive the **Insurer** of its rights or defenses under this **Policy**.

XX.   AUTHORIZATION CLAUSE

   By acceptance of this **Policy**, the **Named Insured** agrees to act on behalf of all **Insureds** with respect to the giving and receiving of notice of **Claim** or termination, the payment of premiums and the receiving of any return premiums that may become due under this **Policy**, the agreement to and acceptance of endorsements, and the giving or receiving of any other notice provided for in this **Policy**, and the **Insureds** agree that the **Named Insured** shall so act on their behalf.

XXI.   ALTERATION, ASSIGNMENT AND HEADINGS

   A. No change in, modification of, or assignment of interest under this **Policy** shall be effective except when made by a written endorsement to this **Policy** which is signed by an authorized representative of the **Insurer**.

   B. The titles and headings to the various parts, sections, subsections and endorsements of this **Policy** are included solely for ease of reference and do not in any way limit, expand or otherwise affect the provisions of such parts, sections, subsections or endorsements.

XXII.   ALTERNATIVE DISPUTE RESOLUTION

   The **Insureds** and the **Insurer** shall submit any dispute or controversy arising out of or relating to this **Policy** or the breach, termination or invalidity thereof to the alternative dispute resolution ("ADR") process described in this section.

   Either an **Insured** or the **Insurer** may elect the type of ADR process discussed below; provided, however, that the **Insured** shall have the right to reject the choice by the **Insurer** of the type of ADR process at any time prior to its commencement, in which case the choice by the **Insured** of ADR process shall control.

   There shall be two choices of ADR process: (1) non-binding mediation administered by any mediation facility to which the **Insurer** and the **Insured** mutually agree, in which the **Insured** and the **Insurer** shall try in good faith to settle the dispute by mediation in accordance with the then-prevailing

commercial mediation rules of the mediation facility; or (2) arbitration submitted to any arbitration facility to which the **Insured** and the **Insurer** mutually agree, in which the arbitration panel shall consist of three disinterested individuals. In either mediation or arbitration, the mediator or arbitrators shall have knowledge of the legal, corporate management, or insurance issues relevant to the matters in dispute. In the event of arbitration, the decision of the arbitrators shall be final and binding and provided to both parties, and the award of the arbitrators shall not include attorneys' fees or other costs. In the event of mediation, either party shall have the right to commence arbitration in accordance with this section; provided, however, that no such arbitration shall be commenced until at least 60 days after the date the mediation shall be deemed concluded or terminated. In all events, each party shall share equally the expenses of the ADR process.

Either ADR process may be commenced in New York, New York or in the state indicated in Item 1 of the Declarations as the principal address of the **Named Insured**. The **Named Insured** shall act on behalf of each and every **Insured** in connection with any ADR process under this section.

XXIII. INTERPRETATION

The terms and conditions of this **Policy** shall be interpreted and construed in an evenhanded fashion as between the parties. If the language of this **Policy** is deemed to be ambiguous or otherwise unclear, the issue shall be resolved in the manner most consistent with the relevant terms and conditions of this **Policy**, without regard to authorship of the language, without any presumption or arbitrary interpretation or construction in favor of either the **Insureds** or the **Insurer** and without reference to the reasonable expectations of either the **Insureds** or the **Insurer**.

## POLICYHOLDER DISCLOSURE NOTICE
## OF TERRORISM INSURANCE COVERAGE

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| Sigma Chi Fraternity, et al | | | 1 |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| DON | G21943885 002 | 09/28/2006 to 09/28/2007 | 09/28/2006 |
| Issued By (Name of Insurance Company) | | | |
| Westchester Fire Insurance Company | | | |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

You are hereby notified that under the Terrorism Risk Insurance Extension Act of 2005 ("Extension Act"), you now have the right to purchase insurance coverage for losses resulting from acts of terrorism, as defined in Section 102(1) of the Extension Act: The term "act of terrorism" means any act that is certified by the Secretary of the Treasury - in concurrence with the Secretary of State and the Attorney General of the United States - to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property; or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of an air carrier or vessel or the premises of a United States mission; and to have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

Coverage of "acts of terrorism" as defined by the Extension Act will be provided for the period from the effective date of your new or renewal policy through the earlier of the policy expiration date or December 31, 2007. Effective December 31, 2007, the Terrorism Risk Insurance Program of the Extension Act expires.

YOU SHOULD KNOW THAT WHERE COVERAGE IS PROVIDED BY THIS POLICY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM, SUCH LOSSES MAY BE PARTIALLY REIMBURSED BY THE UNITED STATES GOVERNMENT UNDER A FORMULA ESTABLISHED BY FEDERAL LAW. UNDER THIS FORMULA, THE UNITED STATES GOVERNMENT GENERALLY PAYS 90% (85% IN 2007) OF COVERED TERRORISM LOSSES EXCEEDING THE STATUTORILY ESTABLISHED DEDUCTIBLY PAID BY THE INSURANCE COMPANY PROVIDING THE COVERAGE. THE PREMIUM CHARGED FOR THIS COVERAGE IS PROVIDED BELOW AND DOES NOT INCLUDE ANY CHARGES FOR THE PORTION OF LOSS COVERED BY THE FEDERAL GOVERNMENT UNDER THE EXTENSION ACT.

Terrorism Risk Insurance Extension Act premium: $ <u>0-Included</u>

_____
Authorized Agent

TRIA11a (02/06)

000231

THIS ENDORSEME'  CHANGES THE POLICY. PLEASE  \D IT CAREFULLY.

| Named Insured: Sigma Chi Fraternity, et al | | | Endorsement Number: 2 |
|---|---|---|---|
| Policy Symbol: DON | Policy Number: G21943885 002 | Policy Period: 09/28/2006 to 09/28/2007 | Effective Date of Endorsement: 09/28/2006 |
| Issued By (Name of Insurance Company): Westchester Fire Insurance Company | | | |

### EXTENDED REPORTING PERIOD - ILLINOIS

It is agreed that Section VI. Extended Reporting Period is amended as follows:

A. Paragraph A is deleted in its entirety and replaced with the following:

If the **Insurer** or the **Named Insured** terminates or does not renew this **Policy**, the **Named Insured** shall have a right, upon payment of additional premium as provided described below, to a continuation of coverage granted by this **Policy** for the **Extended Reporting Period** of one year following the effective date of such termination or nonrenewal, but only with respect to **Claims** first made during the **Extended Reporting Period** and arising from **Wrongful Acts** taking place prior to the effective date of such termination or nonrenewal. This right to continue coverage shall lapse unless written notice of such election is given by the **Named Insured** to the **Insurer** within 30 days following the effective date of termination or nonrenewal. A change in policy terms, conditions, exclusions and/or premiums shall not be considered a nonrenewal for purposes of triggering the rights to the **Extended Reporting Period**.

B. Paragraph B. is deleted in its entirety and replaced by the following:

The premium for the one year **Extended Reporting Period** shall be 100% of the immediately preceding annual premium. Such premium shall be paid by the **Named Insured** to the **Insurer** at the time the **Named Insured** elects to purchase the Extended Reporting Period, but not more then 30 days following the effective date of termination or nonrenewal. The **Extended Reporting Period** is not cancelable and the entire premium for the **Extended Reporting Period** shall be deemed fully earned and non-refundable upon payment.

All other terms and conditions remain unchanged.

AUTHORIZED REPRESENTATIVE

D&O IL 001 (03/04)
(For D&O, Side A, Corp., NFP & Priv.)
PF-14810a (04/04)                                © ACE USA, 2004                                Page 1 of 1

000232

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

| | | | |
|---|---|---|---|
| Named Insured: Sigma Chi Fraternity, et al | | | Endorsement Number: 3 |
| Policy Symbol: DON | Policy Number: G21943885 002 | Policy Period: 09/28/2006 to 09/28/2007 | Effective Date of Endorsement: 09/28/2006 |
| Issued By (Name of Insurance Company): Westchester Fire Insurance Company | | | |

## AMENDATORY ENDORSEMENT - ILLINOIS

I. The definition of **Defense Costs** under Section II. of the **Policy**, DEFINITIONS is amended by adding the following:

   **Defense Costs** also do not include unallocated, routine and ongoing expenses such as the salaries for the **Insured's** and **Insurers** staff attorneys.

II. The definition of **Loss** under Section II. of the **Policy**, DEFINITIONS is deleted in its entirety and replaced with the following:

   **Loss** means the damages, judgments, any award of pre-judgment and post-judgment interest, settlements and **Defense Costs** which the **Insured** becomes legally obligated to pay on account of any **Claim** first made against any **Insured Person** during the **Policy Period** or, if elected, the **Extended Reporting Period**, for **Wrongful Acts** to which this **Policy** applies. **Loss** does not include:

   1. any amount for which the **Insured** is not financially liable or legally obligated to pay;
   2. taxes, fines or penalties;
   3. punitive or exemplary damages or the multiple portion of any multiplied damage award;
   4. any amount incurred by any **Insured Person** in a proceeding or investigation that is not at that time a **Claim**, even if such amount also benefits the defense of a **Claim** and even if such proceeding or investigation subsequently gives rise to a **Claim**;
   5. any amount incurred by the **Company**, including its board of directors or any committee of the board of directors, in connection with the investigation or evaluation of any **Claim** or potential **Claim** by or on behalf of the **Company**;
   6. matters uninsurable under the laws pursuant to which this **Policy** is construed;
   7. any reimbursement required pursuant to the Sarbanes-Oxley Act of 2002 and any amendments there to, or any other type of reimbursement of disgorgement.

All other terms and conditions remain unchanged.

_____
AUTHORIZED REPRESENTATIVE

D&O IL 015 (03/04)
(For D&O Policy)
PF-15472a (06/04)

© ACE USA, 2004

Page 1 of 1