**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| SIGMA CHI CORPORATION and ) <br> SIGMA CHI FOUNDATION ) <br> ) <br>     Plaintiffs and Counter-Defendants, ) <br> ) <br> vs. ) <br> ) <br> WESTCHESTER FIRE INSURANCE ) <br> COMPANY, ) <br> ) <br>     Defendant and Counter-Plaintiff ) <br> ) | CASE NO.  08 C 767 <br><br> Judge Ruben Castillo <br><br> Magistrate Judge Arlander Keys <br><br> **JURY TRIAL DEMANDED** |

**FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiffs Sigma Chi Corporation and Sigma Chi Foundation (collectively, "Sigma Chi"), by their attorneys, state:

**Nature of the Action**

Sigma Chi brings this Complaint for Declaratory Judgment pursuant to the Declaratory Judgment Act, 28 USC § 2201(a). Sigma Chi purchased an insurance policy from Westchester Fire Insurance Company ("Westchester Fire").  During the policy period, Sigma Chi received notices of two claims against Sigma Chi by IBM Credit Corporation ("IBM Credit") and Network System Technologies, Inc., d/b/a Incentra Solutions of Illinois ("Incentra").  In accordance with the policy, Sigma Chi sent notices of the claims to Westchester Fire. Westchester Fire denied coverage and advancement of defense costs in violation of the policy.

**THE PARTIES**

1. Plaintiff Sigma Chi Corporation is a not-for-profit Illinois corporation with its principal place of business located at 1714 Hinman Avenue in Evanston, Illinois.

2. Plaintiff Sigma Chi Foundation is a not-for-profit Colorado corporation with its principal place of business located at 1714 Hinman Avenue in Evanston, Illinois.

3. Defendant Westchester Fire is a New York corporation with its principal place of business in New York, New York.

## JURISDICTION

4. This Court has diversity jurisdiction pursuant to 28 USC § 1332 because the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different states.

## VENUE

5. Venue is proper in this Court pursuant to 28 USC § 1391(a)(2) because a substantial part of the events or omissions giving rise to the claim occurred within this District.

## THE UNDERLYING IBM CLAIMS

6. On February 23, 2007, IBM Credit notified Sigma Chi that it was in default of certain lease agreements for computer hardware, software and services. IBM Credit demanded that Sigma Chi pay it the sum of $1,490,604.00 under the agreements.

## THE UNDERLYING INCENTRA CLAIMS

7. On May 4, 2007, Incentra notified Sigma Chi that it was in breach of the Gridworks Master Service Agreement and various other agreements regarding computer hardware, software and services in the amount of $108,459.93. On September 19, 2007, Incentra filed a lawsuit in the Circuit Court of DuPage County, Illinois, against Sigma Chi Corporation and Sigma Chi Foundation for breach of contract in the amount of $108,459.93. The case is styled *Network System Technologies, Inc. v. Sigma Chi Corporation and Sigma Chi Foundation*, Case No. 2007 L 000988.

## **THE POLICY**

8. Westchester Fire issued policy number DON G21943885, as amended ("the Policy") to Sigma Chi Corporation and Sigma Chi Foundation for the period of September 28, 2006 to September 28, 2007. Sigma Chi purchased Policy number DON G21943885 for "Management Liability" and "Employment Practices Liability" with an aggregate limit of $5,000,000 and $10,000 retention for each claim.

9. The relevant portion of the Policy which relates to the underlying IBM Credit and Incentra claims is "Management Liability" which includes "Company Liability" in section I.A.3:

> The **Insurer** shall pay the **loss** of the **Company** which the Company becomes legally obligated to pay by reason of a **Claim** first made against it and reported to the **Insurer** during the **Policy Period**, or, if elected, the **Extended Reporting Period**, for any **Wrongful Acts** taking place prior to the end of the **Policy Period.**

10. In Section II.D. of the Definitions section of the Policy, a Claim is defined as:

> 1. a written demand against the **Insured** for monetary damages, or, except with respect to insuring Agreement B Employment Practices Liability, non-monetary or injunctive relief;
>
> 2. a civil proceeding against the **Insured** seeking monetary damages or non-monetary or injunctive relief, commenced by the service of a complaint or similar pleading.

11. Under Section II.P. of the "Definitions" section in the Policy, Loss is defined as:

> **Loss** means the damages, judgments, any awards of pre-judgments and post-judgment interest, settlements and **Defense Costs** which the **Insured** becomes legally obligated to pay on account of any **Claim** first made against the **Insured** during the **Policy Period**…for **Wrongful Acts** to which this **Policy** applies…

12. Under Section X, "Defense and Settlement," the Policy states that:

> The **Insurer** shall, on a quarterly basis, advance on behalf of the **Insureds** covered **Defense Costs** which the **Insureds** have incurred in connection with **Claims** made against them, prior to disposition of such **Claims**.

### SIGMA CHI SENT NOTICES OF THE CLAIMS TO WESTCHESTER FIRE

13. On March 21, 2007, Sigma Chi submitted to Westchester Fire the underlying claim from IBM Credit. On April 2, 2007, Westchester Fire responded to Sigma Chi's submission of the claim by stating that it would determine its rights and obligations under the Westchester Fire Policy. On April 27, 2007, counsel for Sigma Chi made another demand for insurance coverage under the Policy, including defense costs regarding the IBM Credit claim. Subsequently, on June 1, 2007, Westchester Fire notified counsel for Sigma Chi that coverage under the Policy for the IBM Credit claim was denied. (See copy of June 1, 2007, letter attached as Exhibit A.)

14. Westchester Fire's denial of coverage was based on Section III L.1 of the Policy which states, in relevant part, as follows:

> L. The following exclusions shall apply to any **Claim** covered, in whole or in part, under Insuring Agreement A, Directors' and Officers' Liability:
>
>    1. Contract or Agreement
>
>    Alleging, based upon, arising out of, or attributable to the actual or alleged breach of any oral, written, express or implied contract or agreement. However, this exclusion shall not apply to the extent that liability would have attached to the **Company** in the absence of such contract or agreement, or where such **Claim** is covered entirely under the Insuring Agreement A1, Directors' and Officers' Liability, and A2, **Company** Reimbursement, and no part of such **Claim** is covered under Insuring Agreement A3, **Company** Liability.

4

This quoted section, in particular "under Insuring Agreement A, Directors' and Officers' Liability," was form language – including the punctuation - that was included in numerous similar policies issued by Westchester Fire.

15. On June 1, 2007, Sigma Chi sent notice to Westchester Fire of the underlying claims made by Incentra. On June 7, 2007, Westchester Fire acknowledged Sigma Chi's submission of the claim from Incentra against Sigma Chi. On June 15, 2007, Westchester Fire denied coverage under the Policy for the Incentra claim. On June 21, 2007, Plaintiff sent a letter to Westchester Fire and requested that it reconsider its denials. Subsequently, on July 26, 2007, Westchester Fire repeated its denial of coverage.

16. Following protests by Sigma Chi of Westchester Fire's denials of coverage, Westchester Fire eventually <u>withdrew</u> its previous denials of coverage regarding both IBM Credit's and Incentra's claims by letter dated September 17, 2007. Westchester Fire also agreed to meet with counsel for Sigma Chi and asked for a statement of costs incurred defending the underlying claims. Subsequently, in mid-September 2007, counsel for Sigma Chi and counsel for Westchester Fire met to discuss the underlying IBM and Incentra claims. At this meeting, counsel for Sigma Chi gave to counsel for Westchester Fire a statement of legal costs incurred by Sigma Chi associated with the defense of the IBM and Incentra claims.

**WESTCHESTER FIRE REVERSES ITS
DECISION TO COVER DEFENSE COSTS**

17. In a letter to counsel for Sigma Chi, dated October 26, 2007, Westchester Fire reiterated its intention to withdraw the previous coverage letters denying coverage to Sigma Chi under the Policy. Westchester Fire also agreed to fund the reasonable and necessary costs, charges, fees and expenses in accordance with the terms and conditions of the Policy for the underlying IBM and Incentra claims. (See Copy of October 26, 2007, letter as Exhibit B).

18.  On November 19, 2007, however, Westchester Fire reversed its prior promises to provide coverage of defense costs.  Instead, it denied coverage yet again to Sigma Chi for the claims made by IBM Credit and Incentra under the Policy.  Further, Westchester Fire stated that it would file a declaratory action.  To date, it has failed to do so.  Although Sigma Chi has repeatedly demanded payment, Westchester Fire has refused and continues to refuse to advance defense costs to Sigma Chi under the Policy.

## BREACH OF CONTRACT

19.  Beginning in September 2007, Sigma Chi submitted bills to Westchester Fire for its legal defense fees and costs in connection with the defense of the Incentra and IBM claims.  However, Westchester Fire has denied all of Sigma Chi's requests to pay the bills or indemnify it for payments made to their attorneys.

20.  Westchester Fire has breached the Policy by denying coverage in the underlying matters and by failing to fund defense costs.  The Policy is a valid contract and Sigma Chi has complied with the requirements of the Policy by giving proper notice to Westchester Fire in accordance with the terms of the Policy.  Further, Sigma Chi is current with its premium payments to Westchester Fire in accordance with the Policy.  Sigma Chi is not in breach of the Policy.

21.  Westchester Fire's denial of coverage and payment of defense costs under the terms of the Policy has caused damages to Sigma Chi and is vexatious and unreasonable.  Therefore, in accordance with 215 ILCS 5/155, Sigma Chi Corporation and Sigma Chi Foundation are also entitled to their attorneys' fees and other costs plus at least $60,000.00 in exemplary statutory damages.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiffs Sigma Chi Corporation and Sigma Chi Foundation respectfully pray that the Court enter judgment jointly and severally in their favor and against defendant Westchester Fire Insurance Company as follows:

1. Declare that Westchester Fire is in breach of the Policy for denying coverage and refusing to advance defense costs for the underlying claims.

2. Declare that Westchester Fire's denial of coverage and refusal to advance defense costs is vexatious and unreasonable under 215 ILCS 5/155.

3. Award attorneys' fees, other costs plus at least $60,000.00 to Sigma Chi Corporation and Sigma Chi Foundation in accordance with 215 ILCS 5/155 in an amount to be determined.

4. Order Westchester Fire to provide full coverage under the terms of the Policy and fund the Policy accordingly.

5. Grant such other and further relief which the Court deems just and reasonable.

Respectfully submitted,

/s Blake T. Hannafan
BLAKE T. HANNAFAN

/s Eric J. Malnar
ERIC J. MALNAR

Dated:  July 16, 2008                    Attorneys for Plaintiffs Sigma Chi
                                         Foundation and Sigma Chi Corporation.

Michael T. Hannafan
Blake T. Hannafan
Eric J. Malnar
Hannafan & Hannafan, Ltd.
One East Wacker Drive, Suite 2800
Chicago, IL 60601
(312)527-0055

# EXHIBIT A

ACE Westchester Specialty  
Group Claims  
500 Colonial Center Parkway  
Suite 200  
Roswell, GA 30076  
USA

678-795-4374 *tel*  
678-795-4081 *fax*

robyn.dilts@ace-ina.com  
www.ace-ina.com

**Robyn L. Dilts**  
*Senior Claims Specialist*

June 1, 2007

<u>VIA CERTIFIED MAIL</u>  
<u>RETURN RECEIPT REQUESTED</u>

Blake Hannafan  
Hannafan & Hannafan  
One East Wacker Drive  
Suite 1280  
Chicago, IL 60601

  Re: Insured: Sigma Chi Fraternity  
     Policy No.: DON G21943885 001  
     Claimant: IBM Credit, LLC  
     Claim No.: JY07J0071577

Dear Mr. Hannafan:

I am writing on behalf of Westchester Fire Insurance Company ("Westchester Fire"), to once again acknowledge receipt of correspondence and materials concerning the above matter. This correspondence is directed to you as the authorized representative of Sigma Chi Fraternity; if this is incorrect please advise accordingly. According to the materials provided, on or about February 23, 2007 IBM Credit sent a letter to Sigma Chi Fraternity alleging that Sigma Chi Fraternity was in default of IBM Credit Lease agreement and/or IBM Credit financing agreement and supplement number VP0D37327, D00D37027, D00D37051, D00D18153 and VP0D45350. IBM Credit demanded payment of $1,490,604 as a result of the alleged default (the "<u>IBM</u> Claim").

Westchester Fire has not made any determination as to the validity of claimants' allegations nor do we assert that any liability exists.

The purpose of this letter is to regretfully advise you that there is no coverage available for the <u>IBM</u> Claim under the Policy, based upon our review of the information received to date. In the event there is any additional information that you feel would impact our position, please forward same to my attention.

The Management Liability Insuring Agreement of the ACE Advantage Not-For-Profit Company insurance policy issued to Sigma Chi Fraternity is a claims made and reported policy with a Policy Period of September 28, 2006 to September 28, 2007. The aggregate limit of liability for this Policy is $5,000,000 with a $10,000 retention for each Claim under the Management Liability Insuring Agreement.

Please refer to the Policy Management Liability Insuring Agreements, which state:



I. INSURING AGREEMENTS

    A. Management Liability

    If Management Liability coverage is purchased as indicated in Item 3 of the Declarations:

      1. Directors' and Officers' Liability

      The Insurer shall pay the Loss of the Insured Persons for which the Insured Persons are not indemnified by the Company and which the Insured Persons have become legally obligated to pay by reason of a Claim first made against the Insured Persons and reported to the Insurer during the Policy Period or, if elected, the Extended Reporting Period, for any Wrongful Acts taking place prior to the end of the Policy Period.

      2. Company Reimbursement

      The Insurer shall pay the Loss of the Company for which the Company has indemnified the Insured Persons and which the Insured Persons have become legally obligated to pay by reason of a Claim first made against the Insured Persons and reported to the Insurer during the Policy Period or, if elected, the Extended Reporting Period, for any Wrongful Acts taking place prior to the end of the Policy Period.

      3. Company Liability

      The Insurer shall pay the Loss of the Company which the Company becomes legally obligated to pay by reason of a Claim first made against it and reported to the Insurer during the Policy Period or, if elected, the Extended Reporting Period, for any Wrongful Acts taking place prior to the end of the Policy Period.

      4. Outside Entity Directors' and Officers' Liability

      The Insurer shall pay the Loss of any Outside Entity Insured Person which the Outside Entity Insured Person is legally obligated to pay by reason of a Claim first made against them and reported to the Insurer during the Policy Period or, if elected, the Extended Reporting Period, for any Wrongful Acts taking place prior to the end of the Policy Period, but only excess of (i) any indemnification provided by an Outside Entity and (ii) any insurance coverage afforded to an Outside Entity or its executives applicable to such Claim.

Please also see Policy Section III. L. 1, which states:

III. EXCLUSIONS

The Insurer shall not be liable for Loss on account of any Claim:

Page 2/3



    L.   The following exclusions shall apply to any Claim covered, in whole or in part, under Insuring Agreement A, Directors' and Officers' Liability:

        1.   Contract or Agreement

            alleging, based upon, arising out of, or attributable to the actual or alleged breach of any oral, written, express or implied contract or agreement. However, this exclusion shall not apply to the extent that liability would have attached to the Company in the absence of such contract or agreement, or where such Claim is covered entirely under Insuring Agreement A1, Directors' and Officers' Liability, and A2, Company Reimbursement, and no part of such Claim is covered under Insuring Agreement A3, Company Liability.

Pursuant to the above exclusion the Policy does not provide coverage for claims made against the Company for breach of contract or agreement. As the <u>IBM</u> Claim is based on allegations of non-payment by Sigma Chi Fraternity for goods and services provided by IBM Credit pursuant to a financing and/or credit lease agreement, this matter is not covered under the Policy.

Lastly, Westchester Fire reserves its right to deny coverage based upon grounds other than those expressly set forth in this letter and to supplement and/or amend this letter to address additional coverage issues as they may arise, based upon all of the provisions, terms, conditions, exclusions, endorsements and definitions found in the Policy and additional facts that may come to Westchester Fire's attention. Nothing stated herein and no further action taken by Westchester Fire or on its behalf should be construed as a waiver of any of its rights under the Policy. On the contrary, by providing this or any prior correspondence to the Insured, engaging in any prior or future discussions with the Insured, or paying or agreeing to pay any amount to or on behalf of the Insured, Westchester Fire does not waive any rights that it has under the Policy.

If there are any questions, please do not hesitate to contact me at (678) 795-4374.

Very truly yours,

Robyn L. Dilts
Senior Claims Specialist

# EXHIBIT B

RYAN T. BROWN
RTBROWN@GORDONREES.COM

# GORDON & REES LLP

ATTORNEYS AT LAW
205 N. MICHIGAN AVENUE
SUITE 2560
CHICAGO, ILLINOIS 60601
PHONE: (312) 565-1400
FAX: (312) 565-6511
WWW.GORDONREES.COM

October 26, 2007

**VIA ELECTRONIC MAIL**

Blake T. Hannafan, Esq.
Hannafan & Hannafan, Ltd.
One East Wacker Drive
Suite 2800
Chicago, IL 60601

| | | |
|---|---|---|
| Re: | Named Insured: | Sigma Chi Fraternity, et al. |
| | Claimants: | IBM Credit LLC; Incentra Solutions, Inc. |
| | Policy No.: | DON G21943885 002 |
| | Policy Period: | September 28, 2006 to September 28, 2007 |
| | ACE Claim Nos.: | JY07J0071577; JY07J0133903 |
| | G&R Matter No.: | 1046395 |

Dear Attorney Hannafan:

As you know, Gordon & Rees LLP has been retained by Westchester Fire Insurance Company ("Westchester Fire") to address coverage issues presented by the above referenced claims ("Claims") brought by IBM Credit LLC and Incentra Solutions, Inc. against Sigma Chi Fraternity and Sigma Chi Foundation (collectively "Sigma Chi"). We understand that you have authority to receive communications on behalf of Sigma Chi. If this understanding is incorrect, or if alternate and/or additional person(s) should receive this and future correspondence regarding coverage for this matter, please advise the undersigned immediately.

Westchester Fire issued Not-For-Profit Company Management Liability insurance policy no. DON G21943885 002 (the "Policy") to Sigma Chi Fraternity, et al. for the policy period of September 28, 2006 to September 28, 2007. The Policy has a limit of liability of $5,000,000 with a $10,000 Retention for each Claim. The Policy is a "claims made and reported" policy, applying only to those claims that are first made against an insured and reported to the insurer during the policy period. We note that this coverage letter should be read in conjunction with the Policy. Further, this letter does not alter the language, terms and/or conditions of the Policy.

Blake T. Hannafan, Esq.
October 26, 2007
Page 2

I. **Synopsis of Claims**

Based upon the material received to date, we understand that in 2004, Sigma Chi signed a Master Lease Agreement ("MLA") with IBM Credit governing the purchase and lease of certain hardware and software. We understand that in June 2006, Sigma Chi entered into a three year Master Services Agreement ("MSA") with Incentra to provide computer network monitoring/maintenance services for the Headquarters facility. From September through December 2006, Sigma Chi executed various purchase orders, financing agreements and service agreements (collectively, the "disputed contracts) whereby IBM Credit provided Sigma Chi with certain additional hardware and software and Incentra provided Sigma Chi with certain consulting services. We understand that the value of the equipment and services referenced in the disputed contracts totals approximately $1,000,000. We understand that the MLA, MSA, and disputed contracts were executed by Daniel Walker, the former Intellectual Technology Manager for Sigma Chi.

According to Sigma Chi executives, Walker was not authorized to execute the disputed contracts. We understand that after Walker's resignation in January 2007, Sigma Chi notified Incentra and IBM Credit that the contracts were not valid as Walker had no actual or apparent authority to serve as an agent of Sigma Chi. On February 23, 2007, Sigma Chi wrote to Incentra and IBM Credit declining to pay for any of the equipment or services described in the disputed contracts. On March 22, 2007, Sigma Chi requested that IBM Credit arrange for the removal of all disputed hardware/equipment.[1]

On September 19, 2007, Incentra filed a civil complaint against Sigma Chi Corporation in Illinois Circuit Court, Du Page County, alleging 1) breach of the MSA, and 2) breach of the individual service agreements. According to the complaint, Sigma Chi has refused to pay outstanding balances of $83,647.59 in consulting services, $1,071.43 for costs advanced by Incentra, and $23,741.00 due under the MSA for general networking services. We understand that Incentra will argue that Walker had both actual or apparent authority to execute the disputed contracts, and Sigma Chi is liable for the full amount due on all Incentra contracts based upon the acceleration provision in the MSA.

We understand that, to date, IBM Credit has not filed suit against Sigma Chi.

II. **The Policy**

Section I. of the Policy includes Insuring Agreements for:

      A. Management Liability,
      B. Employment Practices Liability, and
      C. Fiduciary Liability.[2]

---

[1] On or about September 21, 2007, IBM Credit removed the disputed hardware/equipment.
[2] Sigma Chi purchased coverage for Management Liability and Employment Practices Liability only.

Blake T. Hannafan, Esq.
October 26, 2007
Page 3

---

Section I.A. addressing Management Liability is divided into four subsections, including:

A.1. Directors' and Officers' Liability,
A.2. Company Reimbursement,
A.3. Company Liability, and
A.4. Outside Entity Directors' and Officers' Liability.

Westchester Fire and Sigma Chi agree that Insuring Agreement A.3. addressing Company Liability is relevant to the Claims. Further, we agree that the demand letters from IBM Credit and Incentra constitute Claims as defined by Section II.D. of the Policy. However, further to our previous correspondence, we disagree about the interpretation and application of the exclusionary language in Section III.L.1. of the Policy. Whereas Sigma Chi believes that the exclusionary language in Section III.L. is limited to Insuring Agreement A.1., Westchester Fire believes that Section III.L. precludes coverage for claims under Insuring Agreements A.1., A.2., A.3., and A.4., including the Claims brought by IBM Credit and Incentra.

**III.     Non-Waiver Agreement**

In an effort to amicably resolve the coverage dispute, Westchester Fire has agreed to withdraw the declination of coverage letters previously issued to Sigma Chi. However, Westchester Fire and Sigma Chi agree and acknowledge that neither party has waived or limited its arguments regarding coverage for the Claims under the Policy, at law or in equity. In this connection, Sigma Chi agrees that Westchester Fire retains all of its rights, remedies and defenses regarding the filing, prosecution, and/or defense of any declaratory judgment action involving the above coverage dispute.

**IV.     Coverage and Reservation of Rights**

Initially, pursuant to the terms of the Policy, the duty to defend the Claims lies with Sigma Chi, not Westchester Fire. In this connection, we note that Section X. of the Policy provides:

> X.     DEFENSE AND SETTLEMENT
>
> A.     It shall be the duty of the **Insureds** and not the duty of the **Insurer** to defend any **Claim.**
>
> B.     The **Insureds** agree not to settle or offer to settle any **Claim**, incur any **Defense Costs** or otherwise assume any contractual obligation or admit any liability with respect to any **Claim** without the prior written consent of the **Insurer**. The **Insurer** shall not be liable for any settlement, **Defense Costs**, assumed obligation or admission to which it has not consented. The **Insureds** shall promptly send to the **Insurer** all settlement demands or offers received by any **Insured** from the claimant(s). However, if the **Insureds** are able

Blake T. Hannafan, Esq.
October 26, 2007
Page 4

---

        to settle all **Claims** which are subject to a single Retention for an aggregate amount, including **Defense Costs**, not exceeding such Retention, the consent of the **Insurer** shall not be required for the settlement of such **Claims**.

C.    The **Insurer** shall have the right and shall be given the opportunity to effectively associate with the **Insureds** regarding the defense and negotiation of any settlement of any **Claim**.

D.    The **Insureds** agree to provide the **Insurer** with all information, assistance and cooperation which the **Insurer** reasonably requests and agree that, in the event of a **Claim**, the **Insureds** will do nothing that shall prejudice the position of the **Insurer** or its potential or actual rights of recovery. The **Insurer** may make any investigation it deems necessary.

E.    If the **Insurer** recommends a settlement within the **Policy** Limit of Liability which is acceptable to the claimant, but the **Insureds** do not consent to such settlement within 30 days of the date the **Insureds** are first made aware of the potential settlement, the **Insurer's** liability for all **Loss** on account of such **Claim** shall not exceed (i) the amount for which the **Insurer** could have settled such **Claim** plus **Defense Costs** incurred as of the date the potential settlement was proposed in writing by the **Insurer** to the **Insureds** and (ii) 50% of all subsequent covered **Loss** in excess of such amount, the remaining 50% of which shall be borne by the **Insureds** uninsured and at their own risk. However, this subsection does not apply to any potential settlement that is within the Retention.

F.    The **Insurer** shall, on a quarterly basis, advance on behalf of the **Insureds** covered **Defense Costs** which the **Insureds** have incurred in connection with **Claims** made against them, prior to disposition of such **Claims**. Any advancement of **Defense Costs** shall be subject to the condition that such advanced amounts shall be repaid to the **Insurer** by the **Insureds** severally according to their respective interests if and to the extent the **Insureds** shall not be entitled to coverage for such **Defense Costs** under the terms and conditions of this **Policy**.

Section II.F. of the Policy, as amended by Endorsement 3, provides:

F.    **Defense Costs** means reasonable and necessary costs, charges, fees and expenses incurred by any **Insured** in defending **Claims** and the premium for appeal, attachment or similar bonds arising.

Blake T. Hannafan, Esq.
October 26, 2007
Page 5

---

> **Defense Costs** also do not include unallocated, routine and ongoing expenses such as the salaries for the **Insured's** and **Insurers** staff attorneys.

Based upon the above, Westchester Fire will review your firm's invoices submitted on October 3, 2007 and fund reasonable and necessary costs, charges, fees and expenses in accordance with the terms and conditions of the Policy. In this connection, we request that you review and adhere to the billing and reporting guidelines applicable to these Claims, forwarded to you under separate cover, and comply with same going forward. The guidelines constitute reasonable requests for information, assistance and cooperation in accordance with Section X.D. of the Policy.

Regarding the applicable Retention for this matter, we note that Section VII.A. of the Policy provides:

> VII. LIMITS OF LIABILITY
>
> A.  All **Claims** arising out of the same **Wrongful Act** and all **Interrelated Wrongful Acts** of the **Insureds** shall be deemed to be one **Claim**, and such **Claim** shall be deemed to be first made on the date the earliest of such **Claims** is first made, regardless of whether such date is before or during the **Policy Period**. All **Loss** resulting from a single **Claim** shall be deemed a single **Loss**.

Section II.O. of the Policy provides:

> O.  **Interrelated Wrongful Acts** means all **Wrongful Acts** that have as a common nexus any fact, circumstance, situation, event, transaction, cause or series of related facts, circumstances, situations, events, transactions or causes.

Section VIII. of the Policy provides:

> VIII. RETENTIONS
>
> A.  Except as otherwise provided in this section, the liability of the **Insurer** shall apply only to that part of **Loss** which is excess of the applicable Retention amount shown in Item 3 of the Declarations. Such Retention shall be borne uninsured by the **Insureds** and at their own risk. If different parts of a single **Claim** are subject to different applicable Retentions, the applicable Retentions will be applied separately to each part of such **Loss**, but the sum of such Retentions shall not exceed the largest applicable Retention.

Blake T. Hannafan, Esq.
October 26, 2007
Page 6

---

    B.  A single Retention amount shall apply to **Loss** arising from all **Claims** alleging **Interrelated Wrongful Acts**.

    C.  No Retention shall apply to any **Loss** incurred by any **Insured Person** except when and to the extent that the **Company** has indemnified the **Insured Person**.

  Based upon the above, Westchester Fire will agree that a single $10,000 Retention will apply at this time. However, to the extent we conclusively determine that the IBM Credit Claim and Incentra Claim do not arise out of the same Wrongful Acts or Interrelated Wrongful Acts, Westchester Fire reserves the right to seek payment of separate Retentions for each Claim.

  Our enumeration of specific coverage issues in no way serves to waive or limit the rights that Westchester Fire has or may obtain. In this connection, Sigma Chi and Westchester Fire agree that neither party has waived any right under the Policy, at law or in equity. As we discussed, Westchester Fire reserves the right to supplement and/or amend this letter to address additional coverage issues as they may arise, based upon all of the provisions, terms, conditions, exclusions, endorsements, and definitions found in the Policy and additional facts that may come to their attention. Further, Westchester Fire reserves the right to file and prosecute a declaratory judgment action against Sigma Chi in order to clarify coverage for the Claims under the Policy.

  Nothing stated herein and no further action taken by Westchester Fire or on its behalf should be construed as a waiver of any of its rights under the Policy, at law or in equity. On the contrary, by providing this or any prior correspondence to Sigma Chi, engaging in any prior or future discussions with Sigma Chi regarding coverage and settlement, or paying or agreeing to pay any amount to or on behalf of Sigma Chi, Westchester Fire does not waive any rights that it has under the Policy, at law or in equity, including the right to seek reimbursement of any amounts paid in accordance with Section X.F. of the Policy.

  If you or Sigma Chi have any questions regarding the above, please do not hesitate to contact me. We also invite you or Sigma Chi to provide us with any additional information or documentation that may be pertinent to Westchester Fire's review of coverage for this matter.

                Very truly yours,

               *s/ Ryan T. Brown*

                Ryan T. Brown

RTB:ah
Enclosure

cc: Robyn L. Dilts, Esq.
   ACE Westchester Specialty Group Claims