# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| SIGMA CHI CORPORATION and SIGMA CHI FOUNDATION, | ) ) ) |
| Plaintiffs and Counter-Defendants, | ) ) |
| v. | ) ) ) |
| WESTCHESTER FIRE INSURANCE COMPANY, | ) ) ) ) |
| Defendant and Counter-Plaintiff. | ) ) |

Case No. 1:08-cv-00767

Judge Ruben Castillo

Magistrate Judge Arlander Keyes

## ANSWER AND AFFIRMATIVE DEFENSES TO
## FIRST AMENDED COMPLAINT

Defendant/Counter-Plaintiff, Westchester Fire Insurance Company, by and through its attorneys, Gordon & Rees LLP, respectfully submits its Answer and Affirmative Defenses for Declaratory Judgment to Plaintiffs/Counter-Defendants' Amended Complaint for Declaratory Judgment, and states as follows:

### THE PARTIES

1. Plaintiff Sigma Chi Corporation is a not-for-profit Illinois corporation with its principal place of business located at 1714 Hinman Avenue in Evanston, Illinois.

**Answer:** Upon information and belief, Westchester Fire Insurance Company ("Westchester Fire" or "Defendant/Counter-Plaintiff") admits the allegations contained therein.

2. Plaintiff Sigma Chi Foundation is a not-for-profit Colorado corporation with its principal place of business located at 1714 Hinman Avenue in Evanston, Illinois.

**Answer:** Upon information and belief, Westchester Fire admits the allegations contained therein.

3. Defendant Westchester Fire is a New York corporation with its principal place of business in New York, New York.

**Answer:**   Westchester Fire denies the allegations contained therein.

## JURISDICTION

4.   This Court has diversity jurisdiction matter pursuant to 28 USC §1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

**Answer:**   Westchester Fire admits the allegations contained therein.

## VENUE

5.   Venue is proper in this Court pursuant to 28 USC § 1391(a)(2) because a substantial part of the events or omissions giving rise to the claim occurred within this District.

**Answer:**   Westchester Fire admits the allegations contained therein.

## THE UNDERLYING IBM CLAIMS

6.   On February 23, 2007, IBM Credit notified Sigma Chi that it was in default of certain lease agreements for computer hardware, software and services. IBM Credit demanded that Sigma Chi pay it the sum of $1,490,604.00 under the agreement.

**Answer:**   Westchester Fire admits the allegations contained therein.

## THE UNDERLYING INCENTRA CLAIMS

7.   On May 4, 2007, Incentra notified Sigma Chi that it was in breach of the Gridworks Master Service Agreement and various other agreements regarding computer hardware, software and services in the amount of $108,459.93. On September 19, 2007, Incentra filed a lawsuit in the Circuit Court of DuPage County, Illinois, against Sigma Chi Corporation and Sigma Chi Foundation for breach of contract in the amount of $108,459.93. The case is styled *Network Systems Technologies, Inc. v. Sigma Chi Corporation and Sigma Chi Foundation*, Case No. 2007 L 000988.

**Answer:**   Westchester Fire admits the allegations contained therein.

## THE POLICY

8.      Westchester Fire issued a policy number DON G21943885, as amended ("the Policy") to Sigma Chi Corporation and Sigma Chi Foundation for the period of September 28, 2006 to September 28, 2007. Sigma Chi purchased Policy number DON G21943885 for "Management Liability" and "Employment Practices Liability" with an aggregate limit of $5,000,000 and $10,000 retention for each claim.

**Answer:**      Westchester Fire admits the allegations contained therein.

9.      The relevant portion of the Policy which relates to the underlying IBM Credit and Incentra claims is "Management Liability" which includes "Company Liability" in Section I.A.3:

> The **Insurer** shall pay the **Loss** of the **Company** which the Company becomes legally obligated to pay by reason of a **Claim** first made against it and reported to the **Insurer** during the **Policy Period**, or, if elected, the **Extended Reporting Period**, for any **Wrongful Acts** taking place prior to the end of the **Policy Period.**

**Answer:**      Westchester Fire states that the Policy speaks for itself and denies any allegations contained therein that differ from the Policy.

10.     In Section II.D. of the "Definitions" section of the Policy a Claim is defined as:

> 1.      a written demand against the **Insured** for monetary damages, or, except with respect to insuring Agreement B Employment Practices Liability, non-monetary or injunctive relief;
>
> 2.      a civil proceeding against the **Insured** seeking monetary damages or non-monetary or injunctive relief, commenced by the service of a complaint or similar pleading.

**Answer:**      Westchester Fire states that the Policy speaks for itself and denies any allegations contained therein that differ from the Policy.

-3-

      11.    Under Section II.P. of the "Definitions" section in the Policy, Loss is defined as:

> **Loss** means the damages, judgments, any awards of pre-judgments and post-judgments interest, settlements and **Defense Costs** which the **Insured** becomes legally obligated to pay on account of any **Claim** first made against the **Insured** during the **Policy Period…**for **Wrongful Acts** to which this **Policy** applies.

**Answer:**    Westchester Fire states that the Policy speaks for itself and denies any allegations contained therein that differ from the Policy.

      12.    Under Section X, "Defense and Settlement," the Policy states that:

> The **Insurer** shall, on a quarterly basis, advance on behalf of the **Insureds** covered **Defense Costs** which the **Insureds** have incurred in connection with **Claims** made against them, prior to disposition of such **Claims.**

**Answer:**    Westchester Fire states that the Policy speaks for itself and denies any allegations contained therein that differ from the Policy.

### SIGMA CHI SENT NOTICES OF THE CLAIMS TO WESTCHESTER FIRE

      13.    On March 21, 2007, Sigma Chi submitted to Westchester Fire the underlying claim from IBM Credit. On April 2, 2007, Westchester Fire responded to Sigma Chi's submission of the claim by stating that it would determine its rights and obligations under the Westchester Fire Policy. On April 27, 2007, counsel for Sigma Chi made another demand for insurance coverage under the Policy, including defense costs regarding the IBM Credit claim. Subsequently, on June 1, 2007, Westchester Fire notified counsel for Sigma Chi that coverage under the Policy for the IBM Credit claim was denied. (See copy of June 1, 2007, letter attached as Exhibit A.)

**Answer:**    Westchester Fire admits that correspondence was exchanged between Plaintiffs/Counter-Defendants and Westchester Fire on the above dates and states that the correspondence speaks for itself. Westchester Fire denies any allegations contained therein that misstate or mischaracterize the content of the correspondence.

      14.    Westchester Fire's denial of coverage was based on Section III L.1 of the Policy which states, in relevant part, as follows:

    L.  The following exclusions shall apply to any **Claim** covered, in whole or in part, under Insuring Agreement A, Directors' and Officers' Liability:

        1.    Contract or Agreement

        Alleging based upon arising out of, or attributable to the actual or alleged breach of any oral, written, express or implied contract or agreement. However, this exclusion shall not apply to the extent that liability would have attached to the **Company** in the absence of such contract or agreement, or where such **Claim** is covered entirely under the Insuring Agreement A1, Directors' and Officers' Liability, and A2, **Company** Reimbursement, and no part of such **Claim** is covered under Insuring Agreement A3, **Company** Liability.

    This quoted section, in particular "under Insuring Agreement A, Directors' and Officers' Liability," was form language – including the punctuation – that was included in numerous similar policies issued by Westchester Fire.

**Answer:**    Westchester Fire states that the denial of coverage and the Policy speak for themselves and denies any allegations contained therein that differ from said correspondence and Policy. Westchester Fire denies the remaining allegations in Paragraph 14 of the First Amended Complaint.

      15.    On June 1, 2007, Sigma Chi sent notice to Westchester Fire of the underlying claims made by Incentra. On June 7, 2007, Westchester Fire acknowledged Sigma Chi's submission of the claim from Incentra against Sigma Chi. On June 15, 2007, Westchester Fire denied coverage under the Policy for the Incentra claim. On June 21, 2007, Plaintiff sent a letter to Westchester Fire and requested that it reconsider its denials. Subsequently, on July 26, 2007, Westchester Fire repeated its denial of coverage.

**Answer:**    Westchester Fire admits that correspondence was exchanged between Plaintiffs/Counter Defendants and Westchester Fire on the above dates and states that the correspondence speaks for itself. Westchester Fire denies any allegations contained therein that misstate or mischaracterize the content of the correspondence.

      16.    Following protests by Sigma Chi of Westchester Fire's denials of coverage, Westchester Fire eventually <u>withdrew</u> its previous denials of coverage regarding both IBM Credit's and Incentra's claims by letter dated September 17, 2007. Westchester Fire also agreed to meet with counsel for Sigma Chi and asked for a statement of costs incurred defending the underlying claims. Subsequently, in mid-September 2007, counsel for Sigma Chi and counsel for Westchester Fire met to discuss the underlying IBM and Incentra claims. At this meeting, counsel for Sigma Chi gave to counsel for Westchester Fire a statement of legal costs incurred by Sigma Chi associated with the defense of the IBM and Incentra claims.

**Answer:**  Westchester Fire admits that correspondence was sent to Plaintiffs/Counter-Defendants on September 17, 2007, and states that the correspondence speaks for itself. Westchester Fire denies any allegations contained therein that misstate or mischaracterize the content of the correspondence. Westchester Fire admits that counsel for Plaintiffs/Counter-Defendants and counsel for Westchester Fire met on or about September 18, 2007, and that counsel for Plaintiffs/Counter-Defendants gave to counsel for Westchester Fire a single page stating that legal costs incurred by Sigma Chi in the Underlying Claims totaled $63,536,75. Westchester Fire denies the remaining allegations contained therein.

## WESTCHESTER FIRE REVERSES ITS DECISION TO COVER DEFENSE COSTS

      17.    In a letter to counsel for Sigma Chi, dated October 26, 2007, Westchester Fire reiterated its intention to withdraw the previous coverage letters denying coverage to Sigma Chi under the Policy. Westchester Fire also agreed to fund the reasonable and necessary costs, charges, fees and expenses in accordance with the terms and conditions of the Policy for the underlying IBM and Incentra claims. (See Copy of October 26, 2007, letter as Exhibit B).

**Answer:**  Westchester Fire admits that correspondence was sent to Plaintiffs/Counter-Defendants on October 26, 2007, and states that the correspondence speaks for itself. Westchester Fire denies any allegations contained therein that misstate or mischaracterize the content of the correspondence. Westchester Fire denies the remaining allegations contained therein.

  18. On November 19, 2007, however, Westchester Fire reversed its prior promises to provide coverage of defense costs. Instead, it denied coverage yet again to Sigma Chi for the claims made by IBM Credit and Incentra under the Policy. Further, Westchester Fire stated that it would file a declaratory action. To date, it has failed to do so. Although Sigma Chi has repeatedly demanded payment, Westchester Fire has refused and continues to refuse to advance defense costs to Sigma Chi under the Policy.

**Answer:** Westchester Fire admits that correspondence was sent to Plaintiffs/Counter-Defendants on November 19, 2007, and states that the correspondence speaks for itself. Westchester Fire denies any allegations contained therein that misstate or mischaracterize the content of the correspondence. Westchester Fire admits that it stated that it intended to file a declaratory judgment action if the parties were unable to resolve the dispute. Further, Westchester Fire admits that it did not file a declaratory judgment action by February 4, 2008, the date of Plaintiffs/Counter-Defendants' Complaint for Declaratory Judgment. Westchester Fire denies the remaining allegations contained therein.

## **BREACH OF CONTRACT**

  19. Beginning in September 2007, Sigma Chi submitted bills to Westchester Fire for its legal defense fees and costs in connection with the defense of the Incentra and IBM claims. However, Westchester Fire has denied all of Sigma Chi's requests to pay the bills or indemnify it for payments made to their attorneys.

**Answer:** Westchester Fire denies that Plaintiffs/Counter-Defendants submitted bills for its legal defense fees and costs in connection with the Incentra and IBM claims to Westchester Fire in September 2007. Westchester Fire admits that it has not paid legal defense fees and costs related to underlying Claims.

  20. Westchester Fire has breached the Policy by denying coverage in the underlying matters and by failing to fund defense costs. The Policy is a valid contract and Sigma Chi has complied with the requirements of the Policy by giving prior notice to Westchester Fire in accordance with the terms of the Policy. Further, Sigma Chi is current with its premium payments to Westchester Fire in accordance with the Policy. Sigma Chi is not in breach of the Policy.

**Answer:** Westchester Fire denies that it has breached the Policy. Westchester Fire admits that the Policy is a valid contract. Upon information and belief, Westchester Fire admits that Sigma Chi is current with its premium payments. Westchester Fire is without sufficient knowledge or information necessary to form a belief as to the truth of falsity of the remaining allegations and therefore denies the same.

21. Westchester Fire's denial of coverage and payment of defense costs under the terms of the Policy has caused damages to Sigma Chi and is vexatious and unreasonable. Therefore, in accordance with 215 ILCS 5/155, Sigma Chi Corporation and Sigma Chi Foundation are also entitled to their attorneys' fees and other costs plus at least $60,000.00 in exemplary statutory damages.

**Answer:** Westchester Fire denies the allegations contained therein.

### PRAYER FOR RELIEF

WHEREFORE, plaintiffs Sigma Chi Corporation and Sigma Chi Foundation respectfully pray that the Court enter judgment jointly and severally in their favor and against defendant Westchester Fire Insurance Company as follows:

1. Declare that Westchester Fire is in breach of the Policy for denying coverage and refusing to advance defense costs for the underlying claims.

2. Declare that Westchester Fire's denial of coverage and refusal to advance defense costs is vexatious and unreasonable under 215 ILCS 5/155.

3. Award attorneys' fees, other costs plus at least $60,000.00 to Sigma Chi Corporation and Sigma Chi Foundation in accordance with 215 ILCS 5/155 in an amount to be determined.

4. Order Westchester Fire to provide full coverage under the terms of the Policy and fund the Policy accordingly.

5. Grant such other and further relief which the Court deems just and reasonable.

**Answer:** To the extent that this paragraph requires an answer, Westchester Fire denies the allegations contained therein.

## AFFIRMATIVE DEFENSES

For its affirmative defenses to Plaintiffs/Counter-Defendants' Amended Complaint, Westchester Fire hereby alleges as follows:

### FIRST AFFIRMATIVE DEFENSE

1.  The Amended Complaint fails to allege facts sufficient to state a cause of action and fails to state a claim upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

2.  Plaintiffs' claims against Westchester Fire are barred because the underlying IBM and Incentra Claims do not fall within the scope of coverage afforded by the insuring language, terms, conditions and endorsements of the Policy.

### THIRD AFFIRMATIVE DEFENSE

3.  Plaintiffs' claims against Westchester Fire are barred because of Plaintiffs' failure to satisfy material requirements imposed upon them by the Policy.

### FOURTH AFFIRMATIVE DEFENSE

4.  Plaintiffs' claims against Westchester Fire are barred because coverage for the underlying Claims is specifically excluded from by Section III.L.1. of the Policy.

### FIFTH AFFIRMATIVE DEFENSE

5.  Plaintiffs' claims against Westchester Fire are barred, in whole or in part, due to Plaintiffs' failure to exercise reasonable care and diligence to mitigate, minimize, or avoid the allege damages.

### SIXTH AFFIRMATIVE DEFENSE

6.  Plaintiffs' claims against Westchester Fire are barred by the doctrine of laches, equitable estoppel, acquiescence, and/or waiver.

**SEVENTH AFFIRMATIVE DEFENSE**

7.  Plaintiffs' claims against Westchester Fire are barred under the doctrine of unclean hands.

**EIGHTH AFFIRMATIVE DEFENSE**

8.  To the extent that coverage is found for the underlying Claims, Plaintiffs have not and cannot plead and prove a claim for punitive damages. In particular, Plaintiffs have not and cannot plead and prove Westchester Fire's liability for punitive damages under 215 ILCS 5/155.

**NINTH AFFIRMATIVE DEFENSE**

9.  Any award of punitive damages as sought by Plaintiffs would violate the Due Process, Equal Protection, and Excessive Fine clauses of the Fifth, Eighth, and Fourteenth Amendments of the United States Constitution.

**TENTH AFFIRMATIVE DEFENSE**

10. To the extent that coverage is found for the underlying Claims, attorneys fees and costs incurred by Plaintiffs' counsel are not reasonable and necessary defense costs.

Respectfully submitted,

By: s/ Ryan T. Brown
One of the Attorneys for
Westchester Fire Insurance Company

Ryan T. Brown
GORDON & REES LLP
Attorney for Defendant
One North Franklin
Suite 1800
Chicago, Illinois 60606
Tel: (312) 565-1400
Fax: (312) 565-6511
Attorney No. 6269256