## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| SIGMA CHI CORPORATION and<br>SIGMA CHI FOUNDATION, | ) | CASE NO. 08 C 767 |
| | ) | |
| Plaintiffs and Counter-Defendants, | ) | Honorable Ruben Castillo |
| | ) | |
| vs. | ) | Magistrate Judge Arlander Keys |
| | ) | |
| WESTCHESTER FIRE INSURANCE<br>COMPANY, | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendant and Counter-Plaintiff. | ) | |

### SIGMA CHI CORPORATION'S AND SIGMA CHI FOUNDATION'S
### MEMORANDUM IN OPPOSITION TO WESTCHESTER FIRE'S
### MOTION FOR JUDGMENT ON THE PLEADINGS

### Summary

Plaintiffs Sigma Chi Corporation and Sigma Chi Foundation (collectively, "Sigma Chi") have stated valid claims for coverage, including attorneys' fees and costs, on the Underlying Claims[1] under the Management Liability Policy (the "Policy") issued by Defendant Westchester Fire Insurance Company ("Westchester") because the Underlying Claims fall within the plain and unambiguous language of the Policy. Under Illinois law, insurance contracts are construed like any other contract and must be enforced as written. In addition, if the terms of the Policy are ambiguous or conflict with one another, then the Policy must be read in favor of coverage.

Westchester's argument that alleged breach of contract claims cannot be covered by insurance is disingenuous and ignores the plain language of the Policy. Westchester cannot avoid providing Sigma Chi coverage because Westchester now claims that it made a typographical error in the Policy despite the fact that, as alleged in Sigma Chi's Amended Complaint[2], it also made

---

[1] Unless otherwise stated, Sigma Chi adopts the terms used in Westchester's Opening Memorandum.
[2] Sigma Chi's First Amended Complaint was filed on July 21, 2008 and Westchester also answered the First Amended Complaint on July 21, 2008.

the same alleged "typo" in many of its other form policies. Finally, Westchester has acted in bad faith throughout its handling of Sigma Chi's tendering of the Underlying Claims in violation of Section 155 of the Illinois Insurance Code. After declining to provide any coverage to Sigma Chi, Westchester agreed to withdraw its declinations and to advance Defense Costs. However, a few months after requesting and receiving Sigma Chi's invoices for Defense Costs, Westchester reversed field and refused to comply with its agreement and the terms of the Policy by again refusing to provide Sigma Chi any coverage, including advancement of Defense Costs.

## STATEMENT OF FACTS

### The Westchester Fire Policy

Westchester issued the Policy, number DON G21943885, as amended to Sigma Chi for the period of September 28, 2006 to September 28, 2007. (Am. Comp. ¶ 8) (A copy of the Policy is attached as Ex. 4-A to Westchester's Counterclaim). Sigma Chi purchased the Policy for "Management Liability" and "Employment Practices Liability." (*Id.*) The relevant portion of the Policy which relates to the underlying IBM Credit and Incentra claims is "Management Liability" which includes "Company Liability" in Section I.A.3:

> The **Insurer** shall pay the **loss** of the **Company** which the Company becomes legally obligated to pay by reason of a **Claim** first made against it and reported to the **Insurer** during the **Policy Period**, or, if elected, the **Extended Reporting Period**, for any **Wrongful Acts** taking place prior to the end of the **Policy Period.**

Section II.D. of the Policy defines "Claim" as follows:

> 1.     a written demand against the **Insured** for monetary damages, or, except with respect to insuring Agreement B Employment Practices Liability, non-monetary or injunctive relief;
>
> 2.     a civil proceeding against the **Insured** seeking monetary damages or non-monetary or injunctive relief, commenced by the service of a complaint or similar pleading.

Section II.P. of the Policy defines "Loss" as follows:

2

**Loss** means the damages, judgments, any awards of pre-judgments and post-judgment interest, settlements and **Defense Costs** which the **Insured** becomes legally obligated to pay on account of any **Claim** first made against the **Insured** during the **Policy Period…**for **Wrongful Acts** to which this **Policy** applies…

### The Underlying IBM Credit Claim

On February 23, 2007, IBM Credit notified Sigma Chi that it was allegedly in default of certain lease agreements for computer hardware, software and services. (Am. Compl, ¶ 6) IBM Credit demanded that Sigma Chi pay it the sum of $1,490,604.00 under the agreements. (*Id.*)

### The Underlying Incentra Claim

On May 4, 2007, Incentra notified Sigma Chi that it was allegedly in breach of the Gridworks Master Service Agreement and various other agreements regarding computer hardware, software and services in the amount of $108,459.93. (Am. Compl, ¶ 7) On September 19, 2007, Incentra filed a lawsuit in the Circuit Court of DuPage County, Illinois, against Sigma Chi for breach of contract in the amount of $108,459.93. (*Id.*) The case is styled *Network System Technologies, Inc. v. Sigma Chi Corporation and Sigma Chi Foundation*, Case No. 2007 L 000988. (*Id.*) On July 28, 2008, Incentra filed its Amended Complaint which seeks damages for Breach of Service Agreements, Unjust Enrichment and Quantum Meruit against both Sigma Chi entities. (See attached Incentra Amended Complaint as Exhibit A.)

### Sigma Chi Tendered the Underlying Claims to Westchester

On March 21, 2007, Sigma Chi tendered to Westchester the underlying claim from IBM Credit. (Am. Compl. ¶ 13) On April 2, 2007, Westchester responded to Sigma Chi's tender of the claim by stating that it would determine its rights and obligations under the Policy. (Am. Compl. ¶ 13) On April 27, 2007, counsel for Sigma Chi made another demand for insurance coverage under the Policy, including Defense Costs, regarding the IBM Credit claim. (*Id.*) On June 1, 2007, Sigma Chi sent notice to Westchester of the underlying claims made by Incentra. (Am. Compl. ¶ 15)

**<u>Westchester Denies Coverage</u>**

On June 1, 2007, Westchester notified counsel for Sigma Chi that coverage under the Policy for the IBM Credit claim was denied. (*Id.*) (See 6/1/07 letter attached as Ex. A to the Am. Compl.)  The relevant portions of the June 1, 2007 letter from Westchester are as follows:

> The purpose of this letter is to regretfully advise you that there is no coverage available for the <u>IBM</u> Claim under the Policy, based upon our review of the information received to date.
>
> * * *
>
> Pursuant to the above exclusion [Section III. L.1] the Policy does not provide coverage for claims made against the Company for breach of contract or agreement.

On June 15, 2007, Westchester also denied coverage under the Policy for the Incentra claim using the exact same language as the June 1, 2007 letter denying the IBM Credit claim. (*Id*., See 6/15/07 letter attached as Ex. 6-3 to Opening Br.)

Westchester's denials of coverage were based on Section III L.1 of the Policy which states, in relevant part, as follows:

> L. The following exclusions shall apply to any **Claim** covered, in whole or in part, under Insuring Agreement A, Directors' and Officers' Liability:
>
> 1.    Contract or Agreement
>
> Alleging, based upon, arising out of, or attributable to the actual or alleged breach of any oral, written, express or implied contract or agreement.  However, this exclusion shall not apply to the extent that liability would have attached to the **Company** in the absence of such contract or agreement, or where such **Claim** is covered entirely under the Insuring Agreement A1, Directors' and Officers' Liability, and A2, **Company** Reimbursement, and no part of such **Claim** is covered under Insuring Agreement A3, **Company** Liability.

As alleged in Sigma Chi's First Amended Complaint, this quoted section was <u>form</u> language – including the punctuation - that was included in <u>numerous</u> similar policies issued by Westchester. (Am. Compl. ¶ 14)

**Westchester Withdrew Its Previous Denials of Coverage And Agreed to
Advance Defense Costs**

Following protests by Sigma Chi of Westchester's denials of coverage, Westchester eventually withdrew its previous denials of coverage regarding the Underlying Claims by letter dated September 17, 2007.  (Am. Compl. ¶ 16; A copy is attached as Ex. B) The relevant portions of Westchester's September 17, 2007 letter are as follows:

> Further to our correspondence of July 26, 2007, Westchester Fire continues to disagree with Sigma Chi's interpretation of Section III.L.[1] of the Policy. Notwithstanding the above, and further to our conversations, **Westchester has agreed to withdraw the coverage letters previously issued with respect to the Claims.**

> Next, in anticipation of our meeting on September 18, 2007, we request Sigma Chi submit a statement of costs incurred defending the Claims.  As we discussed, Westchester Fire **will review and fund** reasonable and necessary costs in accordance with the Policy.  (emphasis added)

In mid-September 2007, counsel for Sigma Chi and counsel for Westchester met to discuss the underlying IBM and Incentra claims.  (Am. Compl. ¶ 16)  Westchester requested a statement of costs incurred defending the Underlying Claims and Sigma Chi provided one.  (*Id.*)  In addition, at Westchester's request, Sigma Chi provided Westchester with copies of the invoices it had paid for attorneys' fees and costs. (*Id.*)

In a letter to counsel for Sigma Chi, dated October 26, 2007, Westchester reiterated its intention to withdraw the previous coverage letters denying coverage to Sigma Chi under the Policy. (Am. Compl. ¶ 17) (See 10/26/07 letter attached as Ex. B to Am. Compl.)  The relevant portions of the October 26, 2007 letter are as follows:

> In an effort to amicably resolve the coverage dispute, Westchester Fire has agreed to withdraw the declination of coverage letters previously issued to Sigma Chi. Based upon the above, Westchester Fire will review your firm's invoices submitted on October 3, 2007 and fund reasonable and necessary costs, charges, fees and expenses in accordance with the terms and conditions of the policy.

<u>**Westchester Reversed Its Decision to Cover Defense Costs**</u>

On November 19, 2007, Westchester reversed its prior promises to advance Defense Costs and again denied coverage for the Underlying Claims.  (Am. Compl. ¶ 18, Copy attached as Ex 6 to Westchester's Counterclaim)  Although Sigma Chi has repeatedly demanded payment, Westchester Fire has refused and continues to refuse to advance Defense Costs to Sigma Chi under the Policy.  (*Id.*)

**I.     THE ALLEGATIONS IN SIGMA CHI'S COMPLAINT MUST BE TAKEN AS TRUE FOR THE PURPOSE OF WESTCHESTER'S MOTION**

A Federal Rule 12(c) motion for judgment on the pleadings "is reviewed under the same standards as a motion to dismiss under Rule 12(b)."  *Flenner v. Sheahan*, 107 F. 3d 459, 461 (7th Cir. 1997).  A court should grant a Rule 12(c) motion "only when it appears <u>beyond doubt</u> that the plaintiff <u>cannot prove any facts</u> to support a claim for relief and the moving party demonstrates that there are no material issues of fact to be resolved."  (emphasis added).  *Supreme Laundry Serv., L.L.C. v. Hartford Cas. Ins. Co.*, 521 F.3d 743, 746 (7th Cir. 2008). "Additionally, the complaint should merely narrate a claim: 'Having specified the wrong done to him, a plaintiff may substitute one legal theory for another without altering the complaint.... A complaint may not be dismissed unless it is impossible to prevail 'under any set of facts that could be proved consistent with the allegations.'"  *Forseth v. Village of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000) (citations omitted).  In addition, the Court must "accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff."  Therefore, Sigma Chi's allegations in the Amended Complaint are taken as true and they are entitled to all inferences in their favor and Westchester is entitled to none.

**II.     ILLINOIS LAW APPLIES TO THIS DIVERSITY ACTION**

The Policy does not contain a choice of law provision.  However, Illinois law applies for several reasons.  The Seventh Circuit has held that "the operative rule of law is that when neither

party raises a conflict of law issue in a diversity case, the federal court applies the law of the state in which the court sits." *Wood v. Mid-Valley, Inc.*, 942 F.2d 425**,** 426 (7th Cir. 1991); *Land v. Yamaha Motor Corp.*, 272 F.3d 514, 516 (7th Cir. 2001) ("A federal court sitting in diversity jurisdiction must apply the substantive law of the state in which it sits." (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)). Westchester has not argued that there is a conflict of law issue or stated any reason why Illinois law should not control in this diversity matter. Regardless, under *Lapham-Hickey Steel v. Protection Mut.Ins. Co.*, 166 Ill.2d 520, 526-27, 655 N.E.2d 842, 845 (1995), Illinois law applies because, amongst other factors, the Policy was delivered in Illinois to Sigma Chi and both Sigma Chi entities are located and have their principal places of business in Illinois. (Compl. at ¶¶ 1-2). Because Illinois law applies, Sigma Chi respectfully suggests that the Court disregard the numerous non-Illinois law cases cited and relied upon by Westchester in its Opening Brief.

## III.     UNDER ILLINOIS LAW, AN INSURANCE POLICY IS ENFORCED PURSUANT TO ITS WRITTEN TERMS

Throughout its Opening Brief, Westchester makes numerous sweeping generalizations about what certain words or terms contained in the Policy mean and relies on scant authority for their support. However, Westchester ignores that the Policy must be interpreted and enforced pursuant to its own terms and definitions, not what may have been held in a few non-Illinois cases and articles. The law in Illinois regarding the interpretation of insurance policies is clear and well-established; insurance companies are liable according to the terms of their contracts. *Dotson v. Agency Rent-A-Car*, 101 Ill.App.3d 804, 807, 428 N.E. 2d 1002, 1004 (1st Dist. 1981). "The general principles governing the interpretation of insurance contracts do not differ from those controlling in other contracts." *Elson v. State Farm Fire and Cas. Co.*, 295 Ill.App.3d 1, 6, 691 N.E.2d 807, 811 (1st Dist. 1998). "In construing insurance contracts, the court's primary purpose is to give effect to the intention of the parties as expressed therein. Where the terms of a policy

7

are clear and unambiguous, **their plain meaning will be given effect**. Where, however, a provision in an insurance policy is subject to more than one reasonable interpretation, it is ambiguous and **must be construed against the insurer** and in favor of the insured." (emphasis added) *Id.*; *Economy Fire & Cas. Co. v. Kubik,* 142 Ill.App.3d 906, 909, 492 N.E.2d 504, 506-507 (1st Dist. 1986). See also *Jones v. State Farm Mutual Automobile Insurance Co.,* 289 Ill.App.3d 903, 910, 667 N.E.2d 238, 244 (1st Dist. 1997). Therefore, this Court must enforce the Policy as written pursuant to its clear and unambiguous language.

## IV.    THE UNDERLYING CLAIMS ARE NOT EXCLUDED UNDER THE PLAIN AND UNAMBIGUOUS LANGUAGE OF THE POLICY

The plain and unambiguous language of the alleged exclusion at issue, Section III.L.1., does not exclude the Underlying Claims. Section III.L.1. of the Policy states as follows:

> The following exclusions shall apply to any **Claim** <u>covered</u>, in whole or in part, under Insuring Agreement A, <u>Directors' and Officers' Liability</u>:
>
> 1.     Contract or Agreement
>
> Alleging, based upon, arising out of, or attributable to the actual or alleged breach of any oral, written, express or implied contract or agreement. However, this exclusion shall not apply to the extent that liability would have attached to the **Company** in the absence of such contract or agreement, or where such **Claim** is covered entirely under the Insuring Agreement A1, Directors' and Officers' Liability, and A2, **Company** Reimbursement, and no part of such **Claim** is covered under Insuring Agreement A3, **Company** Liability. (underlined emphasis added).

The plain and unambiguous language "shall apply to any Claim covered" of this clause concedes that contracts <u>are</u> covered under the Policy. In addition, this exclusion applies only to "Directors' and Officers' Liability," (Insuring Agreement A1) <u>not</u> Company Liability under Insuring Agreement A3. (See Ex. 4-A of Westchester's Counterclaim). Therefore, Westchester's argument that "an exclusion cannot expand the insuring agreements beyond their original scope" is baseless. The exclusion in Section III.L.1. is a <u>limited</u> exclusion and simply does not apply to Company Liability and is not being used to expand coverage. Even assuming, *arguendo*, that

Section III.L.1. applies to Company Liability, it is not a total exclusion. Indeed, Section III.L.1. states that it "shall not apply to the extent that liability would have attached to the Company in the absence of such contract or agreement." Westchester, without any support, simply concludes in its brief that "liability would not have attached to Sigma Chi in the absence of the contracts." (Opening Br. at 10). There is no basis for this conclusion and, indeed, is a question of fact relating to the future final resolutions of the Underlying Claims and, therefore, cannot be decided on a motion for judgment on the pleadings. Indeed, this is supported by the fact that on July 28, 2008, Incentra filed an Amended Complaint and has asserted claims for breach of contract, unjust enrichment and *quantum meruit* against both Sigma Chi entities. (See Exhibit A attached).

### A.    Insurance Policies are Construed In Favor Of the Insured And Against The Insurer Who Drafted The Policy

Under Illinois law, a policy "will be construed in favor of the insured and against the insurer who drafted the policy." *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 154 Ill.2d 90, 108-09, 607 N.E.2d 1204, 1212-1213 (1992). Furthermore, under Illinois law, when faced with two, competing, alternative and reasonable interpretations of disputed policy language (which, of course, evidences an ambiguity), one proffered by the insured and one proffered by the insurer, the disputed language is to be construed in the policyholder's favor. *Bruder v. Country Mut. Ins. Co.*, 156 Ill.2d 179, 185, 189, 620 N.E 355, 358-359 (1993); *Elson*, 295 Ill.App.3d at 6, 691 N.E.2d at 811.

Therefore, even if the Court concludes that both Sigma Chi and Westchester have proffered competing alternative and reasonable interpretations of the Policy's language regarding the phrase "legally obligated to pay" and/or the exclusion language in Section III.L.1., the Policy must be construed in Sigma Chi's favor so as to afford coverage for the Underlying Claims. Given this fundamental rule of policy construction, Sigma Chi's Amended Complaint, which

seeks a declaratory judgment, properly alleges a cause of action upon which relief may be granted.

**B.     Insurance Policy Exclusions Are Construed Against the Insurer And Must Be Clear and Free From Doubt In Order To Preclude Coverage**

Illinois courts have ruled that exclusionary or limiting language is to be liberally construed in favor of the insured and strictly and narrowly against the insurer. *United States Fire Ins. Co. v. Aetna Life & Cas. Co.*, 291 Ill.App.3d 991, 997, 684 N.E.2d 956, 961 (1st Dist. 1997) (referring to an additional insured endorsement, court stated that "[i]nsurance 'provisions that limit or exclude coverage are to be construed liberally in favor of the [additional] insured and' most strongly against the insurer'") (citing, *inter alia*, *National Union Fire Ins. Co. v. Glenview Part Dist.*, 158 Ill.2d 116, 122, 632 N.E.2d 1039, 1041-1042 (1994)); *Shriver Ins. Agency v. Utica Mut. Ins. Co.*, 323 Ill.App.3d 243, 247, 750 N.E.2d 1253, 1256 (2nd Dist. 2001). Similarly, Illinois courts have ruled that where the insurer relies on an exclusion, it must be clear and free from doubt that the exclusion precludes coverage. *U.S. Fidel. & Guar. Co. v. Wilkin Insulation Co.*, 193 Ill.App.3d 1087, 1098, 550 N.E.2d 1032, 1039 (1st Dist. 1989).  Because Section III.L.1. is an exclusion, it must be liberally construed in favor of Sigma Chi, must be strictly and narrowly construed against Westchester, and its applicability must be clear and free from doubt. Against that backdrop, and given the operative allegations of Sigma Chi's Amended Complaint, this Court cannot say with positive assurance that Sigma Chi has not and cannot set forth any set of facts to support a claim for relief and, therefore, Westchester's motion for judgment on the pleadings must be denied.

**C.     Insurer Has The Burden Of Proving That A Loss Falls Within An Exclusion**

Finally, an insurer has the burden of proving that a particular loss falls within the scope of its policy exclusion.  *International Surplus Lines Ins. Co. v. Pioneer Life Ins. Co.*, 209 Ill.App.3d 144, 148, 568 N.E.2d 9, 11 (1st Dist. 1990).  Westchester has denied outright the Underlying Claims based on the alleged exclusion of Section III.L.1.  (See 6/1/07 Letter attached as Ex. A to

the Am. Compl. and 6/15/07 letter attached as Ex. B). However, simply put, Westchester has not and cannot show clear and free from doubt that Section III.L.1. precludes coverage. Instead, Westchester weakly argues that the parties' intent and reasonable expectations must be examined. (Opening Br. at 10-11). That argument does not satisfy Westchester's burden. Of course, the parties' intent and reasonable expectations are questions of fact outside the scope of the pleadings and cannot be considered in deciding a Rule 12(c) motion. Regardless, Westchester fails to show that the Underlying Claims fall within any exclusion. When this high burden of proof is coupled with Westchester's equally high burden of proving that no set of facts could possibly be pled that would entitle Sigma Chi to relief, it is apparent that Sigma Chi's Amended Complaint properly alleges a cause of action upon which relief may be granted.

## V.    ILLINOIS LAW DOES NOT PROHIBIT THE COVERAGE OF BREACH OF CONTRACT CLAIMS

Westchester's argument that Illinois law prohibits breach of contract claims from falling within the scope of coverage provided by liability policies is disingenuous. (Opening Br. at 8). Indeed, the policies at issue in the cases cited by Westchester on page 8 of its Opening Brief related to insurance policies that covered an "occurrence" that resulted in "bodily injury or property damage." Moreover, the definitions of "occurrence" differed in the policies at issue. For example, in the *Watters* case, a case involving whether a man's sexual molestation of several minor children was covered under a homeowner's policy, "occurrence" was defined as "an accident, including exposure to conditions." 644 N.E.2d at 495. In addition, the *Watters* court stated that because "occurrence" was defined as an "accident," then it had to consider whether the injury was expected or intended. *Id.* at 506. While Illinois law controls in this matter, Westchester's implication that no courts have held that breach of contract claims can be covered by insurance is incorrect. See *City of Burlington v. Assoc. Elec. & Gas Ins. Servs., Ltd.*, 164 Vt. 218, 669 A.2d 1181 (1995) (held that breach of contract claims did fall within insurance policy);

*City of Burlington v. Assoc. Elec. & Gas Ins. Servs., Ltd.*, 170 Vt. 358, 751 A.2d 284 (2000) (held that an "intentional" act does not evidence intent to harm and, therefore, intentional breach of contract fell within policy's coverage).   The *Burlington* court's 1995 decision was also based in large part on the fact that the policy defined "occurrence" as including an "event" and that the policy did not "include an express coverage limitation regarding the intent or expectation of the insured." 164 Vt. at 222-23.   Indeed, the court stated that "an insurance policy is a consensual contract" and "[i]f an insurance carrier makes a business decision to take on such an obligation, we must enforce it for the insured who is entitled to the benefits of the bargain made."  *Id.* at 222. See also *Illinois Farmers Ins. Co. v. Tabor*, 267 Ill.App.3d 245, 251-52, 642 N.E.2d 159, 162 (2nd Dist. 1994).

In contrast, the Policy in this matter provides that Westchester "shall pay the **Loss** of the **Company** which the **Company** becomes legally obligated to pay by reason of a **Claim** first made against it and reported to the **Insurer** . . . for any **Wrongful Acts** taking place prior to the end of the **Policy Period**."  (Policy Section I.A.3).  Furthermore, the term "Wrongful Act" is defined in the Policy as "<u>any</u> error, misstatement, misleading statement, <u>act</u>, omission, <u>neglect</u>, or breach of duty actually or allegedly committed or attempted by: … the **Company**, with respect to Insuring Agreement A3, **Company** Liability."   (underlined emphasis added) (Policy Section I.BB.1.). *Black's Law Dictionary,* (8th ed. 2004) defines "act" as "[s]omething done or performed, esp[ecially] voluntarily" and defines "neglect" as "[t]he omission of proper attention to a person or thing, whether inadvertent, negligent, or willful." (emphasis added). The Policy's language is broad and does <u>not</u> define "Wrongful Act" as an accident or unexpected injury.  Moreover, the Policy does <u>not</u> include an express coverage limitation regarding the intent or expectation of the insured.  Therefore, the cases relied upon by Westchester are inapplicable to this matter.

12

A.    **The Phrase "Legally Obligated To Pay" Is Not Limited to Tort Liability**

Westchester has not explicitly stated that it believes the Policy to be ambiguous, but its arguments clearly imply that it believes the Policy's terms are not clear and need an explanation. This is true based on Westchester's interpretation of the phrase "legally obligated to pay." (Opening Br. at 9).  Without citation to a single case from Illinois, the Northern District of Illinois or the Seventh Circuit, Westchester argues that the phrase "legally obligated to pay" has been "uniformly interpreted" as referring to liability based in tort and not contract.  (*Id.*).  In support of its alleged "uniform" interpretation, Westchester relies on a 1979 California appellate decision, *International Surplus Lines Ins. Co. v. Devonshire Coverage Corp.*, 93 Cal. App. 3d 601 (1979). Westchester did <u>not</u> inform this Court that *International Surplus Lines* was overruled by the California Supreme Court in *Vandenberg v. Superior Court*, 21 Cal.4th 815, 841, 982 P.2d 229, 246 (1999) ("We therefore conclude that the *International Surplus* rationale, distinguishing contract from tort liability for purposes of the CGL insurance coverage phrase 'legally obligated to pay as damages,' is incorrect.").

In *Vandenberg* the California Supreme Court unanimously recognized that even in breach of contract cases, if a defendant becomes liable to pay damages, the defendant becomes liable as the result of the action of the court.  *Id.*  Put simply, the court enters a final judgment and, as a final judgment, the law imposes liability and the defendant becomes legally obligated to pay that sum.  Such a factual situation fits precisely with the language at issue in this matter.  Specifically, the *Vandenberg* court held as follows:

> <u>Nothing in the respective policies between Vandenberg and any of the insurers</u> <u>suggests any special or legalistic meaning</u> to the phrase 'legally obligated to pay as damages.'  A reasonable layperson <u>would certainly understand 'legally obligated</u> <u>to pay' to refer to any obligation which is binding and enforceable under the law,</u> <u>whether pursuant to contract or tort liability.</u>  Further, a reasonable layperson, cognizant that he or she is purchasing a 'general liability' insurance policy, would not conclude such coverage term only refers to liability pled in tort, and thus entirely excludes liability pled on a theory of breach of contract.  Under general

insurance principles, <u>we must interpret the phrase 'legally obligated to pay as damages' in accordance with the ordinary and popular sense, not the legalistic, and erroneously premised, interpretation of the language urged by insurers.</u> (emphasis added)  21 Cal.4th at 840, 982 P.2d at 245.

Like the policy in *Vandenberg*, nothing in the Policy suggests any special meaning to the phrase "legally obligated to pay."  It is certainly a reasonable and logical interpretation that the phrase would include a judgment or any damages against Sigma Chi regardless of the theory of relief. Indeed, in *Management Support Assocs. v. Indem. Ins. Co. of New York*, 129 Ill.App.3d 1089, 1096, 473 N.E.2d 405, 411 (1st Dist. 1984), the court relied upon this same reasoning when it considered whether a claim for a breach of a lease was covered by a policy that provided coverage for all sums an insured was "legally obligated to pay" because of its "negligent acts, errors, or omissions." (citing *Touchette Corp. v. Merchants Mut. Ins. Co.*, (1980, 4th Dept), 76 A.D. 2d 7, 9, 429 N.Y.S. 2d 952, 954).

Westchester drafted the Policy and if Westchester had wanted the Policy's coverage to be restricted to tort matters it could have easily said so.  *Transamerica Ins. Co. v. South*, 89 F.3d 475 (7th Cir. 1996) (Illinois law) (noting that insurer "is drafter of the policy and could have drafted ambiguous provision to be clear and specific") (withdrawn), <u>reh'g granted</u>, 99 F.3d 216 (7th Cir. 1996), <u>aff'd</u>, 125 F.3d 392 (7th Cir. 1997); <u>cf.</u> *Hartford Accident & Indem. Co. v. Aetna Ins. Co.*, 132 Ill. 2d 79, 547 N.E 2d 114, 117 (1989) ("If Aetna had wanted to limit its liability … it could have so indicated in its policy. It can hardly be argued that Aetna lacks the legal sophistication to limit its liability as it sees fit.").  For example, the Policy could have said "legally obligated to pay because of the commission of a tort," "legally obligated to pay because of negligence," or "posed by the law of non-intentional torts."  These alternative wordings would have accomplished the purpose that Westchester now wishes the Court to apply.  However, Westchester did not limit the Policy's coverage to torts and, as a result, it must comply with its own terms and definitions.  The fact that Westchester feels that it is necessary to explain the phrase "legally obligated to pay"

through extrinsic evidence shows that it believes the phrase is susceptible to more than one reasonable interpretation and, therefore, ambiguous.  As stated above, under Illinois law, if an insurance policy is ambiguous then its terms are construed <u>against</u> the insurer and in favor of coverage.

## VII.    SIGMA CHI HAS STATED A CLAIM THAT WESTCHESTER HAS ACTED <u>VEXATIOUSLY AND UNREASONABLY IN VIOLATION OF 215 ILCS 5/155</u>

Westchester argues that Sigma Chi's bad faith claim must be dismissed because Westchester had a *bona fide* defense to coverage.  (Opening Br. at 12). Sigma Chi notes that *bona fide* literally means "in good faith" in Latin.  The Court cannot find at this juncture, as a matter of law, that Westchester asserted a good faith defense which merited outright declinations of coverage, particularly where the plain language of the Policy refutes its position and when Westchester subsequently withdrew its declination letters and agreed to advance Sigma Chi's Defense Costs only to then renege on those agreements to Sigma Chi's harm.  (Am. Compl. ¶¶ 16-18; 9/17/07 Letter attached as Ex. B; 10/26/07 Letter attached as Ex. B to Am. Compl.; 11/19/07 Letter attached as Ex. 6 to Westchester's Counterclaim).

## <u>Conclusion</u>

Based on the foregoing reasons, Westchester's motion for judgment on the pleadings should be denied.  In the alternative, Sigma Chi should be granted leave to amend its complaint.

Dated:  August 1, 2008

Respectfully submitted,

/s Blake T. Hannafan
One of the Attorneys for Sigma Chi Foundation and
Sigma Chi Corporation.

Michael T. Hannafan
Blake T. Hannafan
Eric J. Malnar
Hannafan & Hannafan, Ltd.
One East Wacker Drive, Suite 2800
Chicago, IL 60601
(312)527-0055

15