UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SIGMA CHI CORPORATION and | ) | |
| SIGMA CHI FOUNDATION | ) | |
|     Plaintiffs and Counter-Defendants, | ) | |
| | ) | |
| v. | ) | No. 08 C 767 |
| | ) | |
| WESTCHESTER FIRE INSURANCE | ) | Judge Ruben Castillo |
| COMPANY, | ) | |
|     Defendant and Counter-Plaintiffs. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs/Counterdefendants, Sigma Chi Corporation and Sigma Chi Foundation (collectively "Sigma Chi") filed this diversity lawsuit seeking a declaration that Defendant/Counterplaintiff, Westchester Fire Insurance Company ("Westchester Fire") is in breach of contract by denying coverage under a management liability policy and that such denial violates Section 155 of the Illinois Insurance Code. 215 ILCS. 5/155. (R. 1, Compl.) Westchester Fire counterclaimed, seeking a declaration that it had no liability under the policy. (R. 10, Ans. and Countercl.) Presently before the Court is Westchester Fire's motion for judgment on the pleadings. (R. 24, Westchester's Mot. for J. on the Pleadings ("Westchester's Mot.")) For the following reasons, the motion is granted in part and denied in part.

# RELEVANT FACTS[1]

## I.     The Westchester Fire Policy

Westchester Fire issued a Management Liability policy to Sigma Chi for the period of September 28, 2006 to September 28, 2007 ("the Policy"). (R. 10, Countercl., Ex. 4-A). The Policy covers "Management Liability" and "Employment Practices Liability" and has an aggregate limit of $5,000,0000 and a $10,000 retention for each claim. (*Id.*)

The claims at issue are based on provisions contained in the section of the Policy providing Management Liability coverage. Relevant portions from this section include:

> I.A.3. **Company** Liability. The **Insurer** shall pay the **Loss** of the **Company** which the **Company** becomes legally obligated to pay by reason of a **Claim** first made against it and reported to the **Insurer** during the **Policy Period** or, if elected, the **Extended Reporting Period**, for any **Wrongful Acts** taking place prior to the end of the **Policy Period**.
>
> II.BB. **Wrongful Act**. Any error, misstatement, misleading statement, act, omission, neglect, or breach of duty actually or allegedly committed or attempted by the **Company** with respect to Insuring Agreement A2, **Company** Liability.
>
> II.P. **Loss**. **Loss** means the damages, judgments, any award of pre-judgment and post-judgment interest, settlements and **Defense Costs** which the **Insured** becomes legally obligated to pay on account of any **Claim** first made against the **Insured** during the **Policy Period**. . . for **Wrongful Acts** to which this **Policy** applies. . .

*Id.* (emphasis in original).

The exclusion at issue is contained in section III.L.1. of the Policy and provides:

The following exclusions shall apply to any **Claim** covered, in whole or in part, under

---

[1] In resolving a motion for judgment on the pleadings, the Court must accept as true all facts alleged by the nonmovant and must draw all reasonable inferences in the nonmovant's favor. *Pisciotta v. Old National Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007). "A copy of any written instrument which is an exhibit to a pleadings is a part thereof for all purposes." Fed. R. Civ. P. 10(c); *see also Forrest v. Universal Sav. Bank, F.A.*, 507 F.3d 540, 542 (7th Cir. 2007).

2

Insuring Agreement A, Directors' and Officers Liability:

1. Contract or Agreement

alleging, based upon, arising out of, or attributable to the actual or alleged breach of any oral, written, express, or implied contract or agreement. However, this exclusion shall not apply to the extent that liability would have attached to the **Company** in the absence of such contract or agreement, or where such **Claim** is covered entirely under Insuring Agreement A1, Directors' and Officers' Liability and A2, **Company** Reimbursement, and no part of such **Claim** is covered under Insuring Agreement A3, **Company** Liability.

*Id.* (emphasis in original).

## II. The Underlying Claims

Daniel Walker ("Walker"), the former Intellectual Technology Manager for Sigma Chi, executed various purchase orders, financing agreements and service agreements with IBM Credit Corporation ("IBM Credit") and Network System Technologies, Inc., d/b/a/ Incentra Solutions of Illinois ("Incentra") for hardware, software and consulting services. (R. 30, Am. Compl., Ex. B at 2.) In January 2007, after Walker's resignation, Sigma Chi notified both IBM Credit and Incentra that various purchase orders, financing agreements and service agreements were not valid because Walker had no actual or apparent authority to serve as an agent of Sigma Chi and was not authorized to execute the agreements. (*Id.*)

IBM Credit notified Sigma Chi that it was in default of various agreements in the sum of $1,490,604.00. (R. 30, Am. Compl. ¶ 6.) Sigma Chi submitted the underlying claim from IBM Credit to Westchester Fire, however, Westchester Fire denied coverage. (*Id.* ¶ 13 & Ex. A.) Incentra also notified Sigma Chi that it was in breach of various agreements in the amount of $108,459.93. (*Id.* ¶ 7.) Sigma Chi submitted the underlying claims from Incentra to Westchester

Fire and these claims were also denied. (*Id.* ¶ 15.)

On September 17, 2007, after Sigma Chi protested the IBM Credit and Incentra claims, Westchester Fire agreed to withdraw its previous denials of coverage for both claims and meet with counsel from Sigma Chi to discuss the issue. (*Id.* ¶ 16.) During the meeting, Sigma Chi provided Westchester Fire with a statement of legal costs that the company had incurred for the defense of these claims. (*Id.*) On October 26, 2007, Westchester Fire sent a letter to Sigma Chi stating it would review the invoices submitted and "fund reasonable and necessary costs, charges, fees and expenses in accordance with the terms of the Policy." (*Id.* Ex. B.) The letter also stated, "Westchester Fire will agree that a single $10,000 Retention will apply at this time." (*Id.*) Westchester Fire, nevertheless, reserved the right to file a declaratory action to clarify coverage and stated that its action should not be construed as a waiver of rights under the Policy. (*Id.*) On November 19, 2007, Westchester Fire reversed its previous decision and again denied coverage for the IBM Credit and Incentra claims made by Sigma Chi. Westchester Fire also declared to Sigma Chi its intention to file a declaratory action on this issue. (*Id.* ¶ 18.)

## PROCEDURAL HISTORY

On February 4, 2008, Sigma Chi filed a declaratory judgment suit in this Court on the basis of diversity jurisdiction alleging breach of contract and violations of Section 155 of the Illinois Insurance Code. (R. 1, Compl.) Westchester Fire counterclaimed, seeking a declaration that it had no duty to indemnify Sigma Chi for damages or defense expenses from the IBM Credit and Incentra claims. (R. 10, Answer and Countercl.) Sigma Chi was granted leave to file an amended complaint, and did so on July 21, 2008. (R. 29; R. 30.) Currently before the Court is Westchester Fire's motion for judgment on the pleadings pursuant to Federal Rule of Procedure

4

12(c). (R. 24, Westchester's Mot.) Specifically, Westchester Fire argues that judgment on the pleadings is proper because: (1) Illinois law and basic policy interpretation provide that liability policies do not cover breach of contract damages; (2) the plain language of the policy precludes coverage; and (3) penalties under Section 155 of the Illinois Insurance Code are unwarranted because it acted in good faith in addressing coverage for the underlying claims. (*Id.*) Sigma Chi disagrees that judgment on the pleadings is warranted arguing the underlying claims fall within the plain and unambiguous language of the Policy and that Westchester Fire acted in bad faith throughout its handling of the claims in violation of Section 155 of the Illinois Insurance Code. (R. 33, Sigma Chi's Mot. in Opp'n to J. on the Pleadings at 1-2.)

## LEGAL STANDARDS

Federal Rule of Civil Procedure 12(c) permits a party to move for judgment on the pleadings after the filing of a complaint and answer. *Supreme Laundry Serv., L.L.C. v. Hartford Cas. Ins. Co.*, 521 F.3d 743, 746 (7th Cir. 2008). A Rule 12(c) motion should be granted only when it appears beyond a doubt that the plaintiff cannot prove any set of facts that would support the claim for relief, and there are no material issues of fact to be resolved. *Id.* In resolving the motion, the Court must accept as true all facts alleged by the nonmovant and must draw all reasonable inferences in the nonmovant's favor. *Pisciotta*, 499 F.3d at 633. Similar to the review of a Rule 12(b)(6) motion to dismiss, the complaint in a Rule 12(c) motion need only contain a "short and plain statement of the claim showing the pleader is entitled to relief" and need not present detailed factual allegations. Fed. R. Civ. P. 8(a); *Pisciotta*, 499 F.3d at 633.

## ANALYSIS

### I. Westchester Fire's Duty to Indemnify

The central issue before this Court is whether Westchester Fire has an obligation to indemnify Sigma Chi for the IBM Credit and Incentra claims.[2] Westchester Fire argues it has no obligation to indemnify Sigma Chi because Illinois law does not provide coverage for liability imposed by contract and the clear and unambiguous language of the Policy precludes coverage for damages arising from Sigma Chi's breach of contract. (R. 24, Westchester's Mot. at 8-11.)

In Illinois, the construction of an insurance policy and its provisions is a question of law. *Great Am. Ins. Co. v. Hewig*, 419 F. Supp. 2d 1017, 1021 (N.D. Ill. 2006); *Lapham-Hickey Steel Corp. v. Protection Mut. Ins. Co.*, 655 N.E.2d 842, 846 (Ill. 1995). "A court's primary objective in construing the language of an insurance policy is to ascertain and give effect to the intention of the parties as expressed by the language of the policy." *BASF AG v. Great Am. Assur. Co.*, 522 F.3d 813 (7th Cir. 2008) (quoting *Valley Forge Ins. Co. v. Swiderski Electronics, Inc.*, 860 N.E.2d 307, 314 (Ill. 2006)).

#### A. Insurance Coverage for Breach of Contract Under Illinois Law

Westchester Fire first argues that under Illinois law, breach of contract claims are not within the scope of a liability policy. (R. 24, Westchester's Mot. at 8.) In support of this argument it cites a number of cases in which courts indeed determined that there was no coverage for breach of contract under the liability policies at issue. (*Id.*) (citing *Aetna Cas. & Sur. Co. v.*

---

[2] The Policy does not contain a choice of law provision. (R. 10, Countercl. Ex. 4-A.) However, as neither party has raised a conflict of laws issue, we will apply Illinois law. *Ind. Ins. Co. v. Pana Cmty. Unit Sch. Dist. No. 8*, 314 F.3d 895, 900 (7th Cir. 2002) ("[W]hen neither party raises a conflict of law issue in a diversity case, the applicable law is that of the state in which the federal court sits.).

*Spancrete of Ill., Inc.*, 726 F. Supp. 204 (N.D. Ill. 1989); *State Farm Fire & Cas. Co. v. Watters*, 644 N.E.2d 492 (Ill. App. Ct. 1994), *appeal denied*, 161 Ill.2d 540 (1995); *Travelers Ins. Cos. v. P.C. Quote, Inc.*, 570 N.E.2d 614 (Ill. App. Ct. 1991)). None of these cases, however, stand for the generalized rule that Westchester Fire suggests. Instead of applying a general rule that precluded liability for breach of contract under Illinois law, in each case, the court examined the language of the policy itself and found that no liability existed. *Aetna Cas. & Sur. Co.*, 726 F. Supp. at 206 (analyzing the contractual liability coverage provision of the policy and determining the provision "does not provide coverage resulting from breach of contractual obligations. . . ."); *State Farm Fire & Cas. Co.*, 644 N.E.2d at 495 (determining the "occurrences" at issue could not be considered "accidents" to trigger policy coverage); *Travelers Ins. Cos.*, 570 N.E.2d at 619 (finding that the allegations in the complaint could not be considered an "occurrence" under the general liability coverage of the policy).

More importantly, the Seventh Circuit has held that breach of contract claims are not precluded from coverage under a management liability policy.[3] *Krueger Int'l, Inc. v. Royal Indem. Co.*, 481 F.3d 993, 996 (7th Cir. 2007). In *Krueger*, the Seventh Circuit held, "[I]f the act that precipitates the insured's liability is negligent and therefore tortuous, the fact that it's also a breach of contract does not preclude coverage, since coverage is based on the specific acts insured against rather than on the particular remedy sought by the person harmed by the act." *Id.* Accordingly, this Court does not agree with Westchester Fire that breach of contract claims are

---

[3] Although the court was interpreting Wisconsin law in *Krueger*, we find the analysis applicable because both Illinois and Wisconsin apply similar standards. Wisconsin courts also construe an insurance policy "to give effect to the intent of the parties as expressed by the language of the policy itself." *Mullen v. Walczak*, 664 N.W.2d 76, 79 (Wis. 2003).

7

automatically excluded from the scope of liability policies as a matter of law. Instead, we will examine the plain language of the Policy to determine if coverage exists.

**B. The Policy Language**

To determine whether the insurer has a duty to indemnify, the Court must look at the allegations in the underlying complaint and compare those allegations to the relevant provisions of the insurance policy. *Outboard Marine Corp. v. Liberty Mut. Ins. Comp.*, 607 N.E.2d 1204, 1221 (Ill. 1992). If the underlying complaints allege facts within the policy coverage, the insurer is obliged to indemnify its insured. *Id.* Again, the court's primary objective is to give effect to the intention of the parties as expressed in the policy. *Valley Forge Insurance Co.*, 860 N.E.2d at 314. Where the terms of a policy are clear and unambiguous, they will be given their plain meaning. *Elson v. State Farm Fire & Cas. Co.*, 691 N.E.2d 807, 811 (Ill. App. Ct. 1998). Where a provision of the policy is subject to more than one reasonable interpretation, it is ambiguous and must be construed against the insurer and in favor of the insured. *Id.*

**1. Legally Obligated to Pay**

Westchester Fire first argues that the Policy is not triggered because the phrase "legally obligated to pay" is "universally" interpreted to refer to tort liability, not to damages for breach of contract. (R. 24, Westchester's Mot. at 9.) Westchester Fire fails to cite, and the Court did not find, any cases in Illinois, the Northern District of Illinois or the Seventh Circuit that supports this "universal" interpretation. In fact, the 1979 California appellate court decision that Westchester relies on, *Int'l. Surplus Lines Ins. Co. v. Devonshire Coverage Corp.*, 93 Cal. App. 3d 601, 155 Cal. Rptr. 870 (Cal. Ct. App. 1979), was expressly overruled by the California Supreme Court. *Vandenburg v. Superior Court*, 982 P.2d 229, 246 (Cal. 1999) ("We therefore conclude that the

*International Surplus* rationale, distinguishing contract from tort liability for the purposes of the CGL insurance coverage phrase 'legally obligated to pay as damages,' is incorrect.").

The court in *Vandenburg* explained: "A reasonable layperson would certainly understand 'legally obligated to pay' to refer to any obligation which is binding and enforceable under the law, whether pursuant to contract or tort liability. Further, a reasonable layperson, cognizant that he or she is purchasing a 'general liability' insurance policy, would not conclude such coverage term only refers to liability pled in tort, and thus entirely excludes liability pled on a theory of breach of contract." *Id.* at 245. This Court agrees and finds the rationale used by the court in *Vandenbug* in the context of a general liability policy equally applicable to a management liability policy.

Westchester Fire has not shown that insurer's interpretation of "legally obligated to pay" is the only reasonable interpretation of the Policy language. The phrase could certainly be interpreted in its ordinary and popular sense to include both liability in tort and contract. Even if the phrase is determined to be ambiguous, applying the principles set forth above, the language must be construed in favor of Sigma Chi. *See Elson*, 691 N.E.2d at 811. Therefore, Westchester Fire's argument fails.

### 2. Loss Resulting from a Wrongful Act

Next, Westchester Fire argues that the underlying IBM Credit and Incentra Claims do not involve a "wrongful act" or "loss" as defined by the Policy. (R. 24, Westchester's Mot. at 9-10.) The Policy defines "loss" rather broadly and could potentially include almost any amount awarded against Sigma Chi. (R. 10, Countercl., Ex. 4-A at II.P.) The issue therefore becomes whether the underlying claims represent a loss that resulted from a "wrongful act." Illinois courts have yet to

9

interpret "wrongful act" in the context of a management liability policy.

In the California cases cited by Westchester Fire, the court found there was no loss resulting from a wrongful act within the meaning of the management liability policies because the performance of the contractual obligations were debts the corporations voluntarily accepted. *See Oak Park Calabasas Condo. Assoc. v. State Farm Fire & Cas. Co.*, 137 Cal. App. 4th 557, 565 (Cal. Ct. App. 2006) ("The contract that [the association] entered into was voluntary. . .[The Association] simply chose not to pay all the money due and owing to [the construction company]."); *August Entm't, Inc. v. Phila. Indem. Ins. Co.*, 146 Cal. App. 4th 565, 581-582 (Cal. Ct. App. 2007) ("Performance of a contractual obligation . . . is a debt the corporation voluntarily accepted. It is not a loss resulting from a wrongful act within the meaning of the policy."). Sigma Chi, however, claims that Walker had no actual or apparent authority to serve as an agent for Sigma Chi and that the contracts Walker entered were therefore invalid. (R. 30, Am. Compl., Ex. B at 2.) Accepting this allegation as true, Sigma Chi did not enter into the contractual obligations with IBM Credit and Incentra voluntarily.

The Court finds the Seventh Circuit's opinion in *Krueger* instructive. Again, although the Seventh Circuit was interpreting Wisconsin law in *Krueger*, the case presented an employment practices liability policy with similar definitions of "loss" and "wrongful act" at issue here. *Id.* at 994. In *Krueger*, the company's Chief Financial Officer ("CFO") promised four employees a third-quarter valuation of their stock if they resigned from the company by the end of the year. *Id.* at 995. The employees resigned but Krueger used a lower, fourth-quarter stock valuation to pay them. *Id.* The employees sued for the difference and were awarded a judgment. *Id.* Krueger attempted to obtain coverage from its insurer, Royal Indemnity, based on the CFO's negligent

misrepresentation, arguing that the CFO exceeded his authority by binding the company to pay the higher valuation. *Id.* at 997. Royal Indemnity argued that Krueger had suffered no loss within the meaning of the employment practices liability policy because the case simply involved a breach of contract, and plaintiffs had merely obtained their contractual entitlement. *Id.* The Seventh Circuit found, however, that although this was a breach of contract action, the misrepresentation by the CFO *could have been* a wrongful act, qualifying for coverage under the policy. *Id.* ("... if the [contract] modification was precipitated by an insured-against act, namely a misrepresentation by [the CFO], there is coverage."). Coverage in *Krueger*, however, was ultimately denied because there was no misrepresentation. *Id.* The court concluded the CFO had actual authority because he was exercising a power that had been delegated to him by the board of directors. *Id.* at 998.

Similarly, in this case, Sigma Chi has alleged enough to raise a factual issue of whether a wrongful act qualifying for coverage under the Policy exists. The inquiry regarding Walker's authority to execute the IBM Credit and Incentra claims must be resolved at later stages of the litigation, and at this point requires denial of Westchester Fire's motion for judgment on the pleadings with regard to the breach of contract claim. *See Supreme Laundry Serv.*, 521 F.3d at 746 (a Rule 12(c) motion should be granted only when it appears beyond doubt that the plaintiff cannot prove any set of facts that would support the claim for relief and there are no material issues of fact to be resolved).

### 3. The Policy Exclusion

Finally, Westchester Fire argues that even if the Policy is triggered, section III.L specifically excludes coverage for breach of contract damages. (R. 24, Westchester's Mot. at 10.) When an insurer attempts to limit liability by excluding coverage under certain circumstances, it

11

has the burden of showing that the claim falls within the exclusionary language of the policy. *Int'l Surplus Lines Co. v. Pioneer Life Ins. Co.*, 568 N.E.2d 9, 11 (Ill. App. Ct. 1990). Moreover, the applicability of the exclusionary clause must be "clear and free from doubt," with any doubts resolved in favor of the insured and "most strongly against the insurer." *U.S. Fire Ins. Co., v. Aetna Life & Cas. Co.*, 684 N.E.2d 956, 961 (Ill. App. Ct. 1997); *U.S. Fidelity & Guaranty Co., v. Wilkin Insulation Co.*, 550 N.E.2d 1032, 1039 (Ill. App. Ct. 1989).

Applying these principles, we cannot agree with Westchester Fire that the underlying claims clearly fall within the exclusionary language of the Policy. Although section III.L does exclude coverage for breach of contract liability, the exclusion is limited. The Policy states, "[T]he following exclusions shall apply to any **Claim** covered, in whole or in part, under Insuring Agreement A, Directors' and Officers' Liability." (R. 10, Counterclaim, Ex. 4-A at III.L.1.) (emphasis in original). Westchester Fire and Sigma Chi, however, agree that the claims in this action are based on provisions from the A.3. Company Liability section of the Policy; not from the Directors' and Officers' Liability provisions. (R. 30, Am. Compl. ¶ 13 & Ex. B at 3.) Because the plain language of the exclusion only references claims falling under the Directors' and Officers' Liability provisions of the Policy, we cannot say it is "clear and free from doubt" that the exclusion applies to the IBM Credit and Incentra claims. Therefore, Westchester Fire's argument fails.

Furthermore, Westchester Fire's assertion that this is merely a "typographical error" in the Policy (R. 24, Westchester's Mot. at 11) does not change the Court's decision on this issue. At best, this "error" creates a factual dispute which, as previously discussed, is inappropriate for resolution at this time. *See Supreme Laundry Serv.*, 521 F.3d at 746. Accordingly, Westchester

Fire's motion for judgment on the pleadings for the breach of contract claims is denied.

## II. Section 155 Violation

Finally, Westchester Fire moves for judgment on the pleadings on Sigma Chi's claim that refusing to advance defense costs is vexatious and unreasonable under 215 ILCS 5/155 ("Section 155"). (R. 24, Westchester's Mot. at 10.) Section 155 allows a party to recover attorneys' fees, costs, and sanctions where an insurer has unreasonably delayed settling a claim and where that delay is "vexatious and unreasonable." 215 ILCS 5/155. The Seventh Circuit has held that an insurer's conduct is vexatious and unreasonable when "the evidence shows that the insurer's behavior was willful and without reasonable cause," and not merely because the "insurer takes an unsuccessful position in the litigation." *Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 200 F.3d 1102, 1110 (7th Cir. 2000). An insurer does not act vexatiously and unreasonably when: (1) there is a bona fide dispute concerning coverage; (2) the insurer asserts a legitimate policy defense; (3) the claim presents a genuine legal or factual issue regarding coverage; or (4) the insurer takes a reasonable legal position on an unsettled issue of law. *Id.*

As previously explained, the Court finds there remains a genuine factual issue regarding coverage in this case. Even if Westchester Fire ultimately does not prevail and must indemnify Sigma Chi under the Policy, Westchester Fire did not act vexatiously or unreasonably by initially denying the claim. Furthermore, the allegations that Westchester Fire withdrew its decision to provide coverage under the Policy does not alter the Court's position. There remains a factual dispute as to whether the IBM Credit and Incentra claims represent a loss that resulted from a "wrongful act" as defined by the Policy. Therefore, Westchester Fire's actions were not vexatious and unreasonable. Accordingly, we grant Westchester Fire's motion for judgment on the

13

pleadings and dismiss the count arising from Section 155.

## CONCLUSION

For the reasons set forth above, Westchester Fire's motion for judgment on the pleadings is DENIED in part and GRANTED in part. Sigma Chi's count related to violations of Section 155 of the Illinois Insurance Code is dismissed.

The parties are requested to reevaluate their settlement positions in light of this opinion. The Court will hold a status hearing on November 18, 2008 at 9:45a.m. to set a firm litigation schedule for this case, including a trial date, unless the parties indicate that this matter has been settled.

ENTERED:

Judge Ruben Castillo
United States District Court

**Date: October 22, 2008**